Jonathan Robert Nelson (JN-8796)
Barry Black (BB-4602)
Sarah Child (SC-1011)
NELSON MADDEN BLACK LLP
475 Park Avenue South, Suite 2800
New York, NY 10016
Telephone: (212) 382-4300
jnelson@nelsonmaddenblack.com
bblack@nelsonmaddenblack.com
schild@nelsonmaddenblack.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

| | |
|---|---|
| MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK and SARAH BUZAGLO, | : Case No. 1:21-cv-08773 |
| | : |
| | : VERIFIED COMPLAINT FOR |
| Plaintiffs, | : DECLARATORY AND |
| | : INJUNCTIVE RELIEF, |
| - against - | : DAMAGES AND ATTORNEY'S |
| | : FEES |
| THE CITY OF NEW YORK; BOARD OF | : |
| EDUCATION OF THE CITY SCHOOL DISTRICT | : |
| OF NEW YORK; DAVID CHOKSHI, IN HIS | : |
| OFFICIAL CAPACITY OF HEALTH | : |
| COMMISSIONER OF THE CITY OF NEW YORK; | : |
| and MEISHA PORTER, IN HER OFFICIAL | : |
| CAPACITY AS CHANCELLOR OF THE NEW | : JURY TRIAL DEMANDED |
| YORK CITY DEPARTMENT OF EDUCATION, | : |
| | : |
| Defendants. | |

--------------------------------------------------------------X

Plaintiffs MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK and

SARAH BUZAGLO, by their counsel, Nelson Madden Black LLP, as for their complaint against

the Defendants THE CITY OF NEW YORK; BOARD OF EDUCATION OF THE CITY

SCHOOL DISTRICT OF NEW YORK; DAVID CHOKSHI, IN HIS OFFICIAL CAPACITY

OF HEALTH COMMISSIONER OF THE CITY OF NEW YORK; and MEISHA PORTER, IN

1

HER OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK CITY

DEPARTMENT OF EDUCATION, allege as follows:

NATURE OF ACTION

1. New York City teachers and other employees of the New York City Department of
   Education file this suit seeking to vacate the Order of the Commissioner of Health and
   Mental Hygiene to Require COVID-19 Vaccination for Department of Education
   Employees, Contractors, Visitors, and Others, dated September 15, 2021, as amended by
   the Order of the Commissioner of Health and Mental Hygiene Revising the Effective
   Date for Required COVID-19 Vaccination of Department of Education Employees,
   Contractors, Visitors, and Others, dated September 28, 2021  (together, the "Vaccine
   Mandate") and as implemented by the Arbitration Award dated September 10, 2021
   issued by Arbitrator Martin F. Scheinman in the Matter of the Arbitration between Board
   of Education of the City School District of the City of New York and United Federation
   of Teachers, Local 2, AFT, AFL-CIO ("UFT Award") and by the Arbitration Award
   dated September 15, 2021 issued by Arbitrator Martin F. Scheinman in the Matter of the
   Arbitration between the Board of Education of the City School District of the City of
   New York and Council of Supervisors and Administrators ("CSA Award") and by two
   arbitration awards between District council 37 AFSCME, AFL-CIO ("DC37") and NYC
   DOE and New York City's Department of Health and Mental Hygiene ("DC37 Awards")
   (together, the "Exemption Standards") insofar as they forbid the employment by NYC
   DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who
   refuse to comply with such mandate for religious reasons,  impose unconstitutional

standards and procedures for determination of religious exemptions from the Vaccine Mandate, and impose conditions of employment, separation and termination upon employees who refuse to obey the Vaccine Mandate for religious reasons; and to enjoin Defendants City of New York, Board of Education of the City School District of New York ("NYC DOE" or the "Department"), Commissioner Chokshi and Chancellor Porter from implementing the Vaccine Mandate through the Exemption Standards.

<u>PRELIMINARY STATEMENT</u>

2.  In late August of this year, less than a month before the reopening of the City's 1800 schools for the current school year, the New York City Department of Education and the Commissioner for Health and Mental Hygiene decided that every adult who worked for Department, or who entered any school buildings, must be vaccinated against the COVID-19 virus (but with some exceptions). By design, the original mandate had no exception for religious or medical accommodations. "Implementation" bargaining between the Department and unions representing teachers, supervisors and administrators produced a set of Exemption Standards that purported to provide such accommodations, but the standards do not apply to all NYC DOE employees and fail to protect the basic constitutional right to religious freedom of those to whom they do apply. Union litigation in State Court prompted the Defendants to issue a new mandate that recited that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." However, the Department only recognizes as "reasonable accommodations" those procedures, standards, benefits and penalties that were

3

promulgated in its Exemption Standards. On information and belief, no religious

accommodations were provided for unvaccinated employees who were not members of

the unions that participated in the drafting of the Exemption Standards, and  on

information and belief, all unvaccinated employees who did not file an exemption request

were fired by the Department in late September.

3.  During the past month, thousands of NYC DOE employees submitted religious

exemption requests to the Department. These were almost uniformly denied in rubber-

stamp conveyor-belt fashion. The Exemption Standards gave employees who wished to

appeal the denial of their exemption applications only one day to file an appeal. Cursory

appeal hearings are now being conducted using Exemption Standards that explicitly and

flagrantly violate the Free Exercise and Establishment Clauses of the First Amendment.

The hearings routinely and predictably result in the denial of many, and probably most,

meritorious appeals.

4.  One of the most pernicious provisions in the Exemption Standards sets a deadline of this

coming Friday, October 29, 2021, for unvaccinated employees whose exemptions have

been denied, to elect either (1) voluntary "separation" (i.e., resignation) with temporary

benefits from NYC DOE employment, or (2) an unpaid leave of up to approximately ten

months from actual DOE work with temporary benefits, but with a prohibition on

engaging in other gainful employment. Options "1" and "2" require the employee to

surrender all legal rights against the DOE. Failing to elect either option triggered a

default option: being fired as early as December 1, 2021.

5.  The instant lawsuit asks the Court to declare that the Vaccine Mandate, as implemented

by the Exemption Standards, unlawfully infringes the rights of plaintiffs and other NYC

DOE employees under the religion clauses of the First Amendment, to vacate the Vaccine

Mandate insofar as it infringes such rights, to require the Defendants to provide religious

exemptions to their employees that are "least restrictive" of their religious rights, to

restore Plaintiffs as far as reasonably possible to their positions, to award back pay,

forward pay, actual and compensatory damages and attorney's fees to Plaintiffs, and to

provide such other relief as may be necessary to provide a complete remedy for

Defendants' violations of law.

<u>THE PARTIES</u>

6.  Plaintiff MATTHEW KEIL has worked for the New York City Department of Education

("NYC DOE") as a teacher for over 20 years.

7.  Plaintiff JOHN DE LUCA is employed as a teacher by MYC DOE.

8.  Plaintiff SASHA DELGADO is employed by NYC DOE as an Individualized Education

Teacher.

9.  Plaintiff DENNIS STRK has worked for NYC DOE for the past 13 years as a high school

social studies teacher.

10. Plaintiff SARAH BUZAGLO has worked for NYC DOE since 2017 as a teacher.

11. Defendant City of New York is a municipal corporation constituting the local municipal

government of the population residing in New York, Bronx, Queens, Kings and

Richmond Counties in New York State. The First Amendment of the United States

Constitution applies to this defendant by virtue of the Fourteenth Amendment.

12.  Defendant Board of Education of the City School District of the City of New York

5

D/B/A New York City Department of Education ("NYC DOE") is the department of city government responsible for the management of the New York City School District and the administration of NYC's public schools. Through the issuance of Chancellor's Regulations, the Department of Education sets policies in New York City's public schools. The Department is responsible for implementing the Vaccine Mandate. For all purposes, the NYC DOE serves as the government or public employer of the Plaintiffs and all other persons who work for it.

13. Defendant David Chokshi ("Commissioner Chokshi") is the Commissioner of Health and Mental Hygiene of the City of New York and head of NYC's Department of Health and Mental Hygiene ("DOHMH"). Sued in his official capacity, Commissioner Chokshi acted at all times under color of law in the acts attributed to him herein.

14. Defendant Meisha Porter ("Chancellor Porter") is the Chancellor of the NYC DOE. Sued in her official capacity, and acting at all times covered herein under color of law, Chancellor Porter sets policies and oversees the employment of teachers, administrators and other employees for the NYC DOE and is responsible for the enforcement of such policies with respect to such employees.

## JURISDICTION AND VENUE

15. This court has jurisdiction to adjudicate all federal claims raised in this matter under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits arising under the laws and Constitution of the United States; the Supremacy Clause of the Constitution of the United States, which allows federal district courts to hear suits

alleging preemption of state and local laws by the Constitution and federal laws made in pursuance thereof; and 42 U.S.C. § 1983 and 28 U.S.C. § 1343 in relation to Defendants' deprivation and infringement under color of law of the Plaintiffs' rights, privileges, and immunities secured by the United States Constitution and laws, as detailed further herein.

16. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a); and attorney's fees and costs under 42 U.S.C. § 1988.

17. Venue is proper in the United States District Court for the Southern District of New York for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is the district in which Defendants unlawfully deprived plaintiffs of their rights under the laws and Constitution of the United States, as further alleged herein. It is also the district in which a substantial part of the events giving rise to Plaintiffs' claims occurred and continue to occur.

## LEGAL STANDARDS APPLICABLE TO THIS MATTER

18. Defendants' actions, mandates, standards and proceedings must be evaluated under a standard of "strict scrutiny" because they are neither neutral toward religion nor generally applicable. The Vaccine Mandate provides no standard for religious accommodations except that they be "reasonable" and "legally required," standards which give practically unfettered discretionary power to an adjudicator. The Exemption Standards explicitly govern the adjudication of religious claims and are therefore neither neutral nor generally applicable.

7

FACTS APPLICABLE TO ALL CLAIMS

19. In early 2020, the wide spread of a novel coronavirus, COVID-19, caused a global

    pandemic, which caused millions of deaths worldwide. New York City was severely

    affected.

20. In response to the COVID-19 pandemic, NYC DOE closed all schools in its system,

    pivoting to a program of system-wide remote instruction in Spring, 2020. All school

    personnel and students participated in school activities through remote means.

21. During the 2020-2021 school year, NYC DOE conducted classes on a hybrid model, in

    which some teachers and students participated remotely, and some were physically

    present on school grounds. All adult and minor participants in physically present school

    activities were required to participate in frequent testing for COVID-19 infection and to

    show negative test results.

22. On August 3, 2021, New York City Mayor Bill de Blasio announced a "Key to New

    York City" policy which aimed to exclude unvaccinated people from participating in

    activities or working indoors in certain kinds of facilities in the city.

