UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
MATTHEW KEIL, JOHN DE LUCA, SASHA
DELGADO, DENNIS STRK and SARAH
BUZAGLO,

       Plaintiffs,

  - against -

THE CITY OF NEW YORK; BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT
OF NEW YORK; DAVID CHOKSHI, IN HIS
OFFICIAL CAPACITY OF HEALTH
COMMISSIONER OF THE CITY OF NEW YORK;
and MEISHA PORTER, IN HER OFFICIAL
CAPACITY AS CHANCELLOR OF THE NEW
YORK CITY DEPARTMENT OF EDUCATION,

       Defendants
-----------------------------------------------------------------X

Case No. 1:21-cv-08773

## DECLARATION OF CHRISTINA MARTINEZ, ESQ.

Christina Martinez, Esq. declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am an attorney duly admitted to practice law in the State of New York.

2. I am a solo practitioner and have represented 15 employees in arbitration hearings with the New York City Department of Education ("DOE"), the United Federation of Teachers ("UFT"), and various arbitrators from Scheinman Arbitration & Mediation Services ("SAMS") over the denial of their religious exemption requests to the DOE's vaccination mandate.

3. I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction and Application for a Temporary Restraining Order.

4. I know the facts stated herein to be true based upon my personal knowledge, except for those statements which are made on information and belief, and as to those, I verily believe them.

5. These arbitration proceedings have demonstrated that the DOE's mechanism for evaluating religious exemption requests—namely, the use of Arbitrator Martin Scheinman's Award of September 10, 2021 (the "Arbitrator Award), as well as their own discretion—is unconstitutional and violative of my clients' and all DOE employees' rights under the First Amendment.

6. The mechanism gives DOE officials who make the original determination regarding the exemption request and SAMS arbitrators who decide the appeals (and whose actions are later ratified by the DOE when DOE employees are placed on unpaid leave due to the arbitrators' adverse determinations) unbridled, standardless discretion, which they have exercised in inconsistent and unconstitutional ways.

7. Arbitrators and DOE officials in some instances have strictly abided by the Arbitration Award, which is unconstitutional on its face.

8. This has resulted in as-applied violations of the religious freedom rights of my clients and DOE employees.

9. Arbitrators and DOE officials at other times have failed to follow the Arbitration Award.

10. This has resulted in baffling and inconsistent results when the arbitrators and DOE officials coming to separate conclusions encountered substantially similar facts.

11. Furthermore, DOE officials and those working in conjunction with them—from the attorneys representing DOE in a related court case, to DOE representatives at these

arbitration hearings, to the arbitrators themselves—have made differing statements regarding how strictly the Arbitration Award is to be followed, and whether there is any latitude to look outside the award. This by itself demonstrates the large amount of discretion each arbitrator and DOE official is exercising in making determinations on these profound and delicate issues of deeply held religious beliefs.

12. For example, attorneys for the DOE in a separate court case challenging the vaccination mandate have stated before this Court that, "there have been Roman Catholic people who have had exemptions granted, and the Pope has come out for vaccines." *Kane v. de Blasio*, 1:2021-cv-07863, ECF. No. 65 (S.D.N.Y. October 12, 2021) (Transcript of Conference), at 50. This is directly contradictory to the Arbitration Award's, albeit, unconstitutional requirement that if a religious official who is the leader of the employee's religious organization has spoken publicly in favor of the vaccine, an exemption will not be granted.

13. In that same argument, Attorney Lora Minicci also stated that the Arbitration Award is not discriminatory on its face because it "simply provides a framework," *id.* at 50, merely "set[s] forth examples of reasons that would lead to a denial," *id*. at 50, and constitutes a "shorthand," *id*. at 51.

14. In DOE's form denial letters, however, it states that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate."

15. A true and correct copy of this form letter denying my client Sasha Delgado's exemption is attached as Exhibit A.

16. This statement suggests that the arbitrator and DOE had the discretion to look outside the four corners of the Arbitrator's Award in making their determinations.

17. During the October 1, 2021 arbitration hearing held for my client Ms. Sasha Delgado, DOE representative Ms. Karen Solimando stated that, "[t]he Department's position is that the Arbitration Award that governs this proceeding created a very narrow religious exception, and under the terms of that Arbitration Award the application for a religious exemption should be denied in that it does not satisfy the parameters of that arbitration award."

18. In addition to these differing standards, arbitrators and DOE officials have also inquired into the validity of my clients' religious beliefs, conflated my clients' beliefs and religious denominations with those of other religious beliefs and denominations, and called into question the sincerity and religious nature of my clients' beliefs for improper reasons.

19. For example, on October 1, 2021, I represented my client Sasha Delgado, a teacher at the DOE for more than eighteen years, in her arbitration proceeding before Arbitrator David Riley. The DOE representative Ms. Karen Solimando argued that Ms. Delgado did not present a letter from her religious official, even though the arbitrator had a copy of the letter that Ms. Delgado's pastor submitted on her behalf.

20. The DOE representative also stated that most, if not all, Christian denominations have spoken publicly in favor of the vaccine. This departed from the specific terms of the Arbitration Award, which states that requests should be denied when "the leader of the religious organization has spoken publicly in favor of the vaccine." Ms. Delgado's pastor, who submitted a letter in her favor, has not spoken publicly in favor of the vaccine.

21. Furthermore, there is no official religious leader for born-again Christians. The DOE representative nevertheless conflated born-again Christians with other religions that have single leaders or central authorities.