23. Between August 3 and 23, 2021, Mayor de Blasio issued a mandate for all New York

    City government employees, including employees of the NYC DOE, who were required

    to get vaccinated or be subjected to weekly testing requirements. As he issued this

    mandate, Mayor de Blasio remarked that he hoped that the testing requirements would be

    so burdensome that people would need to get vaccinated to avoid them.

24. On August 23, 2021, Mayor de Blasio and Commissioner Chokshi announced that NYC

DOE employees would be no longer have an option to undergo weekly testing and would be terminated if they did not receive at least their initial COVID-19 vaccination by September 27, 2021. As announced, the new policy did not allow exemptions for any reason.

25. On August 24, 2021, Commissioner Chokshi promulgated a written vaccine mandate ("Original Mandate"), with no exemptions, incorporating the policy announced on August 23rd.

26. On or about September 1, 2021, the United Federation of Teachers ("UFT"), the labor union that represents teachers and certain other job classifications who work for NYC DOE, commenced an expedited arbitration ("UFT Arbitration") intended to challenge the implementation of the Original Mandate.

27. On information and belief, arbitrations between the UFT and NYC DOE are governed by an agreement dated May 1, 2014 called the Joint Intentions and Commitments ("Joint Intentions"). The Joint Intentions contain *inter alia*, the following provisions (at 177, Art. 22, Section d, paras. 2, 4) that limit the UFT's powers in arbitration:

   a. Nothing contained in this Article or elsewhere in this Agreement shall be construed to permit the Union to present or process a grievance not involving the application or interpretation of the terms of this Agreement in behalf of any employee without his/her consent.

   b. Nothing in this Article or elsewhere in this Agreement shall be construed to deny to any employee his/her rights under Section 15 of the New York Civil Rights Law or under the State Education Law or under applicable Civil Service Laws

and Regulations.

c.   Nothing contained herein shall be construed as a waiver of any substantive arbitrability objection or to preclude any other resort to judicial proceedings as provided by law.

28. The UFT and other labor unions representing employees of NYC DOE filed a lawsuit ("New York State Litigation") in the New York State Supreme Court in New York County on or about September 9, 2021 mounting a facial challenge to the constitutionality of the Original Mandate.[1]

29. On September 14, 2021, Justice Laurence Love issued a Temporary Restraining Order in the New York State Litigation against enforcement of the Original Mandate because it failed to provide for religious and medical exemptions.

30. On September 10, 2021, an arbitrator, Martin F. Scheinman, issued an order in the UFT Arbitration ("UFT Award") that required NYC DOE to permit religious exemptions to its vaccine requirements, but imposed unconstitutional restrictions on the manner in which requests for such exemptions were to be adjudicated and draconian consequences for unvaccinated NYC DOE employees who failed to obtain such an exemption. On information and belief, the detailed provisions of the UFT Award were composed almost entirely of language and procedures proposed by the City and the UFT.

31. *Inter alia*, the UFT Award contained the following provisions:

a.   As an alternative to any statutory reasonable accommodation process, the City,

---

[1] *New York City Municipal Labor Committee, et al., v. The City of New York, et al.*, No. 158368/2021 (N.Y. Co.).

the Board of Education of the City School District for the City of New York (the

"DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the

"UFT), (collectively the "Parties") shall be subject to the following Expedited

Review Process to be implemented immediately for full-time staff, H Bank and

nonpedagogical employees who work a regular schedule of twenty (20) hours per

week or more inclusive of lunch, including but not limited to Occupational

Therapists and Physical Therapists, and Adult Education teachers who work a

regular schedule of twenty (20) or more hours per week. This process shall only

apply to (a) religious and medical exemption requests to the mandatory

vaccination policy … . *Id*. At 6-7, Section I.

b.  Any requests to be considered as part of this process must be submitted via the

SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m. *Id*.

c.  Religious exemptions for an employee to not adhere to the mandatory vaccination

policy must be documented in writing by a religious official (e.g., clergy) .

Requests shall be denied where the leader of the religious organization has spoken

publicly in favor of the vaccine, where the documentation is readily available

(e.g., from an on line source), or where the objection is personal, political, or

philosophical in nature. Exemption requests shall be considered for recognized

and established religious organizations (e.g., Christian Scientists). *Id*. at 9, Section

I.C.

d.  The initial determination of eligibility for an exemption or accommodation shall

be made by staff in the Division of Human Capital in the Office of Medical,

11

Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial. *Id*. at 9-10, Section I.E.

e.   If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination. *Id*. at 10, Section I.F.

f.   A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents

submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing. *Id*. at 10-11, Section I.G.

g.  Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding. *Id*. at 11, Section I.H.

h.  While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application. *Id*. at 11-12, Section I.I.

i.  An employee who is granted a [ ] religious exemption [ ] under this process and

13

within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/ or accommodation is in place. [ ] Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment. *Id*. at 12-13, Section I.K.

j.   The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution. *Id*. at 13, Section I. L.

k.   Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay

for these reasons shall not be considered a disciplinary action for any purpose. *Id*. at 13, Section II.A.

l.  During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period. *Id*. at 14, Section II.C.

m.  During the period of September[ ] 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job). *Id*. at 16, Section III.A.

15

n.  During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned. *Id*. at 17, Section III.B.

o.  Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein. *Id*. at 17, Section III.C.

32. On September 15, 2021, Aribtrator Scheinman issued a second arbitral award in a negotiation between the NYC DOE and the Council of Supervisors and Administrators, which represents NYC DOE employees in supervisory and administrative positions. The

CSA Award mirrored the UFT Award in all ways relevant to the instant litigation.

33. On information and belief, at least two additional awards were issued in union arbitrations between DC37, a union that represents persons who work for DOE (or indirectly for DOE, through DOHMH) as school aides and in other staffing positions, and NYC DOE and DOHMH, with provisions that mirror the UFT awards in all ways relevant to the instant litigation.[2]

34. The 2021-2022 school year for NYC DOE commenced on September 13, 2021 for students.

35. On September 15, Commissioner Chokshi issued a new mandate (the "Vaccine Mandate"), which added, *inter alia,* the following language to the Original Mandate: "6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."

36. On September 21 and 22, Justice Love denied a preliminary injunction to the plaintiffs in the New York State Litigation, dissolved the TRO, and granted the defendants' motion to dismiss the petitioners' petition, finding that the reference to "accommodations" in the Vaccine Mandate mooted the claims raised in their petition because the original mandate had been rescinded and the current Vaccine Mandate no longer expressly precluded religious exemptions. Justice Love's order did not, however, consider any facts related to the implementation of the Vaccine Mandate or to the terms of the Exemption Standards – facts which are key elements of the claims that are raised by the instant Complaint.

37. Although the UFT Award set a deadline of September 20, 2021 for employees of NYC DOE to apply for exemption from the Vaccine Mandate, NYC DOE waited until Saturday, September 18, 2021 to inform their employees of the opportunity to apply for the exemption. Most employees had only two days to apply for exemption under the UFT Award.

38. On information and belief, thousands of NYC DOE employees have filed religious-based requests for exemption from the Vaccine Mandate, but only a very small percentage of such requests has been granted. On information and belief, the most commonly cited reason for denial of such requests has been that they would impose an "undue hardship" on NYC DOE.

39. On information and belief, thousands of NYC DOE employees have filed appeals from decisions denying their exemption requests, but only a very small percentage of appellants have received a religious exemption.

40. Pursuant to the Vaccine Mandate and the Exemption Standards, on information and belief, thousands of NYC DOE employees, including the plaintiffs, have been placed on involuntary leave without pay since September 28, 2021 pursuant to Section II.A of the Exemption Standards, which orders that such persons are eligible to receive health insurance but "prohibited from engaging in gainful employment" under Section II.C thereof.

41. Pursuant to Section III of the Exemption Standards, unvaccinated employees of NYC

---

[2] We are not aware of whether ror not additional similar awards may exist. If so, they would likely suffer the same

DOE, including the plaintiffs, are faced with a Hobson's Choice between two alternatives: (1) they may choose to "separate" from NYC DOE, remain eligible for health insurance through September 5, 2022, and receive compensation for unused CAR days; or (2) they may opt to extend their unpaid leave status through September 5, 2022, remain eligible for health insurance, but be prohibited from gainful employment. Both options require the "separated" employee to sign an express waiver of any right to challenge the separation. The DOE's required waiver document for election of Option (1) includes the following representation: "As it relates to the DOE, I understand that I lose all entitlements to reversion, retention, and tenure." If unvaccinated employees fail to elect option (1) or (2) by October 29, 2021, then the NYC DOE will unilaterally terminate their employment effective December 1, 2021.

42. The NYC DOE's restrictions, prohibitions and "accommodations" on religious exemptions to the vaccine mandate are not narrowly tailored to promote the City's interests. NYC DOE cannot prove that the protection of the children who attend City schools requires the restrictions it imposes, or that the same end of virus protection could not be accomplished by means that would inflict less harm upon a significant number of religiously-observant NYC DOE employees.

43. The experiences and policies of most other New York State school districts belies the NYC DOE's claim that its policies promote its interests with the least degree of harm to its employees. Other New York school districts protect their children with approaches to

_____

Constitutional infirmities that are at issue in the instant matter.

unvaccinated employees that impose less harm upon those employees as a consequence of their obedience to religious beliefs.  For example, on information and belief, Mahopac Central School District, Plainview – Old Bethpage Central School District and Pelham Union Free School District permit unvaccinated teachers and school personnel to work in school buildings, subject to frequent mandatory testing. Procedures of this kind are consistent with recommendations from the New York State Department of Health. For example, the Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year, dated September 2, 2021, provides guidance on masking, physical distancing, ventilation, and other concerns, but does not mandate vaccination for school employees or children. These school districts have a governmental interest that is identical to that of the NYC DOE, but they have not found it necessary to fire their religiously motivated workforce or to expel them from their schoolhouses.

44. Beyond the termination threat embodied by the Vaccine Mandate, the "accommodation" that the NYC DOE is providing to employees whose exemption applications are denied is deeply pernicious: employees are required to choose by Friday, October 29, 2021 between resigning or suffering another ten months of continued unpaid "leave" status, with a prohibition on outside employment. These loyal, longstanding employees are being told to "quit or starve," in essence. Many of these employees have children and spouses to feed, elderly parents to support, and eventually, a retirement to fund. To deny them both a salary and any option to earn money from other sources is not, by any understanding, a narrowly tailored provision. These provisions, along with the skewed application procedures that appear to be engineered to deny exemptions, appear to

accomplish two purposes: to make refusal to vaccinate so onerous that religious opponents of vaccination will be forced to act against their beliefs or waive their legal rights, and to save money through the mass "separation" of religiously motivated employees.

## FIRST CLAIM FOR RELIEF
### (Liability under the Free Exercise Clause Against All Defendants)

45. Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1-44 of this Complaint as if fully set forth herein.