22. The DOE representative lastly questioned Ms. Delgado's objection to the vaccine on the basis of its connection to the abortion industry, quoting from a letter that she stated was provided to the arbitrators by NYC Health Commissioner Dave Chokshi. The letter stated that none of the vaccines contain aborted fetal cells.

23. But Ms. Delgado's objection is to any connection the vaccines have to aborted fetal cells, no matter how small—including in the vaccines' research, testing, development, or manufacturing.

24. This whole line of questioning was unconstitutional since it concerned the validity of Ms. Delagado's beliefs and not the sincerity or religious nature of them.

25. Ms. Delgado's appeal was ultimately denied.

26. I made a recording of this video and provided it to the law firm of Nelson Madden Black LLP.

27. I represented another one of my clients, who is an Orthodox Jew, before Arbitrator Stewart Lipkind on October 22. My client had submitted a note from her rabbi attesting to the sincerity of her beliefs and stating that they were in accordance with the teachings of her synagogue.

28. Nevertheless, the representative from the DOE argued that, while there is not one specific leader of the Jewish faith, it was "certainly relevant" that there was a decree issued by leading rabbis of the Ultra-Orthodox Jewish faith in Israel in late December of 2020 which

publicly endorsed the vaccine and led to a "serious uptick" in Orthodox Jewish faith members taking the vaccine. He noted that such decree was echoed by other religious organizations such as the Orthodox Union and the Rabbinical Council of America which issued a similar call for Orthodox Jews who were hesitant about the vaccine on religious grounds to take the vaccine.

29. This was irrelevant and an unconstitutional consideration, as my client is bound by the authority of her own rabbi, not rabbis in Israel.

30. I made a recording of this video and provided it to the law firm of Nelson Madden Black LLP.

31. My client's appeal was granted on October 24, 2021.

32. I also represented Ms. Sarah Buzaglo, a plaintiff in this case, in her arbitration hearing on October 5, 2021. She is also an Orthodox Jew.

33. The DOE representative at that hearing, despite acknowledging his ignorance of the hierarchical structure of Judaism, also noted an article from the Jerusalem Post citing how the Sephardic Chief Rabbi of Israel spoke out in favor of the vaccine and asked the arbitrator to consider this in his determination.

34. This was, again, improper, as Ms. Buzaglo is not bound by the authority of the Sephardic Chief Rabbi of Israel, but instead her own rabbi.

35. Although Ms. Buzaglo is an Orthodox Jew and possesses similar sincerely held religious beliefs to the client I referenced in paragraph 27, her appeal was denied.

36. The similarity between these two proceedings and the difference in the results rendered showed the inconsistent application of the Arbitrator's Award and the misinterpretation of

my clients' religions and beliefs which was unfortunately representative of many of these hearings that I attended.

37. I assisted another client, a devout Catholic, in the preparation of her religious exemption letter to the DOE. She could not obtain a clergy letter, and the DOE denied her exemption. She then appealed her denial and the arbitrator granted it on the papers alone, without a hearing.

38. On the other hand, I assisted another client, Ms. Christina DeBianchi, also a devout Catholic who possessed substantially the same beliefs as the client mentioned in paragraph 37, in the preparation of her religious exemption letter to the DOE. She, unlike the client I mentioned in paragraph 37, obtained a clergy letter and submitted it with her application.

39. Ms. DeBianchi's first request was denied, so we proceeded to a hearing which was held on September 30, 2021 before Arbitrator Earl R. Pfeffer. The DOE representative did not say a lot in the hearing, and we anticipated that her request would be granted since there was no objection to the sincerity of her beliefs. Despite the similarity between her case and those of the client I referenced in paragraph 37, her appeal was ultimately denied with no explanation.

40. In another hearing, I represented a born-again Christian whose request was ultimately approved. The attorney for the DOE argued that, "[g]enereally, the Department is objecting to the presence of outside counsel, generally at these proceedings, the UFT and DOE do not have private counsel participating in these, it kind of goes outside the norm of our general grievance procedure."

41. The DOE's objection, which the Arbitrator ultimately overruled, demonstrated another way in which the DOE has inconstantly read and applied the Arbitration Award. As the UFT representative explained, the proceeding was not a grievance procedure, and the Arbitration Award expressly allows for DOE employees to have private representation.

42. The DOE representative then argued that if I was permitted to stay, I should be "limited to the role of just observer." The Arbitrator denied this request.

43. In this same hearing, the DOE attorney cited the same letter provided to arbitrators by NYC Health Commissioner Dave Chokshi which stated religious objections based on the use of aborted fetal cell lines used in the development or administration of the vaccine should not be given any credence because there are no fetal cell tissues actually in the vaccines.

44. On the basis of this letter, the DOE attorney attempted to argue that my client—who is aware that there are no aborted fetal cells in the vaccine and who objected to the testing, production, or manufacture of the vaccines using aborted fetal cell lines—was merely expressing philosophical objections, since aborted fetal cells would not enter the body of anyone who takes the Moderna or Pfizer vaccine.

45. The DOE attorney also stated that any testing done using aborted fetal cells is also done for products such as Tums and Tylenol.

46. The DOE's strategy appeared to be to challenge the validity of my client's beliefs, which is unconstitutional.

47. In sum, during these proceedings, DOE officials and SAMS arbitrators exercised wide discretion and inconsistently applied the Arbitrator's Award (which is unconstitutional in the first place) which resulted in different results for substantially similar situations,

engaged in improper inquiries into the validity of DOE employees' beliefs, and raised irrelevant considerations that showed their misunderstanding and misinterpretation of DOE employees' religious beliefs.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
October 27, 2021

By: Christina Martinez, Esq.