46. The Vaccine Mandate is unconstitutional, both facially and as applied to the plaintiffs and others, because it violates their right to religious freedom under the First Amendment.

47. The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that Congress (and by extension, State and City governments) shall make no law prohibiting the free exercise of religion.

48. Laws that burden religion are subject to strict scrutiny under the Free Exercise Clause unless they are neutral and generally applicable.

49. Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.

50. A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.

51. Laws that burden religious exercise must survive strict scrutiny if they are not neutral and generally applicable.

52. A government policy can survive strict scrutiny under the Free Exercise Clause only if it advances interests of the highest order and is narrowly tailored to achieve those interests. Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.

53. The Vaccine Mandate requires all NYC DOE employees to be vaccinated, but by its terms it claims not to prohibit "any reasonable accommodations otherwise required by law." The Vaccine Mandate contains no other guidance as to how NYC DOE is to determine which "accommodations" are "reasonable" and "otherwise required by law." Adjudicators of requests are, therefore, given discretion to determine whether or not to grant exemption requests based on their own individual determinations as to whether such requests are "reasonable" or "required by law."

54. Because the Vaccine Mandate gives the NYC DOE and outsourced appellate examiners unrestricted discretion to determine exemption applications, it is subject to strict scrutiny.

55. The United States Supreme Court has made it clear that Government fails to act neutrally when it proceeds in a manner that is intolerant of religious beliefs, and that religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

56. The First Amendment protects the unorthodox religious beliefs of people who dissent from the doctrines of the faith traditions to which they belong just as strongly as it protects the orthodox beliefs and practices of those who are faithful to those traditions.

57. The Exemption Standards authorize NYC DOE employees to submit requests for exemption from the vaccine mandate on the basis of religious belief. In each instance,

government adjudicators are required to consider the particular reasons given for each individual exemption request.

58. Adjudicators who are deciding religious exemption applications under the Vaccine Mandate are directed to apply standards set forth in the Exemption Standards in obeying the Vaccine Mandate.  The Exemption Standards do not cure the Vaccine Mandate's Constitutional defects. Rather, they expand them. On their face, the Exemption Standards violate the Free Exercise Clause in the following ways:

59. First, the Exemption Standards require that exemption requests "must be documented in writing by a religious official (e.g., clergy)." Since the constitutionally required definition of religion is not limited to  traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, and Buddhism, but also includes religious beliefs that are new, uncommon, not part of a formal church or sect, or only held by a small number of people, the "clergy writing" requirement requires the exemption adjudicator to refuse exemption requests filed by people who may not be able to supply a "clergy letter" because they do not belong to a formal church or who may belong to a denomination that does not have "clergy" or who, indeed, may possess sincere religious beliefs that are not shared by others. This requirement also excludes persons who may not be able to get a "clergy letter" from religious officials of their own denomination because they possess unorthodox views concerning vaccination that are at odds with the orthodox viewpoint of that particular sect.

60. Secondly, under the Exemption Standards, adjudicators are required to deny any request made by a person who belongs to a denomination of which "the leader … has spoken

23

publicly in favor of the vaccine." This prohibition violates Free Exercise (and

Establishment Clause) principles because it makes religious orthodoxy a requirement of

exemption from the Vaccine Mandate. The slogan "heretics have no rights" should be

consigned to the Dark Ages and histories of the Inquisition: it has no place in a country in

which religious freedom is a fundamental right and establishment of religion is

proscribed by our basic law. However, the NYC DOE has enshrined the precept in the

provisions of its Exemption Standards.

61. Thirdly, the Exemption Standards require adjudicators to deny exemption applications

"where the documentation is readily available (e.g., from an online source)." This entirely

irrational requirement seems to be intended to prevent religious exemption applicants

from getting assistance from the very first place where everybody goes for information in

2021: Google and the worldwide web. A rule that disqualifies everyone who looks to the

internet for information to support their religious objections  cannot assist the adjudicator

in determining whether or not a particular applicant possesses a genuine religious

objection to vaccination: it is vastly overbroad.

62. Fourthly, the Exemption Standards contain a negative pronouncement as to what types of

ideas the applicant is not permitted to hold concerning vaccination, namely, those that are

"personal, political or philosophical in nature," but no positive guidance as to what types

of beliefs and objections must be considered to be religious beyond adherence to

Christian Science and, perhaps, other similar sects. American Constitutional law

recognizes that religion includes all aspects of religious observance and practice, as well

as belief. *See also* 42 U.S.C.S. § 2000e(j) (defining religion under Title VII). Many

religious individuals may sincerely hold ideas concerning vaccination that qualify as both religious and also as "personal, political or philosophical."  The Exemption Standards entirely ignore these well-known Constitutional interpretations and violate the Free Exercise Clause by guiding adjudicators only on how to deny applications under such circumstances, and not on how to discern whether beliefs are also religious and therefore approvable.

63. The UFT Arbitrator's Order recites that the arbitrator personally relied upon submissions from the UFT and the City's legal team in formulating the specific terms of the order, a task which he was incapable of completing on his own. Thus, the City had a hand in the drafting of the very terms which the order requires NYC DOE employees to apply and enforce.

64. The City has a constitutional duty to respect the religious freedoms of its employees, a responsibility which it cannot avoid by outsourcing its unconstitutionally directed exemption denials to a well-connected arbitration service.

65. The NYC DOE violates the Free Exercise Clause every time it applies the terms of the Exemption Standards to deny  an individual request for religious exemption. It violates the Free Exercise Clause every time it takes any action with respect to an individual's employment, enforcing the provisions of the Vaccine Mandate and Exemption Standards.

66. The Vaccine Mandate and the Exemption standards are also being  applied to individual cases in ways that violate the Free Exercise Clause.  On countless occasions, NYC DOE representatives and the exemption adjudicators themselves have made statements in appellate exemption hearings that violate the City's First Amendment responsibilities,

25

including *inter* alia arguments that "as a Christian, you can't have a valid exemption claim, because every Christian leader is in favor of vaccination," claims that clergy letters that assert an individual right to conscience as an element of orthodox religious faith must be disregarded if denominational leaders support vaccination, and arguments that even if the applicant appears to hold sincere religious beliefs in opposition to vaccination, it would put an undue burden on the NYC DOE to provide accommodations to every person who possesses a genuine religious objection – because there are too many of them!

67. The Department's system of adjudicating exemption requests also produces arbitrary results.  In numerous instances, DOE staff and appellate adjudicators have rendered completely inconsistent decisions in cases involving applicants with substantially similar circumstances who submitted substantially similar evidence in support of their applications.

68. The provisions of the Exemption Standards are not "narrowly tailored" to promote the compelling interests of the NYC DOE with the least amount of interference with the religious beliefs and practices of NYC DOE employees. Rather, they seem to be drafted to inflict maximum harm on persons who believe that vaccination is unholy, by denying the greatest number of exemption applications with the least amount of due process. The requirement that applicants present a clergy letter; the prohibition of exemptions when denominational leaders favor vaccination; the identification of a religious group that is presumptively entitled to exemption; the dire consequences of rejection, including termination of employment or mandatory unpaid unemployment on leave, the cramped

deadlines for submission of applications, appeals, and elections under the Exemption

Standards – none of these is necessary for or even related to the protection of

schoolchildren from infection. One wonders whether the Defendants may be using the

vaccination issue as a pretext to cut expenses on the backs of teachers and other staff who

hold strong religious beliefs that cause them to act in a manner that is contrary to

prevailing popular opinion.

69. The deleterious effect of unfair denial is that employees whose applications are denied by

this corrupt process must elect by October 29, 2021 either to resign from their jobs or

agree to spend the next ten months without income – and with a waiver of legal rights.

Otherwise, they will be fired.

70. The Exemption Standards set a deadline of October 29 – Friday of this week – for

Plaintiffs and other unvaccinated NYC DOE employees to make this Hobson's Choice,

giving up any right of contest in any court. This court has power to stay that deadline

until it is able to make a final determination that the Vaccine Mandate is unconstitutional

on its face and as applied, and it is necessary for the Court to exercise its power in order

to prevent manifest injustice to the rights of all of those NYC DOE employees whose

exemption applications have been denied by unjust and unconstitutional proceedings.

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption

Standards are invalid because they violate the Free Exercise Clause of the First Amendment to

the United States Constitution, to permanently stay the October 29 and November 30, 2021

deadlines set forth in the Exemption Standards, to issue a permanent injunction against the

enforcement of the Vaccine Mandate and the Exemption Standards insofar as they forbid the

27

employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine

Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to

accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs,

in a constitutionally permissible manner, to order the NYC DOE to restore all employees who

have been adversely affected by the Vaccine Mandate or the Exemption Standards to

employment with NYC DOE with back pay and restoration of time in service, seniority and

tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's

fees and costs to Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Liability under the Establishment Clause Against All Defendants)

71.  Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1-70

of this Complaint as if fully set forth herein.

72. The Vaccine Mandate is not "neutral" when it comes to the various religions practiced by

the employees of the NYC DOE. On information and belief, the NYC DOE's

representatives defend it by declaring that it has the approval of religious leaders of many

denominations, and in appellate hearings, the NYC DOE's advocates declare that all the

religions of the world support vaccination, with the unique exceptions of Jehovah's

Witness, Christian Science and Muslim adherents.

73. The Establishment Clause is America's constitutional bulwark against theocracy. Any

official action to prescribe orthodoxy in religion, or to force citizens against their will to

profess adherence to such orthodoxy or to act in conformity with it, is a violation of the

Establishment Clause.

74. Through the Exemption Standards, the Vaccine Mandate reveals a preference of the NYC DOE for religious orthodoxy and an intolerance of religious dissent. Its requirement of a clergy letter confers a preference on persons who belong to an organized religion with distinctions between laity and clergy. Its blanket rejection of claims that contradict a denominational leader's published position treats sincere dissenters in a manner that is inferior to the treatment of persons who hold orthodox beliefs. Its rejection of materials published online betrays a suspicion of religious groups that organize to oppose vaccine mandates. And its explicit acceptance of Christian Science's position of vaccine opposition privileges adherents to that belief system over others in the exemption process.

75. As a result of these standards for adjudication, adherents to the Christian Science faith and individuals whose individual anti-vaccination beliefs accord with the orthodox (but unpublished) statements of clergy in a hierarchical faith receive a government-created advantage in applying for, and receiving, religious exemptions from the Vaccine Mandate. Others are disfavored as a matter of black-letter government policy. On information and belief, the religious composition of the relatively small group of people who have received exemption grants reflects this policy of religious favoritism.

76. The inclusion of offensive and unconstitutional standards in the Exemption Standards, and the application of such standards in DOE and appellate decisions denying exemption applications, including those of the plaintiffs, violate the Establishment Clause by giving members of some religious groups a preference over others.

29

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption Standards are invalid because they violate the Establishment Clause of the First Amendment to the United States Constitution, to permanently stay the October 29 and November 30, 2021 deadlines set forth in the Exemption Standards, to issue a permanent injunction against the enforcement of the Vaccine Mandate and the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

### THIRD CLAIM FOR RELIEF
### (Deprivation of Procedural Due Process Against All Defendants)

77.  Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1-76 of this Complaint as if fully set forth herein.

78. While the Exemption Standards provide explicit guidelines for the submission and adjudication of exemption requests (albeit unconstitutional ones), they only explicitly cover exemption applications filed by members of UFT, CSA and DC37. On information and belief, other employees of the NYC DOE have no guidelines or procedures for

exemption: they have only the language of the Vaccine Mandate itself: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."

79. The Vaccine Mandate does not, in its own text, provide *any* exemption for religious reasons.[3] It provides no objective criteria for the consideration of exemption requests. On its face, it grants unrestricted discretionary authority to any adjudicator to grant or deny "reasonable accommodations … required by law." It is therefore unconstitutionally vague.

80. The Constitutional right of procedural due process provided in the Fourteenth Amendment encompasses the right to be informed in advance of any hearing of those current substantive criteria which will govern decisions. The Vaccine Mandate denies Plaintiffs and other NYC DOE employees a meaningful right to be heard by leaving them in the position of not knowing what material to present to the adjudicator to make a decision.  Moreover, a statement of reasons given by an adjudicator for any decision to reject an exemption request would be meaningless without standards to which it could be compared.  For these reasons, the lack of standards in the Vaccine Mandate renders the religious exemption that the Defendants claim it contains unconstitutionally vague and in contravention of the due process clause of the Fourteenth Amendment.

81. The Vaccine Mandate sets no standards by which the Plaintiffs and other NYC DOE

---

[3] The Vaccine Mandate may be interpreted so as not to block exemption applications filed pursuant to the Exemption Standards, but it does not positively authorize them. The Defendants are implementing the Vaccine Mandate as if religious exemption applications filed pursuant to the Exemption Standards are "required by law," but

employees may compare the Exemption Standards or the decisions made by NYC DOE

employees or agents with respect to their individual exemption applications. Since their

exemption denials were imposed pursuant to the Vaccine Mandate, the vagueness of the

Vaccine Mandate deprived them of their Constitutional right to due process of law under

the Fourteenth Amendment.

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate is invalid because it is

unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to

the United States Constitution, to issue a permanent injunction against the enforcement of the

Vaccine Mandate and Exemption Standards insofar as they forbid the employment by NYC DOE

of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to

comply with such mandate for religious reasons, to require NYC DOE to accommodate the

religious exemption requests of unvaccinated employees, including Plaintiffs, in a

constitutionally permissible manner, to order the NYC DOE to restore all employees who have

been adversely affected by the Vaccine Mandate or the Exemption Standards to employment

with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to

award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to

Plaintiffs.


## FOURTH CLAIM FOR RELIEF
### (Violation of Matthew Keil's Right of Free Exercise – Against NYC DOE)

in fact the Vaccine Mandate and Exemption Standards do not, as set forth above, themselves comply with this
country's basic law.

82. Plaintiff Matthew Keil realleges and incorporates by reference the allegations recited in paragraphs 1 - 81 of this Complaint as if fully set forth herein.

83. MATTHEW KEIL ("Keil") has been an employee of the NYC DOE for more than twenty years. Over the course of those years, he has accrued seniority in the Department, received tenured status, accumulated Years In Service that have put him close to earning the right to retirement benefits, and accumulated CAR credits that under normal circumstances can be cashed in for income at the time of retirement. He is unvaccinated and he refuses to be vaccinated for religious reasons.  The Vaccine Mandate threatens to deprive him not only of his career but also all of the economic and retirement benefits that he has accumulated over his long service with the Department.

84. Keil is an ordained deacon in the Russian Orthodox Church and serves as such in the Saint Sergius Chapel at the Synodal Headquarters of his denomination in New York City. He converted to the Russian Orthodox Church and was catechized and baptized in 1999. In the years that followed, he demonstrated his strong commitment to Orthodoxy. For many years, Keil spent his summers in the Russian Monastery in Jordanville, New York, and over the past twenty years he also traveled far and wide to many Orthodox places of pilgrimage – including the Greek monasteries on Mt. Sinai in Egypt, as well as to those in the Holy Land, and in Constantinople. He was blessed, in the winter of 2004, to venerate the relics of Saint Nicholas in Bari, Italy.

85. Keil was tonsured as a reader in the Russian Orthodox Church in 2008, ordained as a sub-deacon in 2011, and ordained as a deacon in 2013. He regularly goes to confession.

86. Keil provided all of the foregoing information in the application he submitted to NYC
DOE for a religious exemption. He also provided the following information in support of
his application:

a.  The religious beliefs to which Russian Orthodox individuals adhere to affect not
only their behavior on Sundays when they go to Church, but also their choice of
careers, education, diets and marital relations, and even their very bodies. "For so
it is written, Know ye not that we are the temple of God, and that the Spirit of
God dwelleth in you?" (1 Corinthians 3:16).

b.  For example, the Orthodox generally do not embalm or cremate their dead, get
tattoos, donate blood to the non-Orthodox, or obtain heart transplants or other
surgeries that may defile their bodies. This is not to say that one cannot find
members of the Church who do in fact do such things, but rather that such is not
generally accepted as orthopraxis by traditionally minded faithful.

c.  The same goes for vaccinations. There are no verses in the Bible dealing with
vaccinations, and consequently many Orthodox believers have no problem
inoculating either themselves or their children. However, the Church gives its
members the ability to look critically at contemporary society, and it provides the
eternal criteria by which they can judge the world around them and choose for
themselves what would violate their conscience and obligations to God.

d.  In 2007, Keil developed his religious beliefs concerning vaccinations when he
spoke with monks at St. Nectarios' monastery in Roscoe, New York, and they
stated that Geronda Ephraim, the spiritual head of the monastery and many other

monasteries in North America, enjoined the monks and other people from getting vaccinated. After studying the Scriptures, prayer, and engaging in other spiritual disciplines, Keil developed the following beliefs.

    i.   Vaccinations, unlike other medications, are injected directly into people's blood.

    ii.   Keil believes that the Old and New Testaments make it unmistakably clear that we must be scrupulous about the purity of our blood.

    iii.   The primary concern from an Orthodox point of view is the sacredness of our blood through the partaking of Holy Communion. It is only through this Blood of our Lord Jesus Christ that we can be reconciled to God the Father (see Ephesians 1:6-8).

    iv.   Taking vaccinations profanes the sacredness of our mortal bodies by mixing the Lord's Body and Blood, which is in us, with the cells of monkeys, chicken embryos, bovine serum, rabbit brains, dog kidneys, live viruses, formaldehyde, and even cells cultured from aborted fetuses.

    v.   Such pollution and unnatural mixing is specifically condemned by God in the Bible (see Hebrews 10:29).

    vi.   Even though the Covid vaccines do not contain fetal tissues, every single one has utilized aborted human fetal cell lines at one time or another during their development through either their testing or manufacturing.

    vii.   Multiple Orthodox jurisdictions have stated that it is absolutely clear that to take any one of these vaccinations would involve one in the sin of

abortion.

viii. In a larger sense, the practice of vaccination also runs contrary to the Orthodox mindset of trusting in God for our health, pursuing Him and His aid primarily. Scripture demonstrates that sickness and disease are a direct result of Satan, sin, and our fallen state, so healing must be sought above all from God.

ix. Ultimately, the Orthodox Church has always upheld the right to follow one's own properly formed moral conscience. We will be judged by God for having done or not done the things in this life that we believed to be truly right.

e. As a result of these beliefs, throughout his adult life, Keil has completely abstained from vaccinating himself (and his wife and six children).

f. Keil does not, however, judge others of his faith who decide to vaccinate either themselves or their children.

87. During the 2020-2021 school year, Keil fulfilled all of the responsibilities of his job remotely. He was ready, willing and able to do the same during the 2021-2011 school year.

88. In September 2021, Keil submitted a request for religious exemption from the Vaccine Mandate pursuant to the Exemption Standards. Keil submitted a detailed affidavit in support of his religious exemption claims, and a letter from his bishop. In his affidavit, Keil described his religious history and beliefs in detail, as summarized above. On September 22, 2021, the DOE informed Keil that his exemption request was denied. The

DOE's denial letter stated that his "application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate." Nevertheless, it stated that,

> We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate. Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

89. Keil immediately requested an appeal.

90. On October 1, 2021, Keil participated in an appeal hearing pursuant to the Exemption Standards. Keil orally affirmed the truth of the facts set forth in his affidavit.

91. At the hearing, the DOE representative first restated the Department's position that accommodating Keil's sincerely held religious beliefs would pose an undue hardship. However, besides saying the DOE was bound by the Health Commissioner's Vaccine Mandate, the DOE representative did not provide any evidence or explanation about how accommodating Keil would be an undue hardship, especially when numerous other school districts in the State of New York have not implemented a vaccine mandate.

92. Next, the DOE representative shifted to addressing the sincerity of Keil's beliefs. He began by claiming that medicines such as Tylenol and Advil have been manufactured and tested using aborted fetal cell lines, and questioned whether Keil was aware that many

other everyday products have been tested and manufactured using aborted fetal cell lines as well.

93. While he was unaware of the connection between aborted fetal cell lines and the medicines mentioned, Keil is familiar with a number of products that were manufactured or testing using aborted fetal cells, and said so, and testified that as a result, he does not partake of them or allow his family to partake of them, due to their sincerely held religious beliefs.

94. The DOE representative's inquiries during Keil's appellate hearing did not focus on the sincerity of his beliefs but on their validity.

95. Keil provided evidence that his religious objection is to the use of fetal cells in any aspect of the vaccine, including its testing, research, or manufacturing, and that he was aware that there are no fetal cells actually present in the vaccine, but this did not make his religious objection any less religious or sincere.

96. The representative from DOE also stated that Keil's beliefs regarding the vaccination did not seem to be religious in nature but were merely personal, asserting that there are other Orthodox Christians who choose to get vaccinated.

97. Keil explained in response that under the Church's teachings, each individual Christian has the obligation to follow his own conscience as informed by his faith and study of the Scriptures in determining whether to get vaccinated. That decision is a personal one between the individual and God.

98. On October 4, 2021, Arbitrator Riley[4] denied Keil's appeal, and provided no explanation for the denial. Keil was immediately placed on administrative leave without pay from his employment with NYC DOE.

99. Keil is now faced with the choice imposed by the Exemption Standards: because he holds religious beliefs that forbid him from accepting vaccination, he must either resign from his employment with DOE after a 20-year career, with limited benefits, and waive his constitutional rights; or go on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive his constitutional rights; or be fired effective December 1, 2021.

100.    If Keil wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned over his years of loyal service with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as he has done in the past.

101.    Because the Defendants have refused to respect Keil's constitutional right to religious freedom, have inflicted substantial harm upon him because he has stood up for his rights, and are on the precipice of a deadline, set by themselves, that will change Keil's status even further with the NYC DOE and inflict still more harm, Keil is forced to go to court to restrain further harm and to defend his constitutional rights.

---

[4] Plaintiffs do not concede that the appellate hearings conducted pursuant to the Exemption Standards were

Wherefore, Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the

Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth

in the Exemption Standards insofar as they forbid the employment by NYC DOE of

unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply

with such mandate for religious reasons, staying the October 29 and November 30, 2021

deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious

exemption requests to the Court for its review and requiring his denied religious exemption

request to be reheard pursuant to different standards and procedures, reinstating him to active

employment status, awarding back pay and compensatory damages, restoring his seniority,

tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the

Plaintiff.

## FIFTH CLAIM FOR RELIEF
### (Violation of John De Luca's Right of Free Exercise – Against NYC DOE)

102.     Plaintiff John De Luca realleges and incorporates by reference the allegations

recited in paragraphs 1 - 101 of this Complaint as if fully set forth herein.

103.     Plaintiff John De Luca ("De Luca") is employed by the NYC DOE as a teacher.

He is unvaccinated and he refuses to be vaccinated for religious reasons.

104.     During the 2020-2021 school year, De Luca fulfilled his job responsibilities

remotely.

105.      De Luca is a member of the Catholic church and has a sincerely held religious

---

arbitrations.

belief that he should not receive any of the Covid-19 vaccines.

106.     De Luca was brought up in the Christian faith and has been a lifelong follower of

the teachings of God. His Christian upbringing, religious schooling, and study of the Old

and New Testaments, his lifelong following of the teachings of God, and his daily prayers

with God are the foundation of his personal religious beliefs. Through these experiences,

De Luca believes that he knows that God will seek retribution against him for not

following God's laws and for De Luca's lack of faith in God.

107.     One of God's commandments is "You shall not kill." See, Exodus 20:13. De Luca

understands that all the Covid vaccines have used aborted fetal cell lines as part of their

development or in the testing of the vaccines. De Luca believes that if he were to take any

of these vaccines, he would be participating in the abortions which resulted in these cell

lines and committing a sin against God.

108.     De Luca believes that the Catechism of the Catholic Church supports his religious

beliefs. According to a 1992 volume which dealt with the issue of conscience, "Man has

the right to act in conscience and in freedom so as personally to make moral decisions."

The Vatican II document *Dignitatis Humanae*, says, "He must not be forced to act

contrary to his conscience. Nor must he be prevented from acting according to his

conscience, especially in religious matters." The Code of Canon Law, Canon 748,

Section 1, declares that "All are bound to seek the truth in matters which concern God

and his Church; when they have found it, then by divine law they are bound, and they

have the right to embrace and keep it." While the Catholic Church considers the vaccines

to be morally acceptable, De Luca, like many other Catholics, objects to the vaccines for

reasons of conscience.

109.     In September 2021, De Luca submitted his request for a religious exemption to

the DOE. It was quickly denied, and De Luca filed an appeal. He received notice of his

appellate hearing in late October.

110.     On October 25, 2021, De Luca submitted his appeal documentation, including a

letter from Monsignor Joseph Giandurco, the (Catholic) Pastor of The Church of St.

Patrick, affirming the Catholic teaching that everyone has the right to follow their

conscience and acknowledging De Luca's objection based on his Catholic faith and his

conscience.

111.     On October 26, 2021, De Luca participated in the arbitration hearing on his

appeal.

112.      At the arbitration hearing, the representative from DOE stated that it was the

DOE's position that De Luca's request for a religious exemption was "properly denied

because it is a somewhat political, philosophical objection, and his religious leaders -- the

religious leaders of that denomination -- have clearly and publicly expressed support for

the vaccination."

113.     Arbitrator Peek stated during the hearing that while De Luca had produced

contradictory documents from Louisiana and North Dakota, New York's Department of

Health did state the Johnson and Johnson vaccine was produced using fetal cell lines, but

that the research "definitely proves that neither Pfizer nor Moderna were produced with

any use of fetal cells." He went on to say to De Luca, "when you find out I'm right,

you'll understand."

114.      De Luca was questioned by Arbitrator Peek about his vaccine history during the

hearing. De Luca testified that he had received vaccines as a child but has not taken the

flu vaccine, Tylenol, or aspirin in over 5 years.

115.      The DOE representative went on to say that De Luca's religious leaders have

"clearly and publicly" expressed support for the vaccine. She noted that the September

24, 2021, Clergy letter De Luca submitted in his exemption application explicitly states

that the vaccine is morally acceptable and that the church recommends that the

vaccination be taken. The DOE's advocate went on to note that the Pope has spoken

publicly in favor of the vaccine and has encouraged all to get vaccinated.

116.      The DOE representative characterized De Luca's religious beliefs as personal,

political, and philosophical, and were thus not a legitimate reason to have an exemption.

117.      The DOE representative repeated the claim of the appellate examiner that the

Commissioner of the NYC Department of Health and Mental Hygiene had stated that

neither Pfizer nor Moderna use any fetal cell lines for the production and manufacturing

of the vaccines.

118.      The DOE representative represented to the hearing officer that De Luca had

provided critical "in-person" services and that it would be a severe undue hardship for the

NYC DOE not to have a vaccinated teacher due to the shortage of teachers. She said that

the DOE is required to provide students with an environment that is safe and conducive

to learning.

119.      Arbitrator Peek asked De Luca if he was aware of the Pope's statement that there

is a moral obligation to get vaccinated. "If you found out that the Pope said that people

have a moral obligation to take the vaccine, what impact does that have on you?" When De Luca said "no," Arbitrator Peek went on to ask "if the leader of the Catholic Church, or one of the major leaders of the Catholic Church, says you have a moral obligation to be vaccinated, how do you, in your mind, say that that would be against the Word of God, and you would be condemned for that and deemed a murderer, when your religious leader says you should do it?"

120. Arbitrator Peek continued to question the legitimacy of De Luca's beliefs, stating that documents he had provided containing Church positions on personal conscience were from the 1990s and "none of them dealt with this issue of vaccination."

121. On October 26, 2021, Arbitrator Peek denied De Luca's appeal without any explanation for the denial.

122. De Luca is now faced with the choice imposed by the Exemption Standards: because he holds religious beliefs that forbid him from accepting vaccination, he must either resign from his employment with DOE, with limited benefits, and waive his constitutional rights; or go on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive his constitutional rights; or be fired effective December 1, 2021.

123. If De Luca wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned from his work with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work

environment – as he has done in the past.

124.    Because the Defendants have refused to respect De Luca's constitutional right to

religious freedom, have inflicted substantial harm upon him because he has stood up for

his rights, and are on the precipice of a deadline, set by themselves, that will change his

status even further with the NYC DOE and inflict still more harm, De Luca is forced to

go to court to restrain further harm and to defend his constitutional rights.

Wherefore, Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the

Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth

in the Exemption Standards insofar as they forbid the employment by NYC DOE of

unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply

with such mandate for religious reasons, staying the October 29 and November 30, 2021

deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious

exemption requests to the Court for its review and requiring his denied religious exemption

request to be reheard pursuant to different standards and procedures, reinstating him to active

employment status, awarding back pay and compensatory damages, restoring his seniority,

tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the

Plaintiff.

## SIXTH CLAIM FOR RELIEF
### (Violation of Sasha Delgado's Right of Free Exercise – Against NYC DOE)

125.    Plaintiffs Sasha Delgado ("Delgado") realleges and incorporates by reference the

allegations recited in paragraphs 1 - 124 of this Complaint as if fully set forth herein.

126.     Delgado has worked for the New York City Department of Education for 15 years, and as an Individualized Education Program teacher for the past nine years. Over the course of those years, she has accrued seniority in the Department, received tenured status, accumulated Years In Service that count toward the right to retirement benefits, and accumulated CAR credits that under normal circumstances can be cashed in for income at the time of retirement. She is unvaccinated and she refuses to be vaccinated for religious reasons.   The Vaccine Mandate threatens to deprive her not only of her career but also all of the economic and retirement benefits that she has accumulated over her fifteen years of service with the Department.

127.     During the 2020-2021 school year, Delgado fulfilled her job responsibilities remotely.

128.     Delgado was raised as a member of the Catholic church, attended mass every Sunday, completed all of her Catholic sacraments, and attended Catechism classes growing up.

129.     As a teenager, she joined her church's youth group and volunteered as a catechist, teaching religious instruction to children.

130.     Delgado attended a Catholic college because she felt that it was important to her to incorporate religious values into her education.

131.     In early adulthood, Delgado became a born-again Christian.

132.     Since then, Delgado have taken Christian-based classes at churches, attended Christian retreats, and attended Christian-led conferences and events. She participates in weekly fellowship conference calls with other believers and her pastor where they hear

preaching, pray and read the Scriptures from the Bible.

133.     Delgado was baptized at Christian Revival Temple 14 years ago.

134.     She is currently a member of Miracle Tabernacle Ministries.

135.     In Delgado's spiritual journey as a Christian, the more she read the Bible, studied, prayed, and fasted, the more she felt led by the Lord not to take any vaccinations, or to allow her son to have them.

136.      Delgado believes that the Word of God states that we are created in the image of God, and this affirms the unique value of all human life. She believes as a Christian that her body is the temple of the Holy Spirit and therefore, she is forbidden to inject His temple with the COVID-19 vaccine. She cites as support for her beliefs 1 Corinthians 3:16: "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst?" She also cites 1 Corinthians 3:17: "[i]f anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple."

137.     Delgado objects to the Pfizer and Moderna COVID-19 vaccines because, she understands, in the early development of mRNA vaccine technology, they used fetal cells for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein), or to characterize the SARS-CoV-2 spike protein. Likewise, she understands that the nonreplicating viral vector vaccine produced by Johnson & Johnson required the use of fetal cell cultures, specifically PER.CG, in order to produce and manufacture the vaccine. Delgado believes that these vaccines would alter her God-given body and that they are the equivalent of a prohibited "unclean food," as referenced

in the Bible, that would harm her conscience.

138.     As a result of these religious beliefs, Delgado does not drink any alcohol or eat pork because she is forbidden to eat or drink things that are unclean and alter the state of mind.  She does not use products on her skin or hair that have toxins and chemicals in them because she wants to take care of her body as God's temple.

139.     On September 19, 2021, Delgado submitted her original request for a religious exemption to the DOE. Her application informed the adjudicators about her religious journey and her religious objections to vaccination as set forth above.

140.     On September 22, 2021 the DOE denied Delgado's application, stating that

> [y]our application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

141.     The denial notice also stated that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate."

142.     Delgado requested an appeal and submitted an additional letter from her pastor, Ron Cohen.

143.     On October 1, 2021, Delgado attended the hearing on her appeal. She was represented by Christina Martinez, Esq. at the appeal.

144.     At the appeal hearing, Karen Solimando, the representative from DOE,

emphasized that the DOE was applying a "very narrow" religious exemption to Delgado's proceeding, and informed the hearing officer that Delgado's exemption request had been denied for three reasons.

145.     It should be noted that the United States Constitution requires a "broad" reading to be given to claims for religious exemption, not a "narrow" one. Attorney Solimondo's statement at the appeal hearing constitutes an admission that the DOE's initial denial was based on an unconstitutional attitude of hostility toward religious freedom.

146.     First, Attorney Solimondo said that Delgado did not have a pastor's letter supporting her request.

147.     However, while this is an unconstitutional requirement, Delgado had sent a letter from her pastor to the general appeals email address. Arbitrator David Riley confirmed at the hearing that he had the pastor's letter within his file.

148.     Attorney Solimando next stated that, "I believe that there's no theological objection raised by many if not all of the denominations in Christianity to the vaccine."

149.     The requirement that her request be denied if the leader of her religious organization has spoken publicly in favor of the vaccine is a violation of Delgado's rights under the First Amendment of the Constitution. Even if this requirement had been legal, however, Attorney Solimando's statement was incorrect as a matter of fact.  According to Delgado, the leader of her religious organization, her pastor, has never spoken publicly in favor of the religious vaccine. With respect to Delgado's statement that the vaccination violates her religious beliefs, Pastor Cohen's letter stated, "I do stand and agree with her and ask that she be free of this mandate."

150.     Attorney Solimando explained the third reason for the denial of Delgado's religious exemption request as follows:

> [T]o the extent that the objection is predicated on the use of fetal cell tissue or fetal cell lines the Department of Health and Mental Hygiene has submitted a letter to the arbitration panel which clearly states that none of the Covid vaccines contain fetal tissue or fetal cells and that the fetal cell line that was used for the vaccine production and manufacturing were used only in the early research phases and in a way that is very common in the development of drugs including very common over-the-counter medications such as Tylenol, Advil, Aspirin, etc. So I don't believe that is a basis to support this exemption request. I'll also note it's very clear in that letter that no fetal cells, tissue, or cell lines are used in the production of Pfizer or Moderna vaccines."

151.     Delgado's initial application for exemption had informed the DOE that her religious objection is to the use of fetal cells in any aspect of the vaccine, including its testing, research, or manufacturing. She understands that no fetal cells are actually present in the vaccine, but argued to the appellate examiner that this did not make her religious objection any less religious or sincere.

152.     Further, Delgado understands that Attorney Solimando's statement that "no fetal cells, tissue, or cell lines used in the production of Pfizer or Moderna" is untrue; Delgado understands that while there are no fetal cells, tissues, or cell lines *present in* the Pfizer or Moderna, they were used in the *manufacturing* of Pfizer and Moderna vaccines.

153.     On October 4, 2021, Arbitrator Riley denied Delgado's appeal, and provided no explanation for the denial. Delgado was immediately placed on administrative leave without pay from her employment with NYC DOE.

154.     Delgado is now faced with a grim choice imposed by the Exemption Standards:

because she holds religious beliefs that forbid her from accepting vaccination, she must either resign from her employment with DOE after a 15-year career, with limited benefits, and waive her constitutional rights; or go on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive her constitutional rights; or be fired effective December 1, 2021.

155.     If Delgado wishes, or needs, to earn paid income between now and next September, instead of draining her savings, the Defendants are requiring her to surrender almost all of the benefits and other seniority and economic rights that she has earned over her years of loyal service with the DOE. She is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as she has done in the past.

156.     Because the Defendants have refused to respect Delgado's constitutional right to religious freedom, have inflicted substantial harm upon her because she has stood up for her rights, and are on the precipice of a deadline, set by themselves, that will change her status even further with the NYC DOE and inflict still more harm, Delgado is forced to go to court to restrain further harm and to defend her constitutional rights.

Wherefore, Plaintiff Sasha Delgado asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious

exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## SEVENTH CLAIM FOR RELIEF
### (Violation of Dennis Strk's Right of Free Exercise – Against NYC DOE)

157.     Plaintiff Dennis Strk realleges and incorporates by reference the allegations recited in paragraphs 1 - 156 of this Complaint as if fully set forth herein.

158.     Plaintiff Dennis Strk ("Strk") has been a Social Studies teacher at Francis Lewis High School in Queens for the past 13 years. Over the course of those years he has accrued seniority in the Department, received tenured status, accumulated Years In Service that accrue toward his right to retirement benefits, and accumulated CAR credits that under normal circumstances can be cashed in for income at the time of retirement. He is unvaccinated and he refuses to be vaccinated for religious reasons.  The Vaccine Mandate threatens to deprive him not only of his career but also all of the economic and retirement benefits that he has accumulated over his years of service with the Department.

159.     Dennis Strk was profoundly influenced early in life by the religious values of his grandparents and parents and by their strong faith in God. Strk learned to pray in both English and Croatian, celebrated Christian holidays such as Easter and Christmas, and

attended religious school once his parents could afford it.

160.     Strk's faith deepened as a teenager, when he had the privilege of attending Saint

Francis Preparatory School. There, he learned to truly live his faith in the service of

others, following the model of Christ, and he grew passionate about social justice. During

the spring break of Strk's senior year, he had the opportunity to act on his faith by

attending a service trip to Kentucky to help the local community with a variety of

projects such as repairing metal roofs, community cleanup, and attending religious

services.

161.     As he entered adulthood, Strk learned more about Christian approaches to health

as he further explored the Holy Scriptures and began to realize that vaccination is a sin

and an affront to God's plan for His people and to the teachings of the Bible.

162.     Strk believes that conscious sins are addressed in Hebrews 10:26-29, which states

that if we deliberately keep on sinning after we have received knowledge of the truth we

are deserving of punishment. Since he believes that vaccination would be a conscious

betrayal of his faith, he has not been vaccinated in 13 years.

163.     Strk believes that our bodies are created in the image of God and are sacred

temples that are not to be defiled. Strk understands that Covid-19 vaccines contain blood

or cells from animals, and the research involved in vaccines also uses these profane

ingredients as well. He believes that if these substances are then injected into the

bloodstream, this results in the defilement of our sacred temples. He believes that such

vaccinations therefore violate the teachings found in the Book of Leviticus 17:1 which

says that the life of a creature is in the blood.

164.     Because he understands that vaccines contain substances that defile our blood and lead to a betrayal of faith, Strk is committed to living a pure and holy life by refusing vaccination, as expressed in 2 Corinthians 7:1-4. Strk believes that his body is not just a sacred temple created in the image of God; it is also a vessel of worship (Romans 12:1-3).

165.     If he were to depend on vaccination as his primary source of preventative health, Strk believes that he would be betraying his trust in God's power to heal illness. Strk believes that the source of his health comes first and foremost from God, citing Jeremiah 17:5-10 for a powerful explanation of the consequences faced by those who trust more in man than in God.

166.     On September 17, 2021, Strk submitted his request for a religious exemption to the DOE, explaining his religious objections to the adjudicator as set forth above.

167.     On September 19, 2021, the DOE denied Strk's application, stating that he had failed to meet the criteria for a religious-based accommodation, that under the Commissioner of Health's Order, unvaccinated employees cannot work in DOE buildings without posing a direct threat to people's health and safety, and that offering another worksite would pose an undue hardship on the DOE.

168.     On September 20, 2021, Strk submitted, as additional appeal documentation, a PDF of a Federal Register publication regarding "Federal Law Protections for Religious Liberty" which can be accessed here: https://www.govinfo.gov/content/pkg/FR-2017-10-26/pdf/2017-23269.pdf.

169.     On September 24, Strk took part in the hearing on his appeal.

170.     At the appeal hearing, the representative from DOE stated that one of the reasons Strk's exemption was denied was that he did not have a letter from clergy. Strk responded that a clergy letter is not required under the law, but the representative from DOE stated that it was required under the arbitration award.

171.     The DOE representative also questioned Strk's objection to the vaccines' connection to aborted fetal cells. She stated that there is no actual aborted fetal cell tissue as an ingredient in the vaccines.

172.     Strk explained that even if there is no fetal tissue in the vaccine itself, his objection is to the use of aborted fetal cells in the research of the vaccine. Furthermore, his objection is not just to the testing or manufacturing of the vaccines using fetal tissue, but also to the use of animal blood in the development of vaccines, since he believes that the defiling of blood leads to a betrayal of faith.

173.     The representative from DOE also stated that accommodating Strk's religious beliefs would be an undue hardship on the DOE's daily operations

174.     Strk was informed that Arbitrator Carol Hoffman denied his appeal in an email dated October 5, 2021, although the denial itself was dated September 24, 2021.

175.     The DOE is now forcing Strk to decide by October 29, 2021 whether to be placed on unpaid leave with benefits for a limited time period, with no right to engage in paid employment elsewhere (but only if he surrenders his legal right to challenge the DOE's actions), to resign and retain his benefits for a limited time period (but only if he surrenders his legal right to challenge the DOE's actions), or to lose his job and his health insurance.

176.    If Strk wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned over his years of loyal service with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as he has done in the past.

177.    Because the Defendants have refused to respect Strk's constitutional right to religious freedom, have inflicted substantial harm upon him because he has stood up for his rights, and are on the precipice of a deadline, set by themselves, that will change his status even further with the NYC DOE and inflict still more harm, Strk is forced to go to court to restrain further harm and to defend his constitutional rights.

Wherefore, Plaintiff Dennis Strk asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

**EIGHTH CLAIM FOR RELIEF**
**(Violation of Sarah Buzaglo's Right of Free Exercise – Against NYC DOE)**

178.    Plaintiff Sarah Buzaglo realleges and incorporates by reference the allegations recited in paragraphs 1 - 177 of this Complaint as if fully set forth herein.

179.    Plaintiff Sarah Buzaglo ("Buzaglo") has been employed by the NYC DOE since 2017 as a teacher. She is unvaccinated and she refuses to be vaccinated for religious reasons.   The Vaccine Mandate threatens to deprive her not only of her career but also of economic and retirement benefits that she has accrued during her employment with the Department.

180.    During the 2020-2021 school year, Buzaglo fulfilled her job responsibilities remotely.

181.    Buzaglo is an Orthodox Jew. From birth, she was raised to believe in God and the laws of the Torah which provide a blueprint for how she lives her life. The clothing she chooses to wear each day follow the laws of "*tzniut*," modesty. The food she eats daily is in accordance with the laws of "*kashrut*," the kosher diet. The prayers she utters each morning, the Sabbath she welcomes each weekend, and the holidays she celebrates each year all are in accordance with the laws of the Torah as she believes God commanded.

182.    When she was old enough to attend pre-school, Buzaglo's parents enrolled her in a small educational program located in a nearby synagogue. At the age of three, she was already learning how to sing Sabbath songs and morning blessings, as well as songs about Jewish history.

183.     After pre-school Buzaglo was enrolled in Prospect Park Yeshiva, an all-girls yeshiva where students studied two curricula: Judaic studies in the morning, and secular studies in the afternoon.

184.     Buzaglo's Judaic studies included daily classes and exams in Bible study (*Tanach*), Prayer (*Beu'r Tefilla*), Psalms (*Tehillim*), Jewish Law (*Halacha*), Jewish History (*Historia*), Hebrew (*Ivrit*), Sages Commentary on the Torah (*Rashi*), The Book of Prophets (*Navi*), and the weekly Torah portion (*Parsha*). She engaged in the study of these subjects from first to eighth grade, which left a lasting impact on her formative years.

185.     After graduating from Prospect Park Yeshiva, Buzaglo chose to attend an even more religious high school program at Yeshiva of Brooklyn High School for Girls.

186.     At Yeshiva of Brooklyn, Buzaglo's faith strengthened. With Rabbi Mandel and Rebbetzin Spector (the Hebrew principal) encouraging and supporting her, she led the morning prayers for her class. She volunteered with the school's "*chessed*" organization to visit an elderly woman, as God commanded his people to be kind and compassionate. Buzaglo began attending prayers at synagogue frequently. She volunteered as a counselor at the weekly Sabbath program for children in her local synagogue, telling them stories about the weekly Torah portion and organizing games to keep them entertained so that their parents could rest. Eventually Buzaglo was asked to become the chapter leader and managed a team of eight to ten counselors, running the Sabbath *Bnos* Program until graduation.

187.     Following her graduation from high school, Buzaglo again chose to strengthen her faith further by pursuing a gap year of study in a seminary program for women located in the holy city of Jerusalem.

188.     When Buzaglo graduated from Meohr Bais Yaakov Seminary and returned to New York City, she determined that she wanted to engage in God's holy work and continue teaching. She accepted a position teaching fourth and fifth grade at the Hassidic all girl's school Bais Yaakov D'Chassidei Gur. During this time, Buzaglo attended the Jewish program at Touro College, where she pursued a Bachelor's Degree. Touro's program accommodated her religious needs by providing kosher food in the cafeteria and scheduling no classes during Jewish holidays. Later, Buzaglo taught English classes at Bnot Chaya Academy, a program for Jewish teens at risk, many who were victims of sexual abuse, physical abuse, drug addiction, neglect, eating disorders, and mental health issues.

189.     After working in Bnot Chaya Academy for five years, Buzaglo completed a Master's degree in Education and went to work for New York City public schools. She has worked since then in a school with a large immigrant population of students with diverse religious, ethnic, and socio-economic backgrounds. Buzaglo's own religious background has helped her to understand and mentor her NYC public school students. When a Muslim student was being bullied for wearing a hijab, Buzaglo encouraged her to be proud of her choice to dress modestly and addressed the bullying. When her Muslim students struggled to focus during Ramadan, she sympathized and created a lighter lesson plan and workload because she understood hunger pains from fasting on Yom Kippur and

Tisha Ba'av. When some students needed help to obtain permission to miss class time for afternoon prayers, she reached out to an imam to help. When organizing class trips, Buzaglo always ensured that kosher, vegan, and halal food options were available to accommodate all of her public school students' diverse dietary needs.

190.     Buzaglo's religious opposition to vaccination developed after she reached adulthood. She was vaccinated as a child, as her pediatrician advised her parents.

191.     However, after consulting with her Rabbi as an adult and doing her own study of scripture and Torah law, Buzaglo discovered a host of issues that exist with vaccination that go against her religious beliefs.

192.     For  several reasons based in scripture and Torah law, vaccines are problematic for Buzaglo. She adheres to a personal interpretation of what Judaism and the Torah mean to her. The Jewish faith allows for individual translation by each member of the community, and it is up to the individual worshipper to process the messages of the Torah and act accordingly. Through her studies, Buzaglo developed the following religious beliefs relating to vaccinations:

   a.  Sanctity of Blood: The Torah dictates that man should not mix the blood of man and that of animals. (*Rashi, Kesuvos* 60A) According to Buzaglo, it is well documented that a majority of vaccines are prepared using tissue cultures from animals. This directly contradicts the teachings of Buzaglo's faith as she understands it. Additionally, the Torah prohibits Jews from eating blood (Leviticus 19:19) and Buzaglo understands from this that injecting blood into one's bloodstream is a direct prohibition as well. To Buzaglo, this prohibition

practically applied means that a vaccine that contains blood cells taken from the kidney of a monkey, etc. and is injected into human blood vessels is considered problematic, sinful, and blasphemous to God's name.

b. Sanctity of Life/Abortion: As Buzaglo understands it, Judaism holds dear the value of human life. But in her view, vaccines violate the sanctity of human life. While conducting her research, she learned that a majority of vaccines (including Varicella, Rubella, Hepatitis A, Rabies, and Covid-19) are made by growing viruses in fetal cells. Buzaglo learned that both the Moderna and Pfizer vaccines were tested for the presence of spiked protein on human kidney cells which were removed from an aborted fetus. As she understands it, the Johnson & Johnson vaccine was actually made using fetal retinal cells.

c. Both Genesis and Deuteronomy discuss the sanctity of life including how we were created in God's image, and that to defile God's image is to defile God himself. As Buzaglo understands Torah, a fetus is considered a human life, and to end that life is murder and a direct violation of the Torah.

d. Buzaglo has adopted views on vaccination that she understands Torah to require. To her, the act of bringing life into this world brings holiness and the image of God with it, and the notion of injecting into her own bloodstream sells from a poor fetus is blasphemous. Buzaglo believes that taking a vaccine means participating in sin and going against God's will and the sanctity of life she holds dear.

e.  Foreign Materials: As Buzaglo understands it, the Torah prohibits us from welcoming any foreign materials into the body, and this is precisely what vaccines are. As a Torah observant Jew, Buzaglo keeps her body and blood unpolluted and without contamination. She considers these vaccinations to represent a defilement of the body, blood, and soul.

f.  Self - Flagellation: Buzaglo understands that Torah observant Jews, like herself, are forbidden to self-flagellate. As she understands it, in Judaic law, one is not permitted to inject oneself with a vaccine that offers no significant medical curative benefit to the patient, even if it is allegedly good for others. As she understands it, Scripture prohibits inflicting oneself with Biblically unnecessary gashes, wounds or pokes: "You are children of the Lord, your God. You shall not poke yourselves . . ." ( Deuteronomy 14:1.) "You shall not make incisions in your flesh for any soul . . . I am the Lord." (Leviticus 19:28). The same lesson is further underscored in other scriptural verses (e.g., Leviticus 21:5). To Buzaglo, this is a serious Biblical injunction. In her case, since she has natural immunity protecting her from COVID, she perceives no health need for her to receive an injection. As she sees it, to obtain an unnecessary injection would be in direct violation of Judaic law.

g.  Exposure to Unnecessary Risk: Buzaglo believes that Torah observant Jews like herself are forbidden to expose themselves to risk that is unnecessary to the individual (in her case, she believes that natural immunity to COVID-19 makes vaccination unnecessary). In her view, Scripture does not permit exposing oneself

to any risk in the absence of a significant medical benefit to one's own self that outweighs the risk. She finds support in a Torah verse that states: "Guard your own soul scrupulously." (Deuteronomy 4:9). As she interprets Torah, if a Torah-adherent individual has natural immunity or, for some other reason, faces minimal or negligible risk from COVID, he is prohibited to expose himself to the risks of the vaccine.

h.  Betrayal of Faith in God: As a Torah observant Jew, Buzaglo believes that God is the ultimate healer. Each year during the high holy day of Yom Kippur Buzaglo utters the prayer "He alone determines who shall live, and who shall die, who by fire, who by drowning, who by illness, who by pestilence, etc." Every morning as she opens her eyes, Buzaglo utters the Modeh Ani prayer: "Thankful am I in your presence, for you have returned to me my soul, how great is your mercy." Every morning, as she utters morning prayers, Buzaglo says the blessing of Refaeinu: "Heal us, God, then we will be healed; save us, then we will be saved, for You are our praise. Bring complete recovery for all our ailments, for You are G-d, King, the faithful and compassionate Healer. Blessed are You, Hashem, Who heals the sick of His people Israel." Buzaglo prays for her students suffering from physical and mental ailments when she says this prayer. She prayed for herself, when she contracted Covid last year, and God answered her prayers. Within a week she was feeling stronger and healthier.

i.  Buzaglo's faith is in God as the ultimate healer, and she feels that her faith must be in him one-hundred percent, for that is the covenant she entered with him.

63

Buzaglo keep his commandments, and in turn she believes that He will not bring pestilence or disease into her home. (Exodus 15:26). Seeking health from a vaccine, as if it were a solution to illness, or able to protect her from whatever fate God has planned for her, is sinful and heretical in her view. She believes that to do so would weaken her belief in God. Reliance upon a vaccine, as she sees it, would remove the opportunity for prayer and ruin the spiritual connection between herself and God. She believes that reliance on vaccines promises eternal and perfect health without earning it. As a Torah observant Jew, Buzaglo refuses to bow before a false God, like a pharmaceutical company or a vaccine. She will turn with prayers as she always has to the ultimate healer - her creator.

j.  Altering God's Creation: The Book of Genesis states that God created man in His image. It is Buzaglo's belief that God knew what he was doing and the body of man needs no "fixing" by mankind. Buzaglo sees vaccines as "fixing," for mankind cannot improve on G-d's creation. As she sees it, the mRNA vaccine inserts a synthetic genetic code into her body, to prompt her body to create spiked proteins which will "save her" from the virus. But God has created man, not Moderna or Pfizer or J&J, or any scientist working for any team of vaccine researchers and developers. Buzaglo believes that if she were to accept the vaccine-makers' synthetic code into her body it would be as if she were telling God, "Hey, Creator, you forgot to give me this code that will save my life!" To Buzaglo, that would be sinful, heretical and blasphemous.

193.     On September 20, 2021, Buzaglo submitted her request for a religious exemption to the DOE. She supported her exemption request with substantially all the information that is set forth above.

194.     On September 22, 2021, DOE denied her request in an email that stated the following:

> We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate. Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

195.     Notably, the denial also stated that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate."

196.     On September 23, 2021, Buzaglo submitted an appeal letter to the DOE, explaining that she did not agree that a clergy letter was constitutionally required, but complying with the request for such a letter..

197.     Buzaglo's rabbi stated in his letter that he had discussed the matter with her, that she cited authentic scriptural sources that underlie valid objections under Torah law, and that he and the congregation are in complete agreement. He asserted, "[i]n fact, our congregation categorically opposes this vaccine as a matter of religious tenet, . . ."

198.      During her appeal hearing on October 5, 2021, Buzaglo explained that various communities in Judaism have differing levels of religious observance.  She gave an example from her visit to a South American town where no kosher food was available. Her Conservative Jewish friend had permission from her rabbi to eat a kosher species of fish at a non-kosher restaurant. Her Orthodox Ashkenazi friend had permission to eat a salad served on a plastic plate (not contaminated by non-kosher meat). Buzaglo's rabbi, however, told her that she was forbidden from ingesting anything at all in that restaurant as there was no way of knowing if non-kosher meat had touched any of the cutlery or foodstuffs. As a result, Buzaglo had to buy raw fruit at a market.

199.      When it was his turn to speak, the DOE's representative admitted that he was unfamiliar with how diverse Judaism and its leadership and laws can be. He then shared a link to an article from the Jerusalem Post citing how the Sephardic Chief Rabbi of Israel had spoken in favor of a vaccine.

200.      Buzaglo was not allowed to respond to the article, but the Sephardic Chief Rabbi of Israel is an elected political position, the Sephardic Chief Rabbi of Israel is not her rabbi nor her rabbi's mentor, and she is not bound by his opinions or rulings.

201.      Buzaglo never received direct notice of the denial of her appeal, but NYC DOE informed her via email on October 8, 2021 that she had been placed on leave without pay, signifying that her appeal had been denied.

202.      On information and belief, several other Orthodox Jews who based their religious exemptions requests to the DOE vaccine mandate on the same sincerely held religious beliefs that Buzaglo expressed in her application were granted religious exemptions.

203. Buzaglo is now faced with a wrenching choice imposed by the Exemption Standards: because she holds religious beliefs that forbid her from accepting vaccination, she must either resign from her employment with DOE, with limited benefits, and waive her constitutional rights; or continue on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive her constitutional rights; or be fired effective December 1, 2021.

204. If Buzaglo wishes, or needs, to continue to receive her DOE health insurance between now and next September, the Defendants are requiring her to surrender any rights she has to challenge her dismissal. She is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as she has done in the past.

205. Because the Defendants have refused to respect Buzaglo's constitutional right to religious freedom, have inflicted substantial harm upon her because she has stood up for her rights, and are on the precipice of a deadline, set by themselves, that will change her status even further with the NYC DOE and inflict still more harm, Buzaglo is forced to go to court to restrain further harm and to defend her constitutional rights.

Wherefore, Plaintiff Sarah Buzaglo asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious

exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## NINTH CLAIM FOR RELIEF

### (Liability Under 42 U.S.C. sec. 1983 against all Defendants)

206.     Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1 - 205 of this Complaint as if fully set forth herein.

207.     Defendants NYC and NYC DOE acted under the color of state law, and at the direction of the individual Defendants, when they imposed the Vaccine Mandate, cooperated in the creation of the Exemption Standards and acceded thereto, enforced and applied the terms of the Vaccine Mandate and the Exemption Standards and denied Plaintiffs' requests for religious exemption and appeals from such denials.

208.     The Plaintiffs have been, and are being, deprived by the activities of the Defendants of their right effectively to apply for and receive religious exemptions from the vaccination requirements of the Vaccine Mandate.  Their right to religious freedom is being substantially and unfairly burdened.

209.     Defendants' Vaccine Mandate created a system of unconstitutional and unfair exemption application procedures that are designed to deny the religious exemption applications of as many people as possible, including Plaintiffs.  Through the creation,

application and enforcement of the standards and procedures set forth in the Exemption Standards, Defendants have ensured that the Plaintiffs, and many others, have been denied a fair adjudication and accommodation of their religious freedom rights.

210.   The Plaintiffs did not at any point or in any way effectively consent to the unconstitutional actions of the Defendants, nor have they ever effectively waived their civil right to demand in court that the Defendants respect their First Amendment freedoms.

211.   On information and belief, Defendants Commissioner Chokshi and Chancellor Porter, or subordinates directly subject to their control, formulated the Vaccine Mandate that NYC and the NYC DOE have enforced against the Plaintiffs, and conspired in the establishment of unconstitutional standards for the consideration of Plaintiffs' religious exemption requests.

212.   Plaintiffs have suffered damages, including without limitation lost salaries, lost potential earnings, loss of health insurance coverage, loss of seniority, loss of employment and deprivation of their right to religious freedom.

WHEREFORE, Plaintiffs request judgment declaring that the Vaccine Mandate, as implemented by the Exemption Standards, is void and unenforceable as against them and all other persons similarly situated, an award of damages as further described above in an amount to be determined by the Court, and an award requiring Defendants to pay Plaintiffs' legal fees and expenses in this matter pursuant to 42 U.S.C. sec. 1983.

**REQUEST FOR RELIEF**

69

1.  Plaintiffs respectfully ask this Court for the following relief:

    1.  On the First Claim for Relief (paragraphs 45 through 70 hereof): Plaintiffs ask the
        Court to find that the Vaccine Mandate and the Exemption Standards are invalid
        because they violate the Free Exercise Clause of the First Amendment to the
        United States Constitution, to permanently stay the October 29 and November 30,
        2021 deadlines set forth in the Exemption Standards, to issue a permanent
        injunction against the enforcement of the Vaccine Mandate and the Exemption
        Standards insofar as they forbid the employment by NYC DOE of unvaccinated
        individuals without exemptions from the Vaccine Mandate who refuse to comply
        with such mandate for religious reasons, to require NYC DOE to accommodate
        the religious exemption requests of unvaccinated employees, including Plaintiffs,
        in a constitutionally permissible manner, to order the NYC DOE to restore all
        employees who have been adversely affected by the Vaccine Mandate or the
        Exemption Standards to employment with NYC DOE with back pay and
        restoration of time in service, seniority and tenure rights, to award actual and
        consequential damages to Plaintiffs, and to award attorney's fees and costs to
        Plaintiffs.

    2.  On the Second Claim for Relief (paragraphs 71 through 76 hereof): Plaintiffs ask
        the Court to find that the Vaccine Mandate and the Exemption Standards are
        invalid because they violate the Establishment Clause of the First Amendment to
        the United States Constitution, to permanently stay the October 29 and November

30, 2021 deadlines set forth in the Exemption Standards, to issue a permanent

injunction against the enforcement of the Vaccine Mandate and the Exemption

Standards insofar as they forbid the employment by NYC DOE of unvaccinated

individuals without exemptions from the Vaccine Mandate who refuse to comply

with such mandate for religious reasons, to require NYC DOE to accommodate

the religious exemption requests of unvaccinated employees, including Plaintiffs,

in a constitutionally permissible manner, to order the NYC DOE to restore all

employees who have been adversely affected by the Vaccine Mandate or the

Exemption Standards to employment with NYC DOE with back pay and

restoration of time in service, seniority and tenure rights, to award actual and

consequential damages to Plaintiffs, and to award attorney's fees and costs to

Plaintiffs.

3.   On the Third Claim for Relief (paragraphs 77 through 81 hereof): Plaintiffs ask

the Court to find that the Vaccine Mandate is invalid because it is

unconstitutionally vague in violation of the Due Process Clause of the Fourteenth

Amendment to the United States Constitution, to issue a permanent injunction

against the enforcement of the Vaccine Mandate and Exemption Standards insofar

as they forbid the employment by NYC DOE of unvaccinated individuals without

exemptions from the Vaccine Mandate who refuse to comply with such mandate

for religious reasons, to require NYC DOE to accommodate the religious

exemption requests of unvaccinated employees, including Plaintiffs, in a

constitutionally permissible manner, to order the NYC DOE to restore all

71

employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

4. On the Fourth  Claim for Relief (paragraphs 82 through 101 hereof): Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

5. On the Fifth Claim for Relief (paragraphs 102 through 124 hereof): Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the

employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

6. On the Sixth Claim for Relief (paragraphs 125 through 156 hereof): Sasha Delgado asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

7.  On the Seventh Claim for Relief (paragraphs 157 through 177 hereof): Plaintiff

    Dennis Strk asks this Court to issue a permanent injunction forbidding the

    Defendants to enforce the Vaccine Mandate and the standards, procedures and

    deadlines set forth in the Exemption Standards insofar as they forbid the

    employment by NYC DOE of unvaccinated individuals without exemptions from

    the Vaccine Mandate who refuse to comply with such mandate for religious

    reasons, staying the October 29 and November 30, 2021 deadlines, requiring

    NYC DOE to submit proposed revised rules for the adjudication of religious

    exemption requests to the Court for its review and requiring his denied religious

    exemption request to be reheard pursuant to different standards and procedures,

    reinstating him to active employment status, awarding back pay and

    compensatory damages, restoring his seniority, tenure rights, Years in Service and

    CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

8.  On the Eighth Claim for Relief (paragraphs 178 through 205 hereof): Plaintiff

    Sarah Buzaglo asks this Court to issue a permanent injunction forbidding the

    Defendants to enforce the Vaccine Mandate and the standards, procedures and

    deadlines set forth in the Exemption Standards insofar as they forbid the

    employment by NYC DOE of unvaccinated individuals without exemptions from

    the Vaccine Mandate who refuse to comply with such mandate for religious

    reasons, staying the October 29 and November 30, 2021 deadlines, requiring

    NYC DOE to submit proposed revised rules for the adjudication of religious

    exemption requests to the Court for its review and requiring her denied religious

exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

9. On the Ninth Claim for Relief (paragraphs 206 through 212 hereof): Plaintiffs request judgment declaring that the Vaccine Mandate, as implemented by the Exemption Standards, is void and unenforceable as against them and all other persons similarly situated, an award of damages as further described above in an amount to be determined by the Court, and an award requiring Defendants to pay Plaintiffs' legal fees and expenses in this matter pursuant to 42 U.S.C. sec. 1983.

Respectfully submitted,

NELSON MADDEN BLACK LLP
*Attorneys for Plaintiffs*

By: Jonathan R. Nelson (JN-8796)

475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4300

<u>VERIFICATION</u>

Pursuant to 28 U.S. C. Section 1746, I hereby declare that the foregoing statements are true and accurate to the best of my knowledge, except as to those statements that are made on information and belief, and as to such statements, I verily believe them.

John De Luca