Jonathan Robert Nelson (JN-8796)
Barry Black (BB-4602)
Sarah Child (SC-1011)
NELSON MADDEN BLACK LLP
475 Park Avenue South, Suite 2800
New York, NY 10016
Telephone: (212) 382-4300
jnelson@nelsonmaddenblack.com
bblack@nelsonmaddenblack.com
schild@nelsonmaddenblack.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

| | |
|---|---|
| MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK, SARAH BUZAGLO, EDWARD (ELI) WEBER, CAROLYN GRIMANDO, AMOURA BRYAN, and JOAN GIAMMARINO, individually, and for all others similarly situated, | Case No. 1:21-cv-08773 FIRST AMENDED VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES AND ATTORNEY'S FEES |
| Plaintiffs, | |
| - against - | |
| THE CITY OF NEW YORK; BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF NEW YORK; DAVID CHOKSHI, IN HIS OFFICIAL CAPACITY OF HEALTH COMMISSIONER OF THE CITY OF NEW YORK; and MEISHA PORTER, IN HER OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, | JURY TRIAL DEMANDED |
| Defendants. | |

-----------------------------------------------------------------X

Plaintiffs MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK, SARAH

BUZAGLO, EDWARD (ELI) WEBER, CAROLYN GRIMANDO, AMOURA BRYAN and

JOAN GIAMMARINO, on behalf of themselves and one or more classes of similarly situated

individuals, by their counsel, Nelson Madden Black LLP, as for their complaint against the

1

Defendants THE CITY OF NEW YORK; BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF NEW YORK; DAVID CHOKSHI, IN HIS OFFICIAL CAPACITY OF HEALTH COMMISSIONER OF THE CITY OF NEW YORK; and MEISHA PORTER, IN HER OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, allege as follows:

<u>NATURE OF ACTION</u>

1. Plaintiffs and members of the Class are New York City teachers and other employees of the New York City Department of Education who file this suit seeking to vacate the Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for Department of Education Employees, Contractors, Visitors, and Others, dated September 15, 2021, as amended by the Order of the Commissioner of Health and Mental Hygiene Revising the Effective Date for Required COVID-19 Vaccination of Department of Education Employees, Contractors, Visitors, and Others, dated September 28, 2021 (together, the "Vaccine Mandate") and as implemented by the Arbitration Award dated September 10, 2021 issued by Arbitrator Martin F. Scheinman in the Matter of the Arbitration between Board of Education of the City School District of the City of New York and United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT Award") and by the Arbitration Award dated September 15, 2021 issued by Arbitrator Martin F. Scheinman in the Matter of the Arbitration between the Board of Education of the City School District of the City of New York and Council of Supervisors and Administrators ("CSA Award") and by two arbitration awards between District council 37 AFSCME, AFL-CIO ("DC37") and NYC DOE and New York City's Department of Health and

2

Mental Hygiene ("DC37 Awards") (together, the "Exemption Standards") insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, impose unconstitutional standards and procedures for determination of religious exemptions from the Vaccine Mandate, and impose conditions of employment, separation and termination upon employees who refuse to obey the Vaccine Mandate for religious reasons; and to enjoin Defendants City of New York, Board of Education of the City School District of New York ("NYC DOE" or the "Department"), Commissioner Chokshi and Chancellor Porter from implementing the Vaccine Mandate through the Exemption Standards or other unconstitutional procedures.

## PRELIMINARY STATEMENT

2. In late August of this year, less than a month before the reopening of the City's 1800 schools for the current school year, the New York City Department of Education and the Commissioner for Health and Mental Hygiene decided that every adult who worked for Department, or who entered any school buildings, must be vaccinated against the COVID-19 virus (but with some exceptions). By design, the original mandate had no exception for religious or medical accommodations. "Implementation" bargaining between the Department and unions representing teachers, supervisors and administrators produced a set of Exemption Standards that purported to provide such accommodations, but the standards do not apply to all NYC DOE employees and fail to protect the basic constitutional right to religious freedom of those to whom they do apply. Union litigation

3

in State Court prompted the Defendants to issue a new mandate that recited that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." However, the Department only recognizes as "reasonable accommodations" those procedures, standards, benefits and penalties that were promulgated in its Exemption Standards. On information and belief, no religious accommodations were provided for unvaccinated employees who were not members of the unions that participated in the drafting of the Exemption Standards, and on information and belief, all unvaccinated employees who did not file an exemption request were fired by the Department in late September.

3. During the month of October, 2021, thousands of NYC DOE employees, including many of the Plaintiffs and many members of the Class, submitted religious exemption requests to the Department. These were almost uniformly denied in rubber-stamp conveyor-belt fashion. The Exemption Standards gave employees who wished to appeal the denial of their exemption applications only one day to file an appeal. Cursory appeal hearings were conducted using Exemption Standards that explicitly and flagrantly violated the Free Exercise and Establishment Clauses of the First Amendment. The hearings routinely and predictably resulted in the denial of many, and probably most, meritorious appeals.

4. One of the most pernicious provisions in the Exemption Standards set two deadlines: (1) a deadline of Friday, October 29, 2021, for unvaccinated employees whose exemptions were denied, to elect voluntary "separation" from NYC DOE employment (i.e., resignation) with temporary insurance benefits, and (2) a deadline of November 30, 2021 to employees to opt-in to a program of unpaid leave of up to approximately ten months

from actual DOE work with temporary insurance benefits, but with a prohibition on engaging in other gainful employment. Options "1" and "2" required the employee to surrender all legal rights against the DOE. Failing to elect either option triggered a default option: being fired as early as December 1, 2021.

5. On information and belief, many, but not all, members of the Class were coerced by the terms of the Exemption Standards into involuntarily electing "voluntary" separation or extended leave without pay pursuant to the aforementioned provisions, and entering into unconscionable, invalid and unenforceable agreements to surrender all legal rights to challenge the Defendants' actions in coercing them into doing so.

6. On November 28, 2021, the United States Court of Appeals ordered the Defendants to reconsider the exemption applications filed by Plaintiffs Keil, De Luca, Delgado, Strk and Buzaglo, through a "city-wide panel" that would apply standards found in law instead of the Exemption Standards. On information and belief, Defendants have also offered reconsideration to some, but perhaps not all, members of the Class who filed exemption applications and appeals from initial denial of such applications, whose appeals were denied or not adjudicated. However, on information and belief, Defendants have not given a similar opportunity to other members of the Class including those who filed initial administrative applications for exemption but did not appeal from the denial of such applications, or who did not file administrative applications in the first instance despite their possession of valid religious objections to vaccination; this latter group remains subject to the unconstitutional standards and procedures set forth in the Exemption Standards.

7. The instant lawsuit asks the Court to declare that the Vaccine Mandate, as implemented by the Exemption Standards and through the Citywide Appeal Panel process, unlawfully infringes the rights of plaintiffs and the Class and other NYC DOE employees under the religion clauses of the First Amendment, to vacate the Vaccine Mandate insofar as it infringes such rights, to require the Defendants to provide religious exemptions to their employees that are "least restrictive" of their religious rights, to restore Plaintiffs and the Class as far as reasonably possible to their positions, to award back pay, forward pay, nominal, actual and compensatory damages and attorney's fees to Plaintiffs and the Class, and to provide such other relief as may be necessary to provide a complete remedy for Defendants' violations of law.

## THE PARTIES

8. Plaintiff MATTHEW KEIL has worked for the New York City Department of Education ("NYC DOE") as a teacher for over 20 years.

9. Plaintiff JOHN DE LUCA is employed as a teacher by MYC DOE.

10. Plaintiff SASHA DELGADO is employed by NYC DOE as an Individualized Education Teacher.

11. Plaintiff DENNIS STRK has worked for NYC DOE for the past 13 years as a high school social studies teacher.

12. Plaintiff SARAH BUZAGLO has worked for NYC DOE since 2017 as a teacher.

13. Plaintiff EDWARD ("ELI") WEBER has been employed by the NYC DOE as a teacher since September 2001.

14. Plaintiff CAROLYN GRIMANDO has been employed by the NYC DOE as a teacher for

the past 18 years.

15. Plaintiff AMOURA BRYAN has been employed by the NYC DOE for the past 13 years. She began working as a special education teacher with DOE Home Instruction Schools in August 2021. In that position, she worked from a remote location in an isolated, non-school building workplace, and did not interact in-person with NYC DOE students or staff.

16. Plaintiff JOAN GIAMARRINO has been employed by the NYC DOE as a teacher since September 2007.

17. Defendant City of New York is a municipal corporation constituting the local municipal government of the population residing in New York, Bronx, Queens, Kings and Richmond Counties in New York State. The First Amendment of the United States Constitution applies to this defendant by virtue of the Fourteenth Amendment.

18. Defendant Board of Education of the City School District of the City of New York D/B/A New York City Department of Education ("NYC DOE") is the department of city government responsible for the management of the New York City School District and the administration of NYC's public schools. Through the issuance of Chancellor's Regulations, the Department of Education sets policies in New York City's public schools. The Department is responsible for implementing the Vaccine Mandate. For all purposes, the NYC DOE serves as the government or public employer of the Plaintiffs and all other persons who work for it.

19. Defendant David Chokshi ("Commissioner Chokshi") is the Commissioner of Health and Mental Hygiene of the City of New York and head of NYC's Department of Health and

Mental Hygiene ("DOHMH"). Sued in his official capacity, Commissioner Chokshi acted at all times under color of law in the acts attributed to him herein.

20. Defendant Meisha Porter ("Chancellor Porter") is the Chancellor of the NYC DOE. Sued in her official capacity, and acting at all times covered herein under color of law, Chancellor Porter sets policies and oversees the employment of teachers, administrators and other employees for the NYC DOE and is responsible for the enforcement of such policies with respect to such employees.

## JURISDICTION AND VENUE

21. This court has jurisdiction to adjudicate all federal claims raised in this matter under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits arising under the laws and Constitution of the United States; the Supremacy Clause of the Constitution of the United States, which allows federal district courts to hear suits alleging preemption of state and local laws by the Constitution and federal laws made in pursuance thereof; and 42 U.S.C. § 1983 and 28 U.S.C. § 1343 in relation to Defendants' deprivation and infringement under color of law of the Plaintiffs' rights, privileges, and immunities secured by the United States Constitution and laws, as detailed further herein.

22. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a); and attorney's fees and costs under 42 U.S.C. § 1988.

23. Venue is proper in the United States District Court for the Southern District of New York for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is the district in

which Defendants unlawfully deprived plaintiffs of their rights under the laws and Constitution of the United States, as further alleged herein. It is also the district in which a substantial part of the events giving rise to Plaintiffs' claims occurred and continue to occur.

## LEGAL STANDARDS APPLICABLE TO THIS MATTER

24. Defendants' actions, mandates, standards and proceedings must be evaluated under a standard of "strict scrutiny" because they are neither neutral toward religion nor generally applicable. The Vaccine Mandate provides no standard for religious accommodations except that they be "reasonable" and "legally required," standards which give practically unfettered discretionary power to an adjudicator. The Exemption Standards explicitly govern the adjudication of religious claims and are therefore neither neutral nor generally applicable. Likewise, the Citywide Appeals Panel process is required to give individualized consideration to particular claims fpr religious exemption and to rule on such claims, and is therefore neither neutral toward religion nor generally applicable.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring this class action pursuant to Rule 23 in their representative capacity on behalf of themselves and the Class of all others similarly situated as defined in this complaint. Plaintiffs propose a Class consisting of all NYC DOE employees who assert a religious objection to the Vaccine Mandate.

26. This action meets the following prerequisites of Rule 23(a):

9

a. Numerosity: The Class includes thousands of members. Due to the high number of class members, joinder of all members is impracticable and, indeed, virtually impossible.

b. Ascertainable: The proposed Class is ascertainable. Every Plaintiff is either employed directly or indirectly by the DOE and City.

c. Commonality: A substantial pool of common questions of law and fact exists among the Class, including but not limited to:

  i. The actions taken by Defendants to advance the Mandate;

  ii. Implementation of the Mandate, including through the application of the unconstitutional Exemption Standards;

  iii. The irrationality and arbitrariness of particular provisions of the Mandate.

d. Typicality: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are all directly or indirectly employed by the DOE. The harm suffered by Plaintiffs and the cause of such harm is representative of the respective Class.

e. The claims or defenses of the Plaintiffs and the Class arise from the same events and actions by Defendants and are based on the same legal theory.

f. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class.

g. Plaintiffs do not have any interests that conflict with the interests of the members of the Class. Plaintiff has engaged competent counsel who are experienced in complex litigation.

h. Superiority: A class action is superior to alternatives, if any, for the timely, fair, and efficient adjudication of the issues alleged herein. A class action will permit

numerous similarly situated individuals to prosecute their common claims in a

single forum simultaneously without duplication of evidence, expense, and

resources. This action will result in uniformity of decisions and avoid risk of

inconsistency and incompatible standards of conduct in the judicial system.

i. Maintainability: This action is properly maintainable as a class action for the

above-mentioned reasons and under Rule 23(b):

    i. The individual amount of restitution involved is often so insubstantial that

    the individual remedies are impracticable and individual litigation too

    costly;

    ii. Individual actions would create a risk of inconsistent results and

    duplicative litigation;

    iii. Defendants have acted or refused to act on grounds generally applicable to

    the Class, thereby rendering final injunctive relief or declaratory relief

    appropriate for the Class as a whole; and

    iv. Individual actions would unnecessarily burden the courts and waste

    judicial resources.

j. Predominance: The questions of law or fact common to Class Members

predominate over any questions that may affect only individual members, and a

class action is superior to other available methods for fairly and efficiently

adjudicating the controversy.

<u>FACTS APPLICABLE TO ALL CLAIMS</u>

27. In early 2020, the wide spread of a novel coronavirus, COVID-19, caused a global

11

pandemic, which caused millions of deaths worldwide. New York City was severely affected.

28. In response to the COVID-19 pandemic, NYC DOE closed all schools in its system, pivoting to a program of system-wide remote instruction in Spring, 2020. All school personnel and students participated in school activities through remote means.

29. During the 2020-2021 school year, NYC DOE conducted classes on a hybrid model, in which some teachers and students participated remotely, and some were physically present on school grounds. All adult and minor participants in physically present school activities were required to participate in frequent testing for COVID-19 infection and to show negative test results.

30. On August 3, 2021, New York City Mayor Bill de Blasio announced a "Key to New York City" policy which aimed to exclude unvaccinated people from participating in activities or working indoors in certain kinds of facilities in the city.

31. Between August 3 and 23, 2021, Mayor de Blasio issued a mandate for all New York City government employees, including employees of the NYC DOE, who were required to get vaccinated or be subjected to weekly testing requirements. As he issued this mandate, Mayor de Blasio remarked that he hoped that the testing requirements would be so burdensome that people would need to get vaccinated to avoid them.

32. On August 23, 2021, Mayor de Blasio and Commissioner Chokshi announced that NYC DOE employees would be no longer have an option to undergo weekly testing and would be terminated if they did not receive at least their initial COVID-19 vaccination by September 27, 2021. As announced, the new policy did not allow exemptions for any

reason.

33. On August 24, 2021, Commissioner Chokshi promulgated a written vaccine mandate ("Original Mandate"), incorporating the policy announced on August 23rd. Thr Original included no exemptions for employees of NYC DOE, no matter whether they were employed in DOE school buildings or remotely. However it listed the following exceptions: "It does not include individuals who enter a DOE school setting or other DOE location only to deliver or pickup items, unless the individual is otherwise subject to this Order. It also does not include individuals present in DOE school settings or DOE buildings to make repairs at times when students are not present in the building … ." It was also not applicable to students.

34. The Original Mandate was amended by a subsequent order issued by Commissioner Chokshi on September 12, 2021.

35. On or about September 1, 2021, the United Federation of Teachers ("UFT"), the labor union that represents teachers and certain other job classifications who work for NYC DOE, commenced an expedited arbitration ("UFT Arbitration") intended to challenge the implementation of the Original Mandate.

36. On information and belief, arbitrations between the UFT and NYC DOE are governed by an agreement dated May 1, 2014 called the Joint Intentions and Commitments ("Joint Intentions"). The Joint Intentions contain *inter alia*, the following provisions (at 177, Art. 22, Section d, paras. 2, 4) that limit the UFT's powers in arbitration:

   a. Nothing contained in this Article or elsewhere in this Agreement shall be construed to permit the Union to present or process a grievance not involving the

application or interpretation of the terms of this Agreement in behalf of any employee without his/her consent.

b. Nothing in this Article or elsewhere in this Agreement shall be construed to deny to any employee his/her rights under Section 15 of the New York Civil Rights Law or under the State Education Law or under applicable Civil Service Laws and Regulations.

c. Nothing contained herein shall be construed as a waiver of any substantive arbitrability objection or to preclude any other resort to judicial proceedings as provided by law.

37. The UFT and other labor unions representing employees of NYC DOE filed a lawsuit ("New York State Litigation") in the New York State Supreme Court in New York County on or about September 9, 2021 mounting a facial challenge to the constitutionality of the Original Mandate.[1]

38. On September 14, 2021, Justice Laurence Love issued a Temporary Restraining Order in the New York State Litigation against enforcement of the Original Mandate because it failed to provide for religious and medical exemptions.

39. On September 10, 2021, an arbitrator, Martin F. Scheinman, issued an order in the UFT Arbitration ("UFT Award") that required NYC DOE to permit religious exemptions to its vaccine requirements, but imposed unconstitutional restrictions on the manner in which requests for such exemptions were to be adjudicated and draconian consequences for

---

[1] *New York City Municipal Labor Committee, et al., v. The City of New York, et al.*, No. 158368/2021 (N.Y. Co.).

unvaccinated NYC DOE employees who failed to obtain such an exemption. On information and belief, the detailed provisions of the UFT Award were composed almost entirely of language and procedures proposed by the City and the UFT.

40. *Inter alia*, the UFT Award contained the following provisions:

    a.   As an alternative to any statutory reasonable accommodation process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and nonpedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy … . *Id*. At 6-7, Section I.

    b.   Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m. *Id*.

    c.   Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy) . Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an on line source), or where the objection is personal, political, or

philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists). *Id*. at 9, Section I.C.

d.  The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial. *Id*. at 9-10, Section I.E.

e.  If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination. *Id*. at 10, Section I.F.

f.  A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing. *Id*. at 10-11, Section I.G.

g.  Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding. *Id*. at 11, Section I.H.

h.  While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are

17

vaccinated and have applied for an accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application. *Id*. at 11-12, Section I.I.

i.  An employee who is granted a [ ] religious exemption [ ] under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/ or accommodation is in place. [ ] Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment. *Id*. at 12-13, Section I.K.

j.  The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution. *Id*. at 13, Section I. L.

k.  Any unvaccinated employee who has not requested an exemption pursuant to

Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose. *Id*. at 13, Section II.A.

l. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period. *Id*. at 14, Section II.C.

m. During the period of September[ ] 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date

19

contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job). *Id*. at 16, Section III.A.

n.  During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned. *Id*. at 17, Section III.B.

o.  Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B).

Except for the express provisions contained, herein, all parties retain all legal

rights at all times relevant, herein. *Id*. at 17, Section III.C.

41. On September 15, 2021, Aribtrator Scheinman issued a second arbitral award in a

negotiation between the NYC DOE and the Council of Supervisors and Administrators,

which represents NYC DOE employees in supervisory and administrative positions. The

CSA Award mirrored the UFT Award in all ways relevant to the instant litigation.

42. On information and belief, at least two additional awards were issued in union

arbitrations between DC37, a union that represents persons who work for DOE (or

indirectly for DOE, through DOHMH) as school aides and in other staffing positions, and

NYC DOE and DOHMH, with provisions that mirror the UFT awards in all ways

relevant to the instant litigation.[2]

43. The 2021-2022 school year for NYC DOE commenced on September 13, 2021 for

students.

44. On September 15, Commissioner Chokshi issued a new mandate (the "Vaccine

Mandate"), which rescinded the Original Mandate, as amended. The Vaccine Mandater

extended the vaccination requirement to staff of charter schools and their contractors, but

it still did not apply to schoolchildren. It added a requirement that "Public meetings and

hearings held in a DOE school building must offer individuals the opportunity to

participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021."  It

created special exceptions for individuals who enter "a DOE school setting, DOE

building, or charter school setting [ ] for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order [or who are] present [at] such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.  It also excepted the following classes of persons: include:

a.  Students attending school or school-related activities in a DOE school setting;

b.  Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;

c.  Individuals entering a DOE school building for the limited purpose to deliver or pick up items;

d.  Individuals present in a DOE school building to make repairs at times when students are not present in the building;

e.  Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;

f.  Individuals entering for the purpose of COVID-19 vaccination;

g.  Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or

h.  Individuals entering for the purposes of voting or, pursuant to law, assisting or

---

[2] We are not aware of whether ror not additional similar awards may exist. If so, they would likely suffer the same

accompanying a voter or observing the election.

45. The Vaccine Mandate added the following language to the Original Mandate: "6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."

46. On September 21 and 22, Justice Love denied a preliminary injunction to the plaintiffs in the New York State Litigation, dissolved the TRO, and granted the defendants' motion to dismiss the petitioners' petition, finding that the reference to "accommodations" in the Vaccine Mandate mooted the claims raised in their petition because the original mandate had been rescinded and the current Vaccine Mandate no longer expressly precluded religious exemptions. Justice Love's order did not, however, consider any facts related to the implementation of the Vaccine Mandate or to the terms of the Exemption Standards – facts which are key elements of the claims that are raised by the instant Complaint.

47. Although the UFT Award set a deadline of September 20, 2021 for employees of NYC DOE to apply for exemption from the Vaccine Mandate, NYC DOE waited until Saturday, September 18, 2021 to inform their employees of the opportunity to apply for the exemption. Most employees had only two days to apply for exemption under the UFT Award.

48. On information and belief, thousands of NYC DOE employees have filed religious-based requests for exemption from the Vaccine Mandate, but only a very small percentage of such requests has been granted. On information and belief, the most commonly cited

_____

Constitutional infirmities that are at issue in the instant matter.

reason for denial of such requests has been that they would impose an "undue hardship" on NYC DOE.

49. On information and belief, some NYC DOE employees who have religious objections to the Vaccine Mandate refused to file initial administrative applications for exemption from the vaccination requirement because the system for decision-making patently violated their constitutional rights.

50. On information and belief, approximately 1,400 NYC DOE employees filed appeals from decisions denying their exemption requests, but only approximately 165 of them received a religious exemption.

51. On information and belief, several thousand NYC DOE employees who filed initial administrative applications for religious exemptions from the vaccination requirement refused to file arbitral appeals from those denials because the system for decision-making patently violated their constitutional rights.

52. Pursuant to the Vaccine Mandate and the Exemption Standards, on information and belief, thousands of NYC DOE employees, including the plaintiffs, were placed on involuntary leave without pay on or after September 28, 2021 pursuant to Section II.A of the Exemption Standards, which orders that such persons are eligible to receive health insurance but "prohibited from engaging in gainful employment" under Section II.C thereof.

53. Pursuant to Section III of the Exemption Standards, unvaccinated employees of NYC DOE, including the plaintiffs, are faced with a Hobson's Choice between two alternatives: (1) they may choose to "separate" from NYC DOE, remain eligible for

health insurance through September 5, 2022, and receive compensation for unused CAR days; or (2) they may opt to extend their unpaid leave status through September 5, 2022, remain eligible for health insurance, but be prohibited from gainful employment. Both options require the "separated" employee to sign an express waiver of any right to challenge the separation. The DOE's required waiver document for election of Option (1) includes the following representation: "As it relates to the DOE, I understand that I lose all entitlements to reversion, retention, and tenure." If unvaccinated employees failed to elect option (1) by October 29, 2021 or Option (2) by November 30, 2021, then the NYC DOE has the power to unilaterally terminate their employment effective December 1, 2021 according to Section III of the Exemption Standards.

54. Until the instant lawsuit was filed by the original plaintiffs on October 27, 2021, the Exemption Standards provided the exclusive procedure pursuant to which NYC DOE employees were able to file applications for religious exemptions from the Vaccine Mandate. However, after the United States Court of Appeals for the Second Circuit issued its orders in this matter on November 15 and 30, 2021, the Defendants permitted Plaintiffs and a limited group of other individuals, purportedly including all NYC DOE employees who had submitted initial administrative exemption requests that were denied, and then submitted arbital appeals pursuant to the Exemption Standards that were again denied, to apply to have a Citywide Appeals Panel take a "fresh look" at their exemption applications.

55. Agreements entered into between New York City and unions representing workers subject to other arbitration mandates gave to all workers covered by such agreements the

choice between submitting their religious exemption requests through the Citywide Appeals Panel or through a process substantially identical to the Exemption Standards process.

56. The Citywide Appeals Panel option has not been extended to NYC DOE workers who either refused to file an administrative application pursuant to the Exemption Standards or who refused to file an appeal pursuant to the Exemption Standards, and on information and belief, to others who object to the Vaccine Mandate on religious grounds. Their status with NYC DOE continues to be governed by the unconstitutional Exemption Standards – which means that each and every such person who is unvaccinated has ether been dismissed already, or is now on leave without pay and subject to dismissal by the NYC DOE despite possessing a religious objection to vaccination without ever having been offered any constitutionally valid process for applying for a religious exemption.

57. The Citywide Appeals Panel was supposed to apply standards for the evaluation of religious exemptions that complied with the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law, as well as with the United States Constitution.

58. However, Citywide Appeals Panel denied religious exemptions to each of the Plaintiffs, without explanation. On information and belief, the Citywide Appeals Panel has no published rules or regulations to govern its actions, keeps no records of its decision-making process, and is not required to give any reasoned explanation of its decisions.

59. On information and belief, many additional individual NYC DOE employees whose religious exemption requests have been denied by the Citywise Appals Panel have also

received denials that lacked explanations.

60. After Plaintiffs filed a motion for preliminary injunction in the instant matter, Defendants' counsel sent an email that purported to provide explanations for the Citywide Appeals Panel's decisions denying Plaintiffs' applications. (On information and belief, no one except the Plaintiffs in this lawsuit, and the plaintiffs in a related case whose appeals were denied, has received, or ever will receive, any explanations at all for denials issued by the Citywide Appeals Panel.) Corporation Counsel's explanations, if they were accurate, show that the panel violated standards established by the constitution, Title VII and the other laws that the Panel was required to apply. In some instances, those decisions denyied the validity or veracity or factual foundation of Plaintiffs' religious beliefs, and in every instance they also found, as a basis for denial, that granting an accommodation to Plaintiffs for their religious beliefs would cause "undue burden" to the NYC DOE.

61. On information and belief, the First Amendment's religion clauses require the NYC DOE to provide an accommodation to Plaintiffs that is the least restrictive alternative available to the Defendants. It is not constitutional for the Defendants, as governmental actors, to deny Plaintiffs – and thousands of other religiously-motivated employees – their constitutional rights simply because the NYC DOE finds it to be inconvenient to accommodate those rights.

62. The Plaintiffs have now been informed that they must present proof of vaccination to the City by December 28, 2021, or opt-in to extended leave-without-pay-and-without-outside-employment status (waiving their rights to challenge the Defendants' actions in

court), or they will be fired. This threat puts Plaintiffs – and everyone who is similarly situated – under tremendous pressure to betray their religious beliefs in order to protect the livelihoods, income and insurance protections for themselves and their families during a winter where COVID-19 and its Delta and Omicron variants are once again predicted to wreak havoc upon the health of the general population.

63. The NYC DOE's restrictions, prohibitions and "accommodations" on religious exemptions to the vaccine mandate are not narrowly tailored to promote the City's interests. NYC DOE cannot prove that the protection of the children who attend City schools requires the restrictions it imposes, or that the same end of virus protection could not be accomplished by means that would inflict less harm upon a significant number of religiously-observant NYC DOE employees.

64. The experiences and policies of most other New York State school districts belies the NYC DOE's claim that its policies promote its interests with the least degree of harm to its employees. Other New York school districts protect their children with approaches to unvaccinated employees that impose less harm upon those employees as a consequence of their obedience to religious beliefs.  For example, on information and belief, Mahopac Central School District, Plainview – Old Bethpage Central School District and Pelham Union Free School District permit unvaccinated teachers and school personnel to work in school buildings, subject to frequent mandatory testing. Procedures of this kind are consistent with recommendations from the New York State Department of Health. For example, the Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year, dated September 2, 2021, provides guidance on

masking, physical distancing, ventilation, and other concerns, but does not mandate vaccination for school employees or children. These school districts have a governmental interest that is identical to that of the NYC DOE, but they have not found it necessary to fire their religiously motivated workforce or to expel them from their schoolhouses.

65. Beyond the termination threat embodied by the Vaccine Mandate, the "accommodation" that the NYC DOE is providing to employees whose exemption applications are denied is deeply pernicious: employees are required to choose between resigning or suffering another ten months of continued unpaid "leave" status, with a prohibition on outside employment. These loyal, longstanding employees are being told to "quit or starve," in essence. Many of these employees have children and spouses to feed, elderly parents to support, and eventually, a retirement to fund. To deny them both a salary and any option to earn money from other sources is not, by any understanding, a narrowly tailored provision. These provisions, along with the skewed application procedures that appear to be engineered to deny exemptions, appear to accomplish two purposes: to make refusal to vaccinate so onerous that religious opponents of vaccination will be forced to act against their beliefs or waive their legal rights, and to save money through the mass "separation" of religiously motivated employees.

## FIRST CLAIM FOR RELIEF
### (Liability under the Free Exercise Clause Against All Defendants)

66. Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1-65 of this Complaint as if fully set forth herein.

67. The Vaccine Mandate is unconstitutional, both facially and as applied to the plaintiffs and others, because it violates their right to religious freedom under the First Amendment.

68. The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that Congress (and by extension, State and City governments) shall make no law prohibiting the free exercise of religion.

69. Laws that burden religion are subject to strict scrutiny under the Free Exercise Clause unless they are neutral and generally applicable.

70. Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.

71. A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.

72. A law that is overinclusive in its restrictions on religious activity or beliefs, by encompassing more protected conduct than necessary to achieve its goal, is invalid.

73. Laws that burden religious exercise must survive strict scrutiny if they are not neutral and generally applicable or if they are overinclusive or underinclusive.

74. A government policy can survive strict scrutiny under the Free Exercise Clause only if it advances interests of the highest order and is narrowly tailored to achieve those interests. Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.

75. The Vaccine Mandate requires all NYC DOE employees to be vaccinated, but by its terms it claims not to prohibit "any reasonable accommodations otherwise required by law." The Vaccine Mandate contains no other guidance as to how NYC DOE is to

determine which "accommodations" are "reasonable" and "otherwise required by law." Adjudicators of requests are, therefore, given discretion to determine whether or not to grant exemption requests based on their own individual determinations as to whether such requests are "reasonable" or "required by law."

76. Because the Vaccine Mandate gives the NYC DOE and outsourced appellate examiners unrestricted discretion to determine exemption applications, it is subject to strict scrutiny.

77. The United States Supreme Court has made it clear that Government fails to act neutrally when it proceeds in a manner that is intolerant of religious beliefs, and that religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

78. The First Amendment protects the unorthodox religious beliefs of people who dissent from the doctrines of the faith traditions to which they belong just as strongly as it protects the orthodox beliefs and practices of those who are faithful to those traditions.

79. The Vaccine Mandate is overinclusive on its face because it requires all employees of the NYC DOE to submit to vaccination, no matter where they work. With respect to non-NYC DOE employees of the City, however, the same Vaccine Mandate only requires vaccination of those employees "who work in-person in a DOE school setting, DOE building, or charter school setting." The Vaccine Mandate's requirement of vaccination even for employees of NYC DOE who do not "work in-person in a DOE school setting, DOE building, or charter school setting" is not necessary for the achievement of the Defendants' interest of protecting the health of schoolchildren. The Vaccine Mandate is invalid on its face as a result.

80. The Exemption Standards authorize NYC DOE employees to submit requests for exemption from the vaccine mandate on the basis of religious belief. In each instance, government adjudicators are required to consider the particular reasons given for each individual exemption request.

81. Adjudicators who are deciding religious exemption applications under the Vaccine Mandate are directed to apply standards set forth in the Exemption Standards in obeying the Vaccine Mandate. The Exemption Standards do not cure the Vaccine Mandate's Constitutional defects. Rather, they expand them. On their face, the Exemption Standards violate the Free Exercise Clause in the following ways:

82. First, the Exemption Standards require that exemption requests "must be documented in writing by a religious official (e.g., clergy)." Since the constitutionally required definition of religion is not limited to traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, and Buddhism, but also includes religious beliefs that are new, uncommon, not part of a formal church or sect, or only held by a small number of people, the "clergy writing" requirement requires the exemption adjudicator to refuse exemption requests filed by people who may not be able to supply a "clergy letter" because they do not belong to a formal church or who may belong to a denomination that does not have "clergy" or who, indeed, may possess sincere religious beliefs that are not shared by others. This requirement also excludes persons who may not be able to get a "clergy letter" from religious officials of their own denomination because they possess unorthodox views concerning vaccination that are at odds with the orthodox viewpoint of that particular sect.

83. Secondly, under the Exemption Standards, adjudicators are required to deny any request made by a person who belongs to a denomination of which "the leader … has spoken publicly in favor of the vaccine." This prohibition violates Free Exercise (and Establishment Clause) principles because it makes religious orthodoxy a requirement of exemption from the Vaccine Mandate. The slogan "heretics have no rights" should be consigned to the Dark Ages and histories of the Inquisition: it has no place in a country in which religious freedom is a fundamental right and establishment of religion is proscribed by our basic law. However, the NYC DOE has enshrined the precept in the provisions of its Exemption Standards.

84. Thirdly, the Exemption Standards require adjudicators to deny exemption applications "where the documentation is readily available (e.g., from an online source)." This entirely irrational requirement seems to be intended to prevent religious exemption applicants from getting assistance from the very first place where everybody goes for information in 2021: Google and the worldwide web. A rule that disqualifies everyone who looks to the internet for information to support their religious objections cannot assist the adjudicator in determining whether or not a particular applicant possesses a genuine religious objection to vaccination: it is vastly overbroad.

85. Fourthly, the Exemption Standards contain a negative pronouncement as to what types of ideas the applicant is not permitted to hold concerning vaccination, namely, those that are "personal, political or philosophical in nature," but no positive guidance as to what types of beliefs and objections must be considered to be religious beyond adherence to Christian Science and, perhaps, other similar sects. American Constitutional law

recognizes that religion includes all aspects of religious observance and practice, as well as belief. *See also* 42 U.S.C.S. § 2000e(j) (defining religion under Title VII). Many religious individuals may sincerely hold ideas concerning vaccination that qualify as both religious and also as "personal, political or philosophical." The Exemption Standards entirely ignore these well-known Constitutional interpretations and violate the Free Exercise Clause by guiding adjudicators only on how to deny applications under such circumstances, and not on how to discern whether beliefs are also religious and therefore approvable.

86. The UFT Arbitrator's Order recites that the arbitrator personally relied upon submissions from the UFT and the City's legal team in formulating the specific terms of the order, a task which he was incapable of completing on his own. Thus, the City had a hand in the drafting of the very terms which the order requires NYC DOE employees to apply and enforce.

87. The City has a constitutional duty to respect the religious freedoms of its employees, a responsibility which it cannot avoid by outsourcing its unconstitutionally directed exemption denials to a well-connected arbitration service.

88. The NYC DOE violates the Free Exercise Clause every time it applies the terms of the Exemption Standards to deny an individual request for religious exemption. It violates the Free Exercise Clause every time it takes any action with respect to an individual's employment, enforcing the provisions of the Vaccine Mandate and Exemption Standards.

89. The Vaccine Mandate and the Exemption standards are also being applied to individual cases in ways that violate the Free Exercise Clause. On countless occasions, NYC DOE

34

representatives and the exemption adjudicators themselves have made statements in appellate exemption hearings that violate the City's First Amendment responsibilities, including *inter* alia arguments that "as a Christian, you can't have a valid exemption claim, because every Christian leader is in favor of vaccination," claims that clergy letters that assert an individual right to conscience as an element of orthodox religious faith must be disregarded if denominational leaders support vaccination, and arguments that even if the applicant appears to hold sincere religious beliefs in opposition to vaccination, it would put an undue burden on the NYC DOE to provide accommodations to every person who possesses a genuine religious objection – because there are too many of them!

90. The Department's system of adjudicating exemption requests also produces arbitrary results.  In numerous instances, DOE staff and appellate adjudicators have rendered completely inconsistent decisions in cases involving applicants with substantially similar circumstances who submitted substantially similar evidence in support of their applications.

91. The provisions of the Exemption Standards are not "narrowly tailored" to promote the compelling interests of the NYC DOE with the least amount of interference with the religious beliefs and practices of NYC DOE employees. Rather, they seem to be drafted to inflict maximum harm on persons who believe that vaccination is unholy, by denying the greatest number of exemption applications with the least amount of due process. The requirement that applicants present a clergy letter; the prohibition of exemptions when denominational leaders favor vaccination; the identification of a religious group that is

presumptively entitled to exemption; the dire consequences of rejection, including termination of employment or mandatory unpaid unemployment on leave, the cramped deadlines for submission of applications, appeals, and elections under the Exemption Standards – none of these is necessary for or even related to the protection of schoolchildren from infection. One wonders whether the Defendants may be using the vaccination issue as a pretext to cut expenses on the backs of teachers and other staff who hold strong religious beliefs that cause them to act in a manner that is contrary to prevailing popular opinion.

92. The "black box" decisions of the Citywide Appeals Panel, and the purported explanations for those decisions provided by Corporation Counsel, indicate that Citywide Appeals Panel process is constitutionally flawed. The decision makers appear to be using justifications similar to those that are stated in the Exemption Standards, their profligate use of the "undue burden" rationale to deny appeals even of employees who are willing to work remotely, and their refusal or inability to provide evidence of narrow tailoring of their decisions in all instances, show that the Defendants have no intention to use the Citywide Appeals Panel process to comply with their duties under the Constitution. The panel is simply another sham intended to enable Defendants to deprive Plaintiffs, and others similarly situated, of their constitutional rights.

93. The deleterious effect of unfair denial is that employees whose applications are denied by this corrupt process were required either to elect by October 29, 2021 to resign from their jobs or to opt-in by November 30, 2021 to an agreement to spend the next ten months without income – and with a waiver of legal rights. Everyone who refused to do so is now

subject to termination, with the exception that Plaintiffs' deadine is now December 28, and other NYC DOE employees who have submitted appeals to the Citywide Appeals Panel will be subject rolling deadlines based on the dates of their denials.

94. The Defendants' policies require Plaintiffs and other unvaccinated NYC DOE employees to make this Hobson's Choice, giving up any right of contest in any court. This court has power to stay that choice, and the effects of choices already made pursuant to Defendants' unconstitutional and anti-religious policies, until it is able to make a final determination that the Vaccine Mandate is unconstitutional on its face and as applied, and it is necessary for the Court to exercise its power in order to prevent manifest injustice to the rights of all of those NYC DOE employees whose exemption applications have been denied by unjust and unconstitutional proceedings (or who refused to make such applications because of the clear unconstitutionality of such proceedings).

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption Standards are invalid because they violate the Free Exercise Clause of the First Amendment to the United States Constitution, to permanently stay all deadlines set forth in the Exemption Standards and appeal determinations, to issue a permanent injunction against the enforcement of the Vaccine Mandate and the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment

with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Liability under the Establishment Clause Against All Defendants)

95.  Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1-70 of this Complaint as if fully set forth herein.

96. The Vaccine Mandate is not "neutral" when it comes to the various religions practiced by the employees of the NYC DOE. On information and belief, the NYC DOE's representatives defend it by declaring that it has the approval of religious leaders of many denominations, and in appellate hearings, the NYC DOE's advocates declare that all the religions of the world support vaccination, with the unique exceptions of Jehovah's Witness, Christian Science and Muslim adherents.

97. The Establishment Clause is America's constitutional bulwark against theocracy. Any official action to prescribe orthodoxy in religion, or to force citizens against their will to profess adherence to such orthodoxy or to act in conformity with it, is a violation of the Establishment Clause.

98. Through the Exemption Standards, the Vaccine Mandate reveals a preference of the NYC DOE for religious orthodoxy and an intolerance of religious dissent. Its requirement of a clergy letter confers a preference on persons who belong to an organized religion with distinctions between laity and clergy. Its blanket rejection of claims that contradict a

denominational leader's published position treats sincere dissenters in a manner that is inferior to the treatment of persons who hold orthodox beliefs. Its rejection of materials published online betrays a suspicion of religious groups that organize to oppose vaccine mandates. And its explicit acceptance of Christian Science's position of vaccine opposition privileges adherents to that belief system over others in the exemption process.

99. As a result of these standards for adjudication, adherents to the Christian Science faith and individuals whose individual anti-vaccination beliefs accord with the orthodox (but unpublished) statements of clergy in a hierarchical faith receive a government-created advantage in applying for, and receiving, religious exemptions from the Vaccine Mandate. Others are disfavored as a matter of black-letter government policy. On information and belief, the religious composition of the relatively small group of people who have received exemption grants reflects this policy of religious favoritism.

100. The inclusion of offensive and unconstitutional standards in the Exemption Standards, and the application of such standards in DOE and appellate decisions denying exemption applications, including those of the plaintiffs, violate the Establishment Clause by giving members of some religious groups a preference over others.

101. The inclusion of attorneys from the Office of Corporation Counsel, which is the law firm that represents the City of New York, violates the Establishment Clause, as it involves the Defendants not only in the initial evaluation of Plaintiffs' claims to religious exemption and accommodation, but also in the process of appealing denials by Corporation Counsel's own clients. In the course of this work Corporation Counsel is

required to determine what is, and is not, religious, and to apply the standards that are

determined by the Defendants at every step of the process to the evaluation and

determination of Plaintiffs' claims. This impermissibly and excessively entangles the

Defendants in religious affairs.

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption

Standards are invalid because they violate the Establishment Clause of the First Amendment to

the United States Constitution, to permanently stay all deadlines set forth in the Exemption

Standards and appeal determinations, to issue a permanent injunction against the enforcement of

the Vaccine Mandate and the Exemption Standards insofar as they forbid the employment by

NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who

refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate

the religious exemption requests of unvaccinated employees, including Plaintiffs, in a

constitutionally permissible manner, to order the NYC DOE to restore all employees who have

been adversely affected by the Vaccine Mandate or the Exemption Standards to employment

with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to

award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to

Plaintiffs.


### THIRD CLAIM FOR RELIEF
### (Deprivation of Procedural Due Process Against All Defendants)

102.     Plaintiffs reallege and incorporate by reference the allegations recited in

paragraphs 1-101 of this Complaint as if fully set forth herein.

103.     While the Exemption Standards provide explicit guidelines for the submission and

adjudication of exemption requests (albeit unconstitutional ones), they only explicitly

cover exemption applications filed by members of UFT, CSA and DC37. On information

and belief, other employees of the NYC DOE have no guidelines or procedures for

exemption: they have only the language of the Vaccine Mandate itself: "Nothing in this

Order shall be construed to prohibit any reasonable accommodations otherwise required

by law."

104.     The Vaccine Mandate does not, in its own text, provide *any* exemption for

religious reasons.[3] It provides no objective criteria for the consideration of exemption

requests. On its face, it grants unrestricted discretionary authority to any adjudicator to

grant or deny "reasonable accommodations … required by law." It is therefore

unconstitutionally vague.

105.     The Constitutional right of procedural due process provided in the Fourteenth

Amendment encompasses the right to be informed in advance of any hearing of those

current substantive criteria which will govern decisions. The Vaccine Mandate denies

Plaintiffs and other NYC DOE employees a meaningful right to be heard by leaving them

in the position of not knowing what material to present to the adjudicator to make a

decision.  Moreover, a statement of reasons given by an adjudicator for any decision to

reject an exemption request would be meaningless without standards to which it could be

---

[3] The Vaccine Mandate may be interpreted so as not to block exemption applications filed pursuant to the
Exemption Standards, but it does not positively authorize them. The Defendants are implementing the Vaccine
Mandate as if religious exemption applications filed pursuant to the Exemption Standards are "required by law," but

compared. For these reasons, the lack of standards in the Vaccine Mandate renders the religious exemption that the Defendants claim it contains unconstitutionally vague and in contravention of the due process clause of the Fourteenth Amendment.

106.    The Vaccine Mandate sets no standards by which the Plaintiffs and other NYC DOE employees may compare the Exemption Standards or the decisions made by NYC DOE employees or agents with respect to their individual exemption applications. Since their exemption denials were imposed pursuant to the Vaccine Mandate, the vagueness of the Vaccine Mandate deprived them of their Constitutional right to due process of law under the Fourteenth Amendment.

WHEREFORE, Plaintiffs ask the Court to find that the Vaccine Mandate is invalid because it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to permanently stay all deadlines set forth in the Exemption Standards and appeal determinations, to issue a permanent injunction against the enforcement of the Vaccine Mandate and Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to

---

in fact the Vaccine Mandate and Exemption Standards do not, as set forth above, themselves comply with this

award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Matthew Keil's Right of Free Exercise – Against NYC DOE)**

107.     Plaintiff Matthew Keil realleges and incorporates by reference the allegations recited in paragraphs 1 - 106 of this Complaint as if fully set forth herein.

108.     MATTHEW KEIL ("Keil") has been an employee of the NYC DOE for more than twenty years. Over the course of those years, he has accrued seniority in the Department, received tenured status, accumulated Years In Service that have put him close to earning the right to retirement benefits, and accumulated CAR credits that under normal circumstances can be cashed in for income at the time of retirement. He is unvaccinated and he refuses to be vaccinated for religious reasons.  The Vaccine Mandate threatens to deprive him not only of his career but also all of the economic and retirement benefits that he has accumulated over his long service with the Department.

109.     Keil is an ordained deacon in the Russian Orthodox Church and serves as such in the Saint Sergius Chapel at the Synodal Headquarters of his denomination in New York City. He converted to the Russian Orthodox Church and was catechized and baptized in 1999. In the years that followed, he demonstrated his strong commitment to Orthodoxy. For many years, Keil spent his summers in the Russian Monastery in Jordanville, New York, and over the past twenty years he also traveled far and wide to many Orthodox

country's basic law.

places of pilgrimage – including the Greek monasteries on Mt. Sinai in Egypt, as well as to those in the Holy Land, and in Constantinople. He was blessed, in the winter of 2004, to venerate the relics of Saint Nicholas in Bari, Italy.

110.    Keil was tonsured as a reader in the Russian Orthodox Church in 2008, ordained as a sub-deacon in 2011, and ordained as a deacon in 2013. He regularly goes to confession.

111.    Keil provided all of the foregoing information in the application he submitted to NYC DOE for a religious exemption. He also provided the following information in support of his application:

   a.   The religious beliefs to which Russian Orthodox individuals adhere to affect not only their behavior on Sundays when they go to Church, but also their choice of careers, education, diets and marital relations, and even their very bodies. "For so it is written, Know ye not that we are the temple of God, and that the Spirit of God dwelleth in you?" (1 Corinthians 3:16).

   b.   For example, the Orthodox generally do not embalm or cremate their dead, get tattoos, donate blood to the non-Orthodox, or obtain heart transplants or other surgeries that may defile their bodies. This is not to say that one cannot find members of the Church who do in fact do such things, but rather that such is not generally accepted as orthopraxis by traditionally minded faithful.

   c.   The same goes for vaccinations. There are no verses in the Bible dealing with vaccinations, and consequently many Orthodox believers have no problem inoculating either themselves or their children. However, the Church gives its

44

members the ability to look critically at contemporary society, and it provides the eternal criteria by which they can judge the world around them and choose for themselves what would violate their conscience and obligations to God.

d. In 2007, Keil developed his religious beliefs concerning vaccinations when he spoke with monks at St. Nectarios' monastery in Roscoe, New York, and they stated that Geronda Ephraim, the spiritual head of the monastery and many other monasteries in North America, enjoined the monks and other people from getting vaccinated. After studying the Scriptures, prayer, and engaging in other spiritual disciplines, Keil developed the following beliefs.

    i. Vaccinations, unlike other medications, are injected directly into people's blood.

    ii. Keil believes that the Old and New Testaments make it unmistakably clear that we must be scrupulous about the purity of our blood.

    iii. The primary concern from an Orthodox point of view is the sacredness of our blood through the partaking of Holy Communion. It is only through this Blood of our Lord Jesus Christ that we can be reconciled to God the Father (see Ephesians 1:6-8).

    iv. Taking vaccinations profanes the sacredness of our mortal bodies by mixing the Lord's Body and Blood, which is in us, with the cells of monkeys, chicken embryos, bovine serum, rabbit brains, dog kidneys, live viruses, formaldehyde, and even cells cultured from aborted fetuses.

    v. Such pollution and unnatural mixing is specifically condemned by God in

the Bible (see Hebrews 10:29).

     vi.   Even though the Covid vaccines do not contain fetal tissues, every single one has utilized aborted human fetal cell lines at one time or another during their development through either their testing or manufacturing.

    vii.   Multiple Orthodox jurisdictions have stated that it is absolutely clear that to take any one of these vaccinations would involve one in the sin of abortion.

    viii.   In a larger sense, the practice of vaccination also runs contrary to the Orthodox mindset of trusting in God for our health, pursuing Him and His aid primarily. Scripture demonstrates that sickness and disease are a direct result of Satan, sin, and our fallen state, so healing must be sought above all from God.

    ix.   Ultimately, the Orthodox Church has always upheld the right to follow one's own properly formed moral conscience. We will be judged by God for having done or not done the things in this life that we believed to be truly right.

e.   As a result of these beliefs, throughout his adult life, Keil has completely abstained from vaccinating himself (and his wife and six children).

f.   Keil does not, however, judge others of his faith who decide to vaccinate either themselves or their children.

112.   During the 2020-2021 school year, Keil fulfilled all of the responsibilities of his job remotely.  He was ready, willing and able to do the same during the 2021-2011

school year.

113.    In September 2021, Keil submitted a request for religious exemption from the

Vaccine Mandate pursuant to the Exemption Standards. Keil submitted a detailed

affidavit in support of his religious exemption claims, and a letter from his bishop. In his

affidavit, Keil described his religious history and beliefs in detail, as summarized above.

On September 22, 2021, the DOE informed Keil that his exemption request was denied.

The DOE's denial letter stated that his "application was reviewed in accordance with

applicable law as well as the Arbitration Award in the matter of your union and the Board

of Education regarding the vaccine mandate." Nevertheless, it stated that,

> We have reviewed your application and supporting documentation for a
> religious exemption from the DOE COVID-19 vaccine mandate. Your
> application has failed to meet the criteria for a religious based
> accommodation. Per the Order of the Commissioner of Health,
> unvaccinated employees cannot work in a Department of Education
> (DOE) building or other site with contact with DOE students, employees,
> or families without posing a direct threat to health and safety. We cannot
> offer another worksite as an accommodation as that would impose an
> undue hardship (i.e. more than a minimal burden) on the DOE and its
> operations.

114.    Keil immediately requested an appeal.

115.    On October 1, 2021, Keil participated in an appeal hearing pursuant to the

Exemption Standards. Keil orally affirmed the truth of the facts set forth in his affidavit.

116.    At the hearing, the DOE representative first restated the Department's position

that accommodating Keil's sincerely held religious beliefs would pose an undue hardship.

However, besides saying the DOE was bound by the Health Commissioner's Vaccine

Mandate, the DOE representative did not provide any evidence or explanation about how accommodating Keil would be an undue hardship, especially when numerous other school districts in the State of New York have not implemented a vaccine mandate.

117.     Next, the DOE representative shifted to addressing the sincerity of Keil's beliefs. He began by claiming that medicines such as Tylenol and Advil have been manufactured and tested using aborted fetal cell lines, and questioned whether Keil was aware that many other everyday products have been tested and manufactured using aborted fetal cell lines as well.

118.     While he was unaware of the connection between aborted fetal cell lines and the medicines mentioned, Keil is familiar with a number of products that were manufactured or testing using aborted fetal cells, and said so, and testified that as a result, he does not partake of them or allow his family to partake of them, due to their sincerely held religious beliefs.

119.     The DOE representative's inquiries during Keil's appellate hearing did not focus on the sincerity of his beliefs but on their validity.

120.     Keil provided evidence that his religious objection is to the use of fetal cells in any aspect of the vaccine, including its testing, research, or manufacturing, and that he was aware that there are no fetal cells actually present in the vaccine, but this did not make his religious objection any less religious or sincere.

121.     The representative from DOE also stated that Keil's beliefs regarding the vaccination did not seem to be religious in nature but were merely personal, asserting that there are other Orthodox Christians who choose to get vaccinated.

122.     Keil explained in response that under the Church's teachings, each individual

Christian has the obligation to follow his own conscience as informed by his faith and

study of the Scriptures in determining whether to get vaccinated. That decision is a

personal one between the individual and God.

123.     On October 4, 2021, Arbitrator Riley[4] denied Keil's appeal, and provided no

explanation for the denial. Keil was immediately placed on administrative leave without

pay from his employment with NYC DOE.

124.     Pursuant to the orders of the United States Court of Appeals for the Second

Circuit on November 15 and 30, 2021, Keil submitted to a "fresh look" examination of

his application for religious exemption by the Citywide Appeals Panel. On or about

December 8, 2021, Keil received a notice informing him that his appeal was denied, and

requiring him to vaccinate himself to remain employed by NYC DOE, or to "opt-in" to

an extended leave without pay program along with a waiver of rights by December 28,

2021, or to face termination of his employment and insurance coverage.

125.     Corporation Counsel sent an email to Plaintiffs' counsel on December 3, 2021

that purported to explain Keil's denial by the Citywide Panel as follows:

> APPEAL NO. 00004823, Matthew Keil
>
> After carefully reviewing the documentation provided by all parties, the
> Citywide Appeal Panel has voted to AFFIRM the DOE's determination to
> deny Appellant Keil's reasonable accommodation. One panel member found
> that appellant articulated a sincerely held religious belief that precludes
> vaccination and be entitled to a reasonable accommodation if one did not

_____
[4] Plaintiffs do not concede that the appellate hearings conducted pursuant to the Exemption Standards were
arbitrations.

present an undue hardship. The others did not reach this issue because the panel determined that a religious accommodation cannot be granted because, even assuming a valid basis for a reasonable accommodation, the DOE has satisfied what is necessary under the law to demonstrate undue hardship. Appellant is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population. DOE has met its burden under the law that diverting the appellant from classroom duties constitutes an undue hardship.

126.    Keil is now faced with the choice imposed by the Exemption Standards: because he holds religious beliefs that forbid him from accepting vaccination, he must either violate his religious beliefs and vaccinate himself; or resign from his employment with DOE after a 20-year career, with limited benefits, and waive his constitutional rights; or go on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive his constitutional rights; or be fired effective December 1, 2021.

127.    If Keil wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned over his years of loyal service with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as he has done in the past.

128.    Because the Defendants have refused to respect Keil's constitutional right to religious freedom, have inflicted substantial harm upon him because he has stood up for his rights, and are on the precipice of a deadline, set by themselves, that will change Keil's status even further with the NYC DOE and inflict still more harm, Keil is forced to

go to court to restrain further harm and to defend his constitutional rights.

Wherefore, Plaintiff Matthew Keil asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## FIFTH CLAIM FOR RELIEF
### (Violation of John De Luca's Right of Free Exercise – Against NYC DOE)

129.     Plaintiff John De Luca realleges and incorporates by reference the allegations recited in paragraphs 1 - 128 of this Complaint as if fully set forth herein.

130.     Plaintiff John De Luca ("De Luca") is employed by the NYC DOE as a teacher. He is unvaccinated and he refuses to be vaccinated for religious reasons.

131.     During the 2020-2021 school year, De Luca fulfilled his job responsibilities remotely.

132.      De Luca is a member of the Catholic church and has a sincerely held religious

belief that he should not receive any of the Covid-19 vaccines.

133.     De Luca was brought up in the Christian faith and has been a lifelong follower of the teachings of God. His Christian upbringing, religious schooling, and study of the Old and New Testaments, his lifelong following of the teachings of God, and his daily prayers with God are the foundation of his personal religious beliefs. Through these experiences, De Luca believes that he knows that God will seek retribution against him for not following God's laws and for De Luca's lack of faith in God.

134.     One of God's commandments is "You shall not kill." See, Exodus 20:13. De Luca understands that all the Covid vaccines have used aborted fetal cell lines as part of their development or in the testing of the vaccines. De Luca believes that if he were to take any of these vaccines, he would be participating in the abortions which resulted in these cell lines and committing a sin against God.

135.     De Luca believes that the Catechism of the Catholic Church supports his religious beliefs. According to a 1992 volume which dealt with the issue of conscience, "Man has the right to act in conscience and in freedom so as personally to make moral decisions." The Vatican II document *Dignitatis Humanae*, says, "He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters." The Code of Canon Law, Canon 748, Section 1, declares that "All are bound to seek the truth in matters which concern God and his Church; when they have found it, then by divine law they are bound, and they have the right to embrace and keep it." While the Catholic Church considers the vaccines to be morally acceptable, De Luca, like many other Catholics, objects to the vaccines for

reasons of conscience.

136.     In September 2021, De Luca submitted his request for a religious exemption to the DOE. It was quickly denied, and De Luca filed an appeal. He received notice of his appellate hearing in late October.

137.     On October 25, 2021, De Luca submitted his appeal documentation, including a letter from Monsignor Joseph Giandurco, the (Catholic) Pastor of The Church of St. Patrick, affirming the Catholic teaching that everyone has the right to follow their conscience and acknowledging De Luca's objection based on his Catholic faith and his conscience.

138.     On October 26, 2021, De Luca participated in the arbitration hearing on his appeal.

139.      At the arbitration hearing, the representative from DOE stated that it was the DOE's position that De Luca's request for a religious exemption was "properly denied because it is a somewhat political, philosophical objection, and his religious leaders -- the religious leaders of that denomination -- have clearly and publicly expressed support for the vaccination."

140.     Arbitrator Peek stated during the hearing that while De Luca had produced contradictory documents from Louisiana and North Dakota, New York's Department of Health did state the Johnson and Johnson vaccine was produced using fetal cell lines, but that the research "definitely proves that neither Pfizer nor Moderna were produced with any use of fetal cells." He went on to say to De Luca, "when you find out I'm right, you'll understand."

141.    De Luca was questioned by Arbitrator Peek about his vaccine history during the hearing. De Luca testified that he had received vaccines as a child but has not taken the flu vaccine, Tylenol, or aspirin in over 5 years.

142.    The DOE representative went on to say that De Luca's religious leaders have "clearly and publicly" expressed support for the vaccine. She noted that the September 24, 2021, Clergy letter De Luca submitted in his exemption application explicitly states that the vaccine is morally acceptable and that the church recommends that the vaccination be taken. The DOE's advocate went on to note that the Pope has spoken publicly in favor of the vaccine and has encouraged all to get vaccinated.

143.    The DOE representative characterized De Luca's religious beliefs as personal, political, and philosophical, and were thus not a legitimate reason to have an exemption.

144.    The DOE representative repeated the claim of the appellate examiner that the Commissioner of the NYC Department of Health and Mental Hygiene had stated that neither Pfizer nor Moderna use any fetal cell lines for the production and manufacturing of the vaccines.

145.    The DOE representative represented to the hearing officer that De Luca had provided critical "in-person" services and that it would be a severe undue hardship for the NYC DOE not to have a vaccinated teacher due to the shortage of teachers. She said that the DOE is required to provide students with an environment that is safe and conducive to learning.

146.    Arbitrator Peek asked De Luca if he was aware of the Pope's statement that there is a moral obligation to get vaccinated. "If you found out that the Pope said that people

54

have a moral obligation to take the vaccine, what impact does that have on you?" When De Luca said "no," Arbitrator Peek went on to ask "if the leader of the Catholic Church, or one of the major leaders of the Catholic Church, says you have a moral obligation to be vaccinated, how do you, in your mind, say that that would be against the Word of God, and you would be condemned for that and deemed a murderer, when your religious leader says you should do it?"

147.     Arbitrator Peek continued to question the legitimacy of De Luca's beliefs, stating that documents he had provided containing Church positions on personal conscience were from the 1990s and "none of them dealt with this issue of vaccination."

148.     On October 26, 2021, Arbitrator Peek denied De Luca's appeal without any explanation for the denial.

149.     Pursuant to the orders of the United States Court of Appeals for the Second Circuit on November 15 and 30, 2021, De Luca submitted to a "fresh look" examination of his application for religious exemption by the Citywide Appeals Panel. On or about December 10, 2021, De Luca received a notice informing him that his appeal was denied, and requiring him to vaccinate himself to remain employed by NYC DOE, or to "opt-in" to an extended leave without pay program along with a waiver of rights by December 28, 2021, or to face termination of his employment and insurance coverage.

150.     Corporation Counsel sent an email to Plaintiffs' counsel on December 3, 2021 that purported to explain De Luca's denial by the Citywide Panel as follows:

APPEAL NO. 00004832, John Deluca

After carefully reviewing the documentation provided by all parties, the

Citywide Appeal Panel has voted to AFFIRM the DOE's determination to deny Appellant Deluca's reasonable accommodation. The record before the Panel demonstrated that the employee holds sincerely held religious beliefs sufficient to justify a reasonable accommodation if such accommodation did not present an undue hardship. However, the panel believes the DOE has successfully demonstrated that an accommodation, in appellant's case, would create an undue hardship if granted. Appellant is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population.

151.     De Luca is now faced with the choice imposed by the Exemption Standards: because he holds religious beliefs that forbid him from accepting vaccination, he must either resign from his employment with DOE, with limited benefits, and waive his constitutional rights; or go on unpaid leave until September 5, 2022, with limited benefits and a prohibition on gainful employment, and waive his constitutional rights; or be fired effective December 1, 2021.

152.     If De Luca wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned from his work with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as he has done in the past.

153.     Because the Defendants have refused to respect De Luca's constitutional right to religious freedom, have inflicted substantial harm upon him because he has stood up for his rights, and are on the precipice of a deadline, set by themselves, that will change his status even further with the NYC DOE and inflict still more harm, De Luca is forced to

go to court to restrain further harm and to defend his constitutional rights.

Wherefore, Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights,Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## SIXTH CLAIM FOR RELIEF
### (Violation of Sasha Delgado's Right of Free Exercise – Against NYC DOE)

154.     Plaintiffs Sasha Delgado ("Delgado") realleges and incorporates by reference the allegations recited in paragraphs 1 - 124 of this Complaint as if fully set forth herein.

155.     Delgado has worked for the New York City Department of Education for 15 years, and as an Individualized Education Program teacher for the past nine years. Over the course of those years, she has accrued seniority in the Department, received tenured status, accumulated Years In Service that count toward the right to retirement benefits, and accumulated CAR credits that under normal circumstances can be cashed in for

income at the time of retirement. She is unvaccinated and she refuses to be vaccinated for religious reasons. The Vaccine Mandate threatens to deprive her not only of her career but also all of the economic and retirement benefits that she has accumulated over her fifteen years of service with the Department.

156.     During the 2020-2021 school year, Delgado fulfilled her job responsibilities remotely.

157.     Delgado was raised as a member of the Catholic church, attended mass every Sunday, completed all of her Catholic sacraments, and attended Catechism classes growing up.

158.     As a teenager, she joined her church's youth group and volunteered as a catechist, teaching religious instruction to children.

159.     Delgado attended a Catholic college because she felt that it was important to her to incorporate religious values into her education.

160.     In early adulthood, Delgado became a born-again Christian.

161.     Since then, Delgado have taken Christian-based classes at churches, attended Christian retreats, and attended Christian-led conferences and events. She participates in weekly fellowship conference calls with other believers and her pastor where they hear preaching, pray and read the Scriptures from the Bible.

162.     Delgado was baptized at Christian Revival Temple 14 years ago.

163.     She is currently a member of Miracle Tabernacle Ministries.

164.     In Delgado's spiritual journey as a Christian, the more she read the Bible, studied, prayed, and fasted, the more she felt led by the Lord not to take any vaccinations, or to

allow her son to have them.

165.     Delgado believes that the Word of God states that we are created in the image of God, and this affirms the unique value of all human life. She believes as a Christian that her body is the temple of the Holy Spirit and therefore, she is forbidden to inject His temple with the COVID-19 vaccine. She cites as support for her beliefs 1 Corinthians 3:16: "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst?" She also cites 1 Corinthians 3:17: "[i]f anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple."

166.     Delgado objects to the Pfizer and Moderna COVID-19 vaccines because, she understands, in the early development of mRNA vaccine technology, they used fetal cells for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein), or to characterize the SARS-CoV-2 spike protein. Likewise, she understands that the nonreplicating viral vector vaccine produced by Johnson & Johnson required the use of fetal cell cultures, specifically PER.CG, in order to produce and manufacture the vaccine. Delgado believes that these vaccines would alter her God-given body and that they are the equivalent of a prohibited "unclean food," as referenced in the Bible, that would harm her conscience.

167.     As a result of these religious beliefs, Delgado does not drink any alcohol or eat pork because she is forbidden to eat or drink things that are unclean and alter the state of mind.  She does not use products on her skin or hair that have toxins and chemicals in them because she wants to take care of her body as God's temple.

168.     On September 19, 2021, Delgado submitted her original request for a religious exemption to the DOE. Her application informed the adjudicators about her religious journey and her religious objections to vaccination as set forth above.

169.     On September 22, 2021 the DOE denied Delgado's application, stating that

> [y]our application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

170.     The denial notice also stated that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate."

171.     Delgado requested an appeal and submitted an additional letter from her pastor, Ron Cohen.

172.     On October 1, 2021, Delgado attended the hearing on her appeal. She was represented by Christina Martinez, Esq. at the appeal.

173.     At the appeal hearing, Karen Solimando, the representative from DOE, emphasized that the DOE was applying a "very narrow" religious exemption to Delgado's proceeding, and informed the hearing officer that Delgado's exemption request had been denied for three reasons.

174.     It should be noted that the United States Constitution requires a "broad" reading to be given to claims for religious exemption, not a "narrow" one. Attorney Solimondo's

statement at the appeal hearing constitutes an admission that the DOE's initial denial was based on an unconstitutional attitude of hostility toward religious freedom.

175. First, Attorney Solimondo said that Delgado did not have a pastor's letter supporting her request.

176. However, while this is an unconstitutional requirement, Delgado had sent a letter from her pastor to the general appeals email address. Arbitrator David Riley confirmed at the hearing that he had the pastor's letter within his file.

177. Attorney Solimando next stated that, "I believe that there's no theological objection raised by many if not all of the denominations in Christianity to the vaccine."

178. The requirement that her request be denied if the leader of her religious organization has spoken publicly in favor of the vaccine is a violation of Delgado's rights under the First Amendment of the Constitution. Even if this requirement had been legal, however, Attorney Solimando's statement was incorrect as a matter of fact. According to Delgado, the leader of her religious organization, her pastor, has never spoken publicly in favor of the religious vaccine. With respect to Delgado's statement that the vaccination violates her religious beliefs, Pastor Cohen's letter stated, "I do stand and agree with her and ask that she be free of this mandate."

179. Attorney Solimando explained the third reason for the denial of Delgado's religious exemption request as follows:

> [T]o the extent that the objection is predicated on the use of fetal cell tissue or fetal cell lines the Department of Health and Mental Hygiene has submitted a letter to the arbitration panel which clearly states that none of the Covid vaccines contain fetal tissue or fetal cells and that the fetal cell line that was used for the vaccine

production and manufacturing were used only in the early research phases and in a way that is very common in the development of drugs including very common over-the-counter medications such as Tylenol, Advil, Aspirin, etc. So I don't believe that is a basis to support this exemption request. I'll also note it's very clear in that letter that no fetal cells, tissue, or cell lines are used in the production of Pfizer or Moderna vaccines."

180.    Delgado's initial application for exemption had informed the DOE that her religious objection is to the use of fetal cells in any aspect of the vaccine, including its testing, research, or manufacturing. She understands that no fetal cells are actually present in the vaccine, but argued to the appellate examiner that this did not make her religious objection any less religious or sincere.

181.    Further, Delgado understands that Attorney Solimando's statement that "no fetal cells, tissue, or cell lines used in the production of Pfizer or Moderna" is untrue; Delgado understands that while there are no fetal cells, tissues, or cell lines *present in* the Pfizer or Moderna, they were used in the *manufacturing* of Pfizer and Moderna vaccines.

182.    On October 4, 2021, Arbitrator Riley denied Delgado's appeal, and provided no explanation for the denial. Delgado was immediately placed on administrative leave without pay from her employment with NYC DOE.

183.    Pursuant to the orders of the United States Court of Appeals for the Second Circuit on November 15 and 30, 2021, Delgado submitted to a "fresh look" examination of his application for religious exemption by the Citywide Appeals Panel. On or about December 10, 2021, Delgado received a notice informing her that her appeal was denied, and requiring her to vaccinate herself to remain employed by NYC DOE, or to "opt-in" to an extended leave without pay program along with a waiver of rights by December 28,

2021, or to face termination of her employment and insurance coverage.

184.    Corporation Counsel sent an email to Plaintiffs' counsel on December 3, 2021

that purported to explain Delgado's denial by the Citywide Panel as follows:

> APPEAL  NO. 00004830, Sasha Delgado
>
> After carefully reviewing the documentation provided by all parties, the
> Citywide Appeal Panel has voted to AFFIRM the DOE's determination to
> deny Appellant Delgado's reasonable accommodation. The record before the
> Panel demonstrated facts that cast doubt on appellant's claim that the religious
> belief she articulated would preclude her from vaccination. While appellant
> said she would abstain from other medication should she learn similar things
> about its development, the only medication in which appellant seems to have
> had sufficient concern to research whether it was tested on such cells is the
> COVID-19 vaccine. Indeed, appellant suggests that she may have taken
> similar medications in the past based on the "belief" that they were not tested
> on fetal cells. These responses strongly indicate appellant is taking a different
> approach with respect to the COVID-19 vaccine than she does in analogous
> circumstances.
>
> Even assuming the appellant had established a valid basis for a reasonable
> accommodation, the panel believes the DOE has satisfied what is necessary
> under the law to demonstrate undue hardship. Appellant is a classroom
> teacher who, under the present circumstances, cannot physically be in the
> classroom while unvaccinated without presenting a risk to the vulnerable and
> still primarily unvaccinated student population. DOE has met its burden under
> the law that diverting the appellant from classroom duties constitutes an undue
> hardship.

185.    Delgado is now faced with a grim choice imposed by the Exemption Standards:

because she holds religious beliefs that forbid her from accepting vaccination, she must

either resign from her employment with DOE after a 15-year career, with limited

benefits, and waive her constitutional rights; or go on unpaid leave until September 5,

2022, with limited benefits and a prohibition on gainful employment, and waive her

constitutional rights; or be fired effective December 1, 2021.

186.     If Delgado wishes, or needs, to earn paid income between now and next September, instead of draining her savings, the Defendants are requiring her to surrender almost all of the benefits and other seniority and economic rights that she has earned over her years of loyal service with the DOE. She is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as she has done in the past.

187.     Because the Defendants have refused to respect Delgado's constitutional right to religious freedom, have inflicted substantial harm upon her because she has stood up for her rights, and are on the precipice of a deadline, set by themselves, that will change her status even further with the NYC DOE and inflict still more harm, Delgado is forced to go to court to restrain further harm and to defend her constitutional rights.

Wherefore, Plaintiff Sasha Delgado asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## SEVENTH CLAIM FOR RELIEF
### (Violation of Dennis Strk's Right of Free Exercise – Against NYC DOE)

188.    Plaintiff Dennis Strk realleges and incorporates by reference the allegations

recited in paragraphs 1 - 156 of this Complaint as if fully set forth herein.

189.    Plaintiff Dennis Strk ("Strk") has been a Social Studies teacher at Francis Lewis

High School in Queens for the past 13 years. Over the course of those years he has

accrued seniority in the Department, received tenured status, accumulated Years In

Service that accrue toward his right to retirement benefits, and accumulated CAR credits

that under normal circumstances can be cashed in for income at the time of retirement.

He is unvaccinated and he refuses to be vaccinated for religious reasons.  The Vaccine

Mandate threatens to deprive him not only of his career but also all of the economic and

retirement benefits that he has accumulated over his years of service with the

Department.

190.    Dennis Strk was profoundly influenced early in life by the religious values of his

grandparents and parents and by their strong faith in God. Strk learned to pray in both

English and Croatian, celebrated Christian holidays such as Easter and Christmas, and

attended religious school once his parents could afford it.

191.    Strk's faith deepened as a teenager, when he had the privilege of attending Saint

Francis Preparatory School. There, he learned to truly live his faith in the service of

others, following the model of Christ, and he grew passionate about social justice. During

the spring break of Strk's senior year, he had the opportunity to act on his faith by

attending a service trip to Kentucky to help the local community with a variety of projects such as repairing metal roofs, community cleanup, and attending religious services.

192.    As he entered adulthood, Strk learned more about Christian approaches to health as he further explored the Holy Scriptures and began to realize that vaccination is a sin and an affront to God's plan for His people and to the teachings of the Bible.

193.    Strk believes that conscious sins are addressed in Hebrews 10:26-29, which states that if we deliberately keep on sinning after we have received knowledge of the truth we are deserving of punishment. Since he believes that vaccination would be a conscious betrayal of his faith, he has not been vaccinated in 13 years.

194.    Strk believes that our bodies are created in the image of God and are sacred temples that are not to be defiled. Strk understands that Covid-19 vaccines contain blood or cells from animals, and the research involved in vaccines also uses these profane ingredients as well. He believes that if these substances are then injected into the bloodstream, this results in the defilement of our sacred temples. He believes that such vaccinations therefore violate the teachings found in the Book of Leviticus 17:1 which says that the life of a creature is in the blood.

195.    Because he understands that vaccines contain substances that defile our blood and lead to a betrayal of faith, Strk is committed to living a pure and holy life by refusing vaccination, as expressed in 2 Corinthians 7:1-4. Strk believes that his  body is not just a sacred temple created in the image of God; it is also a vessel of worship (Romans 12:1-3).

196.     If he were to depend on vaccination as his primary source of preventative health, Strk believes that he would be betraying his trust in God's power to heal illness. Strk believes that the source of his health comes first and foremost from God, citing Jeremiah 17:5-10 for a powerful explanation of the consequences faced by those who trust more in man than in God.

197.     On September 17, 2021, Strk submitted his request for a religious exemption to the DOE, explaining his religious objections to the adjudicator as set forth above.

198.     On September 19, 2021, the DOE denied Strk's application, stating that he had failed to meet the criteria for a religious-based accommodation, that under the Commissioner of Health's Order, unvaccinated employees cannot work in DOE buildings without posing a direct threat to people's health and safety, and that offering another worksite would pose an undue hardship on the DOE.

199.     On September 20, 2021, Strk submitted, as additional appeal documentation, a PDF of a Federal Register publication regarding "Federal Law Protections for Religious Liberty" which can be accessed here: https://www.govinfo.gov/content/pkg/FR-2017-10-26/pdf/2017-23269.pdf.

200.     On September 24, Strk took part in the hearing on his appeal.

201.     At the appeal hearing, the representative from DOE stated that one of the reasons Strk's exemption was denied was that he did not have a letter from clergy. Strk responded that a clergy letter is not required under the law, but the representative from DOE stated that it was required under the arbitration award.

202.     The DOE representative also questioned Strk's objection to the vaccines'

connection to aborted fetal cells. She stated that there is no actual aborted fetal cell tissue as an ingredient in the vaccines.

203.     Strk explained that even if there is no fetal tissue in the vaccine itself, his objection is to the use of aborted fetal cells in the research of the vaccine. Furthermore, his objection is not just to the testing or manufacturing of the vaccines using fetal tissue, but also to the use of animal blood in the development of vaccines, since he believes that the defiling of blood leads to a betrayal of faith.

204.     The representative from DOE also stated that accommodating Strk's religious beliefs would be an undue hardship on the DOE's daily operations

205.     Strk was informed that Arbitrator Carol Hoffman denied his appeal in an email dated October 5, 2021, although the denial itself was dated September 24, 2021.

206.     Pursuant to the orders of the United States Court of Appeals for the Second Circuit on November 15 and 30, 2021, Strk submitted to a "fresh look" examination of his application for religious exemption by the Citywide Appeals Panel. On or about December 10, 2021, Strk received a notice informing him that his appeal was denied, and requiring him to vaccinate himself to remain employed by NYC DOE, or to "opt-in" to an extended leave without pay program along with a waiver of rights by December 28, 2021, or to face termination of his employment and insurance coverage.

207.     Corporation Counsel sent an email to Plaintiffs' counsel on December 3, 2021 that purported to explain Strk's denial by the Citywide Panel as follows:

     APPEAL NO. 00004835, Dennis Strk

     After carefully reviewing the documentation provided by all parties, the

Citywide Appeal Panel has voted to AFFIRM the DOE's determination to deny Appellant Strk's reasonable accommodation. The record before the Panel demonstrated facts that cast doubt on appellant's claim that the religious belief he articulated would preclude him from vaccination. Specifically, appellant's responses are equivocal with regard to how acts on the articulated belief outside of the specific context of COVID-19 vaccination. For example, appellant does not deny using medications that are tested on fetal cell lines, only that he tends to "avoid" them and pursue alternatives if available. The submissions demonstrate the appellant is making a fact-based decision concerning vaccination and, in doing so, relying on incorrect facts regarding COVID-19 vaccines, such as that all COVID vaccines contain fetal cells.

Even assuming the appellant had established a valid basis for a reasonable accommodation, the panel believes the DOE has satisfied what is necessary under the law to demonstrate undue hardship. Appellant is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population. DOE has met its burden under the law that diverting the appellant from classroom duties constitutes an undue hardship.

208.    The DOE is now forcing Strk to decide by December 28, 2021 whether to be placed on unpaid leave with benefits for a limited time period, with no right to engage in paid employment elsewhere (but only if he surrenders his legal right to challenge the DOE's actions), to resign and retain his benefits for a limited time period (but only if he surrenders his legal right to challenge the DOE's actions), or to lose his job and his health insurance.

209.    If Strk wishes, or needs, to earn paid income between now and next September, instead of draining his savings, the Defendants are requiring him to surrender almost all of the benefits and other seniority and economic rights that he has earned over his years of loyal service with the DOE. He is ready, willing and able to work, and capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work

environment – as he has done in the past.

210.     Because the Defendants have refused to respect Strk's constitutional right to religious freedom, have inflicted substantial harm upon him because he has stood up for his rights, and are on the precipice of a deadline, set by themselves, that will change his status even further with the NYC DOE and inflict still more harm, Strk is forced to go to court to restrain further harm and to defend his constitutional rights.

Wherefore, Plaintiff Dennis Strk asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

**EIGHTH CLAIM FOR RELIEF**
**(Violation of Sarah Buzaglo's Right of Free Exercise – Against NYC DOE)**

211.     Plaintiff Sarah Buzaglo realleges and incorporates by reference the allegations recited in paragraphs 1 - 177 of this Complaint as if fully set forth herein.

70

212.    Plaintiff Sarah Buzaglo ("Buzaglo") has been employed by the NYC DOE since 2017 as a teacher. She is unvaccinated and she refuses to be vaccinated for religious reasons. The Vaccine Mandate threatens to deprive her not only of her career but also of economic and retirement benefits that she has accrued during her employment with the Department.

213.    During the 2020-2021 school year, Buzaglo fulfilled her job responsibilities remotely.

214.    Buzaglo is an Orthodox Jew. From birth, she was raised to believe in God and the laws of the Torah which provide a blueprint for how she lives her life. The clothing she chooses to wear each day follow the laws of "*tzniut*," modesty. The food she eats daily is in accordance with the laws of "*kashrut*," the kosher diet. The prayers she utters each morning, the Sabbath she welcomes each weekend, and the holidays she celebrates each year all are in accordance with the laws of the Torah as she believes God commanded.

215.    When she was old enough to attend pre-school, Buzaglo's parents enrolled her in a small educational program located in a nearby synagogue. At the age of three, she was already learning how to sing Sabbath songs and morning blessings, as well as songs about Jewish history.

216.    After pre-school Buzaglo was enrolled in Prospect Park Yeshiva, an all-girls yeshiva where students studied two curricula: Judaic studies in the morning, and secular studies in the afternoon.

217.    Buzaglo's Judaic studies included daily classes and exams in Bible study (*Tanach*), Prayer (*Beu'r Tefilla*), Psalms (*Tehillim*), Jewish Law (*Halacha*), Jewish

History (*Historia*), Hebrew (*Ivrit*), Sages Commentary on the Torah (*Rashi*), The Book of Prophets (*Navi*), and the weekly Torah portion (*Parsha*). She engaged in the study of these subjects from first to eighth grade, which left a lasting impact on her formative years.

218.     After graduating from Prospect Park Yeshiva, Buzaglo chose to attend an even more religious high school program at Yeshiva of Brooklyn High School for Girls.

219.     At Yeshiva of Brooklyn, Buzaglo's faith strengthened. With Rabbi Mandel and Rebbetzin Spector (the Hebrew principal) encouraging and supporting her, she led the morning prayers for her class. She volunteered with the school's "*chessed*" organization to visit an elderly woman, as God commanded his people to be kind and compassionate. Buzaglo began attending prayers at synagogue frequently. She volunteered as a counselor at the weekly Sabbath program for children in her local synagogue, telling them stories about the weekly Torah portion and organizing games to keep them entertained so that their parents could rest. Eventually Buzaglo was asked to become the chapter leader and managed a team of eight to ten counselors, running the Sabbath *Bnos* Program until graduation.

220.     Following her graduation from high school, Buzaglo again chose to strengthen her faith further by pursuing a gap year of study in a seminary program for women located in the holy city of Jerusalem.

221.     When Buzaglo graduated from Meohr Bais Yaakov Seminary and returned to New York City, she determined that she wanted to engage in God's holy work and continue teaching. She accepted a position teaching fourth and fifth grade at the Hassidic

all girl's school Bais Yaakov D'Chassidei Gur. During this time, Buzaglo attended the Jewish program at Touro College, where she pursued a Bachelor's Degree. Touro's program accommodated her religious needs by providing kosher food in the cafeteria and scheduling no classes during Jewish holidays. Later, Buzaglo taught English classes at Bnot Chaya Academy, a program for Jewish teens at risk, many who were victims of sexual abuse, physical abuse, drug addiction, neglect, eating disorders, and mental health issues.

222.     After working in Bnot Chaya Academy for five years, Buzaglo completed a Master's degree in Education and went to work for New York City public schools. She has worked since then in a school with a large immigrant population of students with diverse religious, ethnic, and socio-economic backgrounds. Buzaglo's own religious background has helped her to understand and mentor her NYC public school students. When a Muslim student was being bullied for wearing a hijab, Buzaglo encouraged her to be proud of her choice to dress modestly and addressed the bullying. When her Muslim students struggled to focus during Ramadan, she sympathized and created a lighter lesson plan and workload because she understood hunger pains from fasting on Yom Kippur and Tisha Ba'av. When some students needed help to obtain permission to miss class time for afternoon prayers, she reached out to an imam to help. When organizing class trips, Buzaglo always ensured that kosher, vegan, and halal food options were available to accommodate all of her public school students' diverse dietary needs.

223.     Buzaglo's religious opposition to vaccination developed after she reached adulthood. She was vaccinated as a child, as her pediatrician advised her parents.

224.    However, after consulting with her Rabbi as an adult and doing her own study of scripture and Torah law, Buzaglo discovered a host of issues that exist with vaccination that go against her religious beliefs.

225.    For several reasons based in scripture and Torah law, vaccines are problematic for Buzaglo. She adheres to a personal interpretation of what Judaism and the Torah mean to her. The Jewish faith allows for individual translation by each member of the community, and it is up to the individual worshipper to process the messages of the Torah and act accordingly. Through her studies, Buzaglo developed the following religious beliefs relating to vaccinations:

   a. Sanctity of Blood: The Torah dictates that man should not mix the blood of man and that of animals. (*Rashi, Kesuvos* 60A) According to Buzaglo, it is well documented that a majority of vaccines are prepared using tissue cultures from animals. This directly contradicts the teachings of Buzaglo's faith as she understands it. Additionally, the Torah prohibits Jews from eating blood (Leviticus 19:19) and Buzaglo understands from this that injecting blood into one's bloodstream is a direct prohibition as well. To Buzaglo, this prohibition practically applied means that a vaccine that contains blood cells taken from the kidney of a monkey, etc. and is injected into human blood vessels is considered problematic, sinful, and blasphemous to God's name.

   b. Sanctity of Life/Abortion: As Buzaglo understands it, Judaism holds dear the value of human life. But in her view, vaccines violate the sanctity of human life. While conducting her research, she learned that a majority of vaccines (including

74

Varicella, Rubella, Hepatitis A, Rabies, and Covid-19) are made by growing viruses in fetal cells. Buzaglo learned that both the Moderna and Pfizer vaccines were tested for the presence of spiked protein on human kidney cells which were removed from an aborted fetus. As she understands it, the Johnson & Johnson vaccine was actually made using fetal retinal cells.

c.  Both Genesis and Deuteronomy discuss the sanctity of life including how we were created in God's image, and that to defile God's image is to defile God himself. As Buzaglo understands Torah, a fetus is considered a human life, and to end that life is murder and a direct violation of the Torah.

d.  Buzaglo has adopted views on vaccination that she understands Torah to require. To her, the act of bringing life into this world brings holiness and the image of God with it, and the notion of injecting into her own bloodstream sells from a poor fetus is blasphemous. Buzaglo believes that taking a vaccine means participating in sin and going against God's will and the sanctity of life she holds dear.

e.  Foreign Materials: As Buzaglo understands it, the Torah prohibits us from welcoming any foreign materials into the body, and this is precisely what vaccines are. As a Torah observant Jew, Buzaglo keeps her body and blood unpolluted and without contamination. She considers these vaccinations to represent a defilement of the body, blood, and soul.

f.  Self - Flagellation: Buzaglo understands that Torah observant Jews, like herself, are forbidden to self-flagellate. As she understands it, in Judaic law, one is not

permitted to inject oneself with a vaccine that offers no significant medical curative benefit to the patient, even if it is allegedly good for others. As she understands it, Scripture prohibits inflicting oneself with Biblically unnecessary gashes, wounds or pokes: "You are children of the Lord, your God. You shall not poke yourselves . . ." ( Deuteronomy 14:1.) "You shall not make incisions in your flesh for any soul . . . I am the Lord." (Leviticus 19:28). The same lesson is further underscored in other scriptural verses (e.g., Leviticus 21:5). To Buzaglo, this is a serious Biblical injunction. In her case, since she has natural immunity protecting her from COVID, she perceives no health need for her to receive an injection. As she sees it, to obtain an unnecessary injection would be in direct violation of Judaic law.

g.   Exposure to Unnecessary Risk: Buzaglo believes that Torah observant Jews like herself are forbidden to expose themselves to risk that is unnecessary to the individual (in her case, she believes that natural immunity to COVID-19 makes vaccination unnecessary). In her view, Scripture does not permit exposing oneself to any risk in the absence of a significant medical benefit to one's own self that outweighs the risk. She finds support in a Torah verse that states: "Guard your own soul scrupulously." (Deuteronomy 4:9). As she interprets Torah, if a Torah-adherent individual has natural immunity or, for some other reason, faces minimal or negligible risk from COVID, he is prohibited to expose himself to the risks of the vaccine.

h. Betrayal of Faith in God: As a Torah observant Jew, Buzaglo believes that God is the ultimate healer. Each year during the high holy day of Yom Kippur Buzaglo utters the prayer "He alone determines who shall live, and who shall die, who by fire, who by drowning, who by illness, who by pestilence, etc." Every morning as she opens her eyes, Buzaglo utters the Modeh Ani prayer: "Thankful am I in your presence, for you have returned to me my soul, how great is your mercy." Every morning, as she utters morning prayers, Buzaglo says the blessing of Refaeinu: "Heal us, God, then we will be healed; save us, then we will be saved, for You are our praise. Bring complete recovery for all our ailments, for You are G-d, King, the faithful and compassionate Healer. Blessed are You, Hashem, Who heals the sick of His people Israel." Buzaglo prays for her students suffering from physical and mental ailments when she says this prayer. She prayed for herself, when she contracted Covid last year, and God answered her prayers. Within a week she was feeling stronger and healthier.

i. Buzaglo's faith is in God as the ultimate healer, and she feels that her faith must be in him one-hundred percent, for that is the covenant she entered with him. Buzaglo keep his commandments, and in turn she believes that He will not bring pestilence or disease into her home. (Exodus 15:26). Seeking health from a vaccine, as if it were a solution to illness, or able to protect her from whatever fate God has planned for her, is sinful and heretical in her view. She believes that to do so would weaken her belief in God. Reliance upon a vaccine, as she sees it, would remove the opportunity for prayer and ruin the spiritual connection

between herself and God. She believes that reliance on vaccines promises eternal and perfect health without earning it. As a Torah observant Jew, Buzaglo refuses to bow before a false God, like a pharmaceutical company or a vaccine. She will turn with prayers as she always has to the ultimate healer - her creator.

j. Altering God's Creation: The Book of Genesis states that God created man in His image. It is Buzaglo's belief that God knew what he was doing and the body of man needs no "fixing" by mankind. Buzaglo sees vaccines as "fixing," for mankind cannot improve on G-d's creation. As she sees it, the mRNA vaccine inserts a synthetic genetic code into her body, to prompt her body to create spiked proteins which will "save her" from the virus. But God has created man, not Moderna or Pfizer or J&J, or any scientist working for any team of vaccine researchers and developers. Buzaglo believes that if she were to accept the vaccine-makers' synthetic code into her body it would be as if she were telling God, "Hey, Creator, you forgot to give me this code that will save my life!" To Buzaglo, that would be sinful, heretical and blasphemous.

226.    On September 20, 2021, Buzaglo submitted her request for a religious exemption to the DOE. She supported her exemption request with substantially all the information that is set forth above.

227.    On September 22, 2021, DOE denied her request in an email that stated the following:

We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate. Your application has failed to

meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

228.    Notably, the denial also stated that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate."

229.    On September 23, 2021, Buzaglo submitted an appeal letter to the DOE, explaining that she did not agree that a clergy letter was constitutionally required, but complying with the request for such a letter..

230.    Buzaglo's rabbi stated in his letter that he had discussed the matter with her, that she cited authentic scriptural sources that underlie valid objections under Torah law, and that he and the congregation are in complete agreement. He asserted, "[i]n fact, our congregation categorically opposes this vaccine as a matter of religious tenet, . . ."

231.    During her appeal hearing on October 5, 2021, Buzaglo explained that various communities in Judaism have differing levels of religious observance.  She gave an example from her visit to a South American town where no kosher food was available. Her Conservative Jewish friend had permission from her rabbi to eat a kosher species of fish at a non-kosher restaurant. Her Orthodox Ashkenazi friend had permission to eat a salad served on a plastic plate (not contaminated by non-kosher meat). Buzaglo's rabbi, however, told her that she was forbidden from ingesting anything at all in that restaurant

as there was no way of knowing if non-kosher meat had touched any of the cutlery or foodstuffs. As a result, Buzaglo had to buy raw fruit at a market.

232.     When it was his turn to speak, the DOE's representative admitted that he was unfamiliar with how diverse Judaism and its leadership and laws can be. He then shared a link to an article from the Jerusalem Post citing how the Sephardic Chief Rabbi of Israel had spoken in favor of a vaccine.

233.     Buzaglo was not allowed to respond to the article, but the Sephardic Chief Rabbi of Israel is an elected political position, the Sephardic Chief Rabbi of Israel is not her rabbi nor her rabbi's mentor, and she is not bound by his opinions or rulings.

234.     Buzaglo never received direct notice of the denial of her appeal, but NYC DOE informed her via email on October 8, 2021 that she had been placed on leave without pay, signifying that her appeal had been denied.

235.     On information and belief, several other Orthodox Jews who based their religious exemptions requests to the DOE vaccine mandate on the same sincerely held religious beliefs that Buzaglo expressed in her application were granted religious exemptions.

236.     Pursuant to the orders of the United States Court of Appeals for the Second Circuit on November 15 and 30, 2021, Buzaglo submitted to a "fresh look" examination of her application for religious exemption by the Citywide Appeals Panel. On or about December 10, 2021, Buzaglo received a notice informing her that her appeal was denied, and requiring her to vaccinate herself to remain employed by NYC DOE, or to "opt-in" to an extended leave without pay program along with a waiver of rights by December 28, 2021, or to face termination of her employment and insurance coverage.

237.     Corporation Counsel sent an email to Plaintiffs' counsel on December 3, 2021

that purported to explain Buzaglo's denial by the Citywide Panel as follows:

APPEAL NO. 00004822, Sarah Buzaglo

After carefully reviewing the documentation provided by all parties, the
Citywide Appeal Panel has voted to AFFIRM the DOE's determination to
deny Appellant Buzaglo's reasonable accommodation. The record before the
Panel demonstrated that the employee's sincerely held religious beliefs, which
the panel does not question, are  not preventing the employee from
vaccination. Rather, the appellant's decision not to vaccinate comes from non-
religious sources: a belief that the mandate is unconstitutional – a legal
contention that has been rejected by courts of competent jurisdiction -- and
factual beliefs about the vaccination that conflicts with the factual findings of
the DOHMH Commissioner in imposing the mandate.

Even assuming the appellant had established a valid basis for a reasonable
accommodation, the panel believes the DOE has satisfied what is necessary
under the law to demonstrate undue hardship. Appellant is a classroom
teacher who, under the present circumstances, cannot physically be in the
classroom while unvaccinated without presenting a risk to the vulnerable and
still primarily unvaccinated student population. DOE has met its burden under
the law that diverting the appellant from classroom duties constitutes an undue
hardship.

238.     Buzaglo is now faced with a wrenching choice imposed by the Exemption

Standards: because she holds religious beliefs that forbid her from accepting vaccination,

she must either resign from her employment with DOE, with limited benefits, and waive

her constitutional rights; or continue on unpaid leave until September 5, 2022, with

limited benefits and a prohibition on gainful employment, and waive her constitutional

rights; or be fired effective December 1, 2021.

239.     If Buzaglo wishes, or needs, to continue to receive her DOE health insurance

between now and next September, the Defendants are requiring her to surrender any

rights she has to challenge her dismissal. She is ready, willing and able to work, and

capable of working remotely or, if in person, in a fully-masked, socially-distanced, fully tested work environment – as she has done in the past.

240.     Because the Defendants have refused to respect Buzaglo's constitutional right to religious freedom, have inflicted substantial harm upon her because she has stood up for her rights, and are on the precipice of a deadline, set by themselves, that will change her status even further with the NYC DOE and inflict still more harm, Buzaglo is forced to go to court to restrain further harm and to defend her constitutional rights.

Wherefore, Plaintiff Sarah Buzaglo asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## NINTH CLAIM FOR RELIEF

**(Violation of Edward (Eli) Weber's Right of Free Exercise – Against NYC DOE)**

241.     Plaintiff Edward (Eli) Weber realleges and incorporates by reference the allegations recited in paragraphs 1 - 240 of this Complaint as if fully set forth herein.

242.     Weber has been employed by the NYC DOE since 2001 as a teacher. He is unvaccinated and he refuses to be vaccinated for religious reasons.    The Vaccine Mandate threatens to deprive him not only of his career but also of economic and retirement benefits that he has accrued during his employment with the Department.

243.     During the 2020-2021 school year, Weber fulfilled his job responsibilities remotely.

244.     Weber has been a Chassidic Jew for 24 years.

245.     Weber attends synagogue every day, keeps the Sabbath, and observes all of the Jewish Holidays.

246.     Weber prays three times a day.  He begins his day at 3 a.m. and studies Jewish books for at least an hour before he attends synagogue and goes to work.  He immerses in a Mikvah, a purifying bath every day before prayer. He studies with a habrusa (friend) every night after dinner.

247.     Everything he does, outside of his work with the DOE, is involved in spiritual practice.

248.     Weber is bound by Jewish law in all aspects of his life.  He does not eat without saying a blessing before and after. He kisses a mezuzah upon entering his house.  He follows all the laws of family purity, has a full beard, and wears a yarmulke and strings on his shirt, even when he sleeps.

249.     Under Jewish law, and according to his sincerely held religious beliefs, he is bound by the authority of his rabbi.

250.     He therefore asked his rabbi—Rabbi Daniel Green, the Director and spiritual leader of Keystone Jewish Center in Brooklyn—to provide him with an opinion on whether any of the Covid-19 vaccines are permissible by "Halacha," which refers to Jewish law as delineated by biblical and Talmudic dictates.

251.     On October 1, 2021, Weber applied for a religious exemption from the DOE. He submitted his letter from Rabbi Green, which stated, among other things, the following:

It is categorically forbidden by Jewish religious law to be injected with said vaccine, otherwise known as the mRNA injection (whether that of Pfizer, Moderna, or Johnson & Johnson). The prohibition is Halachically binding, as it involves various serious breaches of Shulchan Aruch (Jewish Code of Religious Law).

252.     His union representative told him that his letter was the strongest he had seen yet.

253.     Weber believes that making any use of human cell lines (including research, testing, or manufacturing)—like the Covid-9 vaccines do—is forbidden in Judaic Law, because Judaism honors the sanctity of life of the unborn and strictly prohibits abortions of otherwise-viable fetuses who pose no mortal risk to the mother. This is tantamount to murder and infanticide, and is strictly prohibited, as stated in Bereishis 9:6: "Whoever sheds the blood of a human being inside another human being shall his blood be shed, for in the image of God He made (each) human being." Furthermore, Judaic law prohibits deriving benefits from any human corpse, including that of a miscarried fetus.

254.     It is also forbidden under Jewish law to take a medication that is coerced, or to coerce preventative medicine. The very notion of a mandatory vaccine policy is anathema

in Judaism since it usurps body sovereignty, a Biblical imperative (Vayikra 25:55). Scripture requires its adherent to reject any and all forms of bodily subjugation to any human overlord, irrespective of alleged benefit to oneself or one's community.

255.     Weber believes the body was created by a Creator; therefore, changing the blue-print for the creation, by means of altering genetic function of cells, runs contrary to Halachic Judaic law and ethics. Any such reprehensible mingling of the genetic function of body cells with a foreign substance plainly runs afoul of Judaic law, and includes in modified messenger RNA and recombinant DNA technologies, both of which constitute a profound alteration of the implicit genetic function as designed by the Creator.

256.     Weber would never consider putting something in his body that would affect his DNA.  The idea of harming his ancestral DNA in any way is abhorrent to him; likewise, the thought of putting aborted material, or even to be in the same room as such material, goes against everything he believes in, according to his religious worldview.

257.     His religious beliefs also extend to his diet. He does not eat pork or shellfish. He is careful not to mix milk and meat and he has two sinks and separate sets of utensils for each.  He only eats kosher food.  He is stricter than most orthodox Jews in his practice.

258.     Even though he received vaccines as a child, when he lived a secular lifestyle, he now avoids vaccines completely as he relies on God to protect him from disease.

259.     On October 1, 2021, the DOE denied his application, and on October 2, 2021, he was placed on leave without pay.

260.     He tried to send more information from another Rabbi about his beliefs but SOLAS, the computerized vaccination portal, refused to accept further information.

85

261.     He did not choose to appeal his religious exemption denial at that time because his personal religious beliefs did not match the requirements of the standards that were set forth in the application and appeal process, so he concluded an appeal would be futile.

262.     Since that time, the DOE has admitted that the standards it used to assess his religious exemption request and thousands of others were constitutionally suspect and has made assurances to the Second Circuit in both its oral argument and in multiple briefings to that Court that "the City has been working on making an opportunity for fresh consideration available more broadly to Department of Education employees who unsuccessfully sought religious exemptions pursuant to the appeals process (2d Cir. 21-2678 ECF No. 53; 2d Cir. 21-2711 ECF No. 70)." 2d Cir., 21-2711, ECF No. 90 at 18; *id.* at 27 ("the City is making an opportunity for fresh consideration available more broadly to Department of Education employees who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process").

263.      On November 19, 2021, he emailed the DOE and explained that he had not chosen to appeal his religious exemption denial earlier because his personal religious beliefs did not match the requirements of the standards that were set forth in the application and appeal process, so he concluded an appeal would be futile.

264.     He hoped the DOE would give him an opportunity to appeal under the Citywide Panel process, given the fact that it admitted the standards it used when evaluating his initial request were unconstitutional.

265.     He never heard back from the DOE. He has not received an opportunity to file an appeal pursuant to the Citywide Appeal Panel process.

266.    He is currently at risk of being terminated and losing his health insurance. He has

not been paid since October, and cannot apply for unemployment.

Wherefore, Plaintiff Edward (Eli) Weber asks this Court to issue a permanent injunction

forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and

deadlines set forth in the Exemption Standards insofar as they forbid the employment by

NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who

refuse to comply with such mandate for religious reasons, staying all deadlines set by the

Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to

submit proposed revised rules for the adjudication of religious exemption requests to the

Court for its review and requiring her denied religious exemption request to be reheard

pursuant to Constitutionally-compliant standards and procedures, reinstating her to active

employment status, awarding back pay and compensatory damages, restoring her seniority,

tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to

the Plaintiff.


### TENTH CLAIM FOR RELIEF

**(Violation of Carolyn Grimando's Right of Free Exercise – Against NYC DOE)**

267.    Plaintiff Carolyn Grimando realleges and incorporates by reference the

allegations recited in paragraphs 1 - 266 of this Complaint as if fully set forth herein.

268.    Grimando has been employed by the NYC DOE for the past 18 years. She is

unvaccinated and she refuses to be vaccinated for religious reasons.    The Vaccine

Mandate threatens to deprive her not only of her career but also of economic and

retirement benefits that she has accrued during her employment with the Department.

269.     In September when Grimando originally found out about the DOE's vaccination mandate, she was recovering from Covid-19.

270.     She therefore applied for a medical exemption from the Mandate, because the Centers for Disease Control and Prevention had stated that anyone recovering from Covid-19 should wait a prescribed amount of time before getting a vaccination.

271.     Even though she had religious objections to the vaccine, she did not request a religious exemption at the same time, because she did not know that she could.

272.     Grimando later found out that even though the DOE had a religious exemption process, it was not accepting both religious and medical exemption requests from the same person.

273.     In any event, when she found out about the religious exemption process, she was intimidated by the requirements she saw listed in the Exemption Standards, especially the one that said that requests "shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine," since she is a Catholic and know that the pope has spoken publicly in favor of the vaccine.

274.     Grimando submitted a medical exemption request on September 13, 2021. Even though the SOLAS system acknowledged that individuals recovering from Covid should not be vaccinated for 90 days, her medical exemption was denied. She tried again and was denied a second time.

275.     She tried multiple times to get ahold of the DOE to ask why her medical exemption was denied. A representative from Human Resources eventually got back to

her to tell her that her documentation was not properly uploaded. Both that individual and her union representative recommended that she apply again.

276.     Upon Grimando's third application, the DOE granted her a temporary medical exemption for 45 days, even though the SOLAS system said that individuals with Covid-19 should not be vaccinated for 90 days.

277.      On October 12, even though her medical exemption had not yet expired, she submitted another medical exemption seeking to extend her first exemption for another 45 days. The DOE denied her request.

278.     Her medical exemption expired after the deadline for submitting a religious exemption request expired. However, she found out that the DOE was still accepting religious exemption requests.

279.     Even though Grimando was nervous that the DOE would not grant her a religious exemption request due to the Exemption Standards, she decided to submit a religious exemption request anyway.

280.     Her religious exemption request was submitted on her parish's letterhead and signed by her priest, Father Italo Barozzi. He serves at the Church of Saint Mel in Flushing, New York, which is her parish. Grimando also periodically attends Queen of Martyrs parish in Forest Hills.

281.     She explained that she was baptized into the Catholic Church as a child, and she has been a faithful practitioner of the Catholic religion her entire life.

282.     Grimando believes that the Roman Catholic Church teaches that a person may refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment.

283.      In her statement, Grimando cited to the *Catechism of the Catholic Church* which instructs that following one's conscience is following Christ Himself:

In all he says and does, man is obliged to follow faithfully what he knows to be just
and right. It is by the judgment of his conscience that man perceives and recognizes the prescriptions of the divine law: "Conscience is a law of the mind; yet Christians would not grant that it is nothing more; . . . Conscience is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ."

284.     Therefore, if a Catholic comes to an informed and sure judgment in conscience that he or she should not receive a vaccine, Grimando believes that the Catholic Church requires that the person follow this certain judgment of conscience and refuse the vaccine.

285.     Grimando believes that the Bible outlines the fact that God created the body both "fearfully and wonderfully." (Psalm 139:13-16). She believes that by manipulating genetic operations, the Covid-19 shots alter what God has made, which literally assumes the position of God. She believe this to be a sinful practice under these circumstances.

286.     Grimando also believes that the Bible states that the body is the Temple of the Holy Spirit. She believes she is commanded to take good care of it, not to defile it, and certainly not introduce something into it that could potentially harm it (1 Corinthians3:16-17, 1 Corinthians 6:19-20, 2 Corinthians 5:10, and 2 Corinthians 7:1).

287.    She believes that these these vaccines (by the very disclosure of the vaccine manufacturers) contain carcinogens, neurotoxins, animal viruses, animal blood, allergens, and heavy metals. She believes that introducing these substances into her body would violate the Bible's command to honor it as God's temple.

288.    Grimando also believes she has a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. Since the Covid-19 vaccinations were either researched and tested or manufactured using aborted fetal cells, she objects to them on this basis as well.

289.    Due to Grimando's sincerely held religious beliefs, she has not been vaccinated since she was a child, she almost never takes prescription drugs, and she eats a vegetarian diet.

290.    On November 23, 2021, Grimando's religious exemption request was denied because it "failed to meet the criteria for a religious based accommodation."

291.    The DOE did not give her an opportunity to appeal that denial.

292.    This was despite the fact that the DOE made assurances to the Second Circuit in both its oral argument and in multiple briefings to that Court that "the City has been working on making an opportunity for fresh consideration available more broadly to Department of Education employees who unsuccessfully sought religious exemptions pursuant to the appeals process (2d Cir. 21-2678 ECF No. 53; 2d Cir. 21-2711 ECF No. 70)." 2d Cir., 21-2711, ECF No. 90 at 18; *id*. at 27 ("the City is making an opportunity for fresh consideration available more broadly to Department of Education employees

who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process").

293.    On November 30, 2021, Grimando was forced to choose whether to be vaccinated in violation of her sincerely held religious beliefs, be placed on unpaid leave with benefits for a limited time period (but only if she surrendered her legal right to challenge the DOE's actions), or to lose her job and her health insurance.

294.    While she chose to extend her leave without pay status in SOLAS, she signed the waiver under duress.

295.    In an email that she wrote to various DOE officials later that day, she stated that "[t]he reason why I am signing the waiver in SOLAS is because SOLAS doesn't give me a choice to skip the waiver to extend my leave without pay status."

296.    She also stated the following:

I am NOT waiving my right to seek religious exemption and accommodation from any requirement that conflicts with my sincerely held religious beliefs, and I am not waiving my rights to seek legal redress from any wrongful denial of such exemption or accommodation.
I am NOT waiving my right to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process.
I am NOT waiving my right to challenge any wrongful termination.

Wherefore, Plaintiff Carolyn Grimando asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the

Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## ELEVENTH CLAIM FOR RELIEF

### (Violation of Amoura Bryan's Right of Free Exercise – Against NYC DOE)

297.    Plaintiff Amoura Bryan realleges and incorporates by reference the allegations recited in paragraphs 1 – 296 of this Complaint as if fully set forth herein.

298.    Bryan has been employed by the NYC DOE for the past 13 years. She is unvaccinated and she refuses to be vaccinated for religious reasons.   The Vaccine Mandate threatens to deprive her not only of her career but also of economic and retirement benefits that she has accrued during her employment with the Department.

299.    Bryan began working for the DOE as a special education teacher with DOE Home Instruction Schools starting in August 2021.

300.    The DOE mandated all employees to be vaccinated or submit exemption/accommodation requests without consideration of working conditions that do not require Covid-19 vaccination.

301.    On September 13, 2021, Bryan submitted her request for a religious exemption from SOLAS. In the SOLAS portal, there was a preference to submit a letter from a religious leader/clergy and select an option that stated "I do not work in a school building." No further questions were asked in the online application, such as what Bryan's current teaching position is.

302.    On September 17, 2021, the DOE denied Bryan's application in an email that stated,

>  your application has failed to meet the criteria for a religious based accommodation because, per the Order of the Commissioner of Health, unvaccinated employees cannot work in a school building without posing a direct threat to health and safety. Due to the configuration for the 2021-2022 school year, which includes no remote class work, we cannot offer another worksite as an accommodation, as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

303.    The denial also stated that "[t]his application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of the UFT and the Board of Education regarding the vaccine mandate."

304.    The denial stated that Bryan had one school day to appeal.

305.    Bryan was confused and shocked by the DOE's decision because she is a remote teacher working in an isolated, non-school building workspace, and she does not interact with students or staff. Bryan's DOE Home School Instruction administrators have assigned her to a stationary location where she works remotely using Google Classroom to teach students who are learning from home due to medical accommodations.

306.     That is because Bryan's students are medically fragile and unable to attend school due to either medical or psychiatric conditions.

307.     Employees who successfully obtain religious or medical exemptions from DOE's vaccination mandate have been accommodated by working remotely, which Bryan already did.

308.     Bryan was unable to reply to the email from DOE's SOLAS portal to inform them of their erroneous assumption that she provides in-person instruction in a school building.

309.     A UFT representative named Michael Sill informed Bryan that he would reach out to the DOE regarding her situation. Mr. Sill also advised her to appeal her denial and mention her current working conditions as a remote worker in a non-school building.

310.     Bryan submitted a sworn affidavit in support of her appeal.

311.     Although she is affiliated with the Seventh Day Adventist Church, Bryan did not mention that affiliation in her sworn statement, because she believes her spiritual and moral obligations are ultimately to God, and not to any church. It is her religious belief that the church does not have authority over the decisions she makes pertaining to her health or her body; only God does. Additionally, even though she was baptized, she believes that organized religions and religious leaders do not control her relationship and commitment to God and the Bible. She instead made her request for a religious accommodation based upon her own faith practices and religious beliefs, which are protected under the law, regardless of their affiliation with any church.

312.     Due to Bryan's church upbringing and faith in the Bible, she believes that God is the manufacturer/creator of all life on this earth and in the universe and as the

manufacturer, God has authority to give instructions on how best to care for this complex machinery called the body since the Bible explains God is the creator in Genesis Chapter 1.

313.     The Bible is Bryan's guide and directs her life, including her health care choices. She believes that she does not own her body but that her body is the temple of God (1 Corinthians 6:19) and that "[i]f any man defile the temple of God, him shall God destroy: for the temple of God is holy, which temple ye are" (1 Corinthians 3:17).

314.     She also believe based on 1 Corinthians 3:17 that she must not defile her body with anything that can change the natural functions of her organs, that she must not ingest any "unclean substances" (as discussed in Leviticus 7:21 and 2 Corinthians 6:17), and that she must not take any action that would cause her cells to function contrary to how God manufactured them to work naturally.

315.     Bryan believes firmly what it says in Exodus 15:26 that if she keeps God's commands and laws and if some sickness does come upon her (like Covid 19), that God is "the Lord that heal[s]" me. But she does understand that healing does not always come in this life, and that true healing is in the promised after life in eternity with God.

316.     She also adheres to what her Bible school teacher calls the ten laws of health, which are religious medical practices rooted in Scripture and that include such things as trusting in the God of the Bible (Exodus 23:25), temperance (Acts 15:29 and 1 Peter 2:11), and plant-based nutrition (Genesis 1:29).

317.     As a result of these beliefs, she does not smoke, drink, or use any illicit drugs, and her diet is predominantly plant-based.

318.     Bryan also believes it would be a violation of these religious beliefs to receive a Covid 19 vaccination.

319.     On September 24, 2021, Bryan attended the arbitration hearing on her appeal.

320.     At the arbitration hearing Bryan explained her sincerely held religious beliefs as stated in her sworn statement and informed the arbitrator of her current working conditions as a remote worker at a non-school building with no interactions with students or staff.

321.     Bryan's UFT representative Matt Kirwan confirmed her current working conditions and acknowledged that Mr. Sill from UFT said he would speak with DOE on her behalf about how she does not engage in in-person instruction. She asked the arbitrator if she could submit an email as part of her supporting documents confirming this, and he said she did not need to since she was already sworn in and he believed her.

322.     At the hearing, the representative from the DOE inquired about Bryan's affiliation with the Seventh Day Adventist Church and stated that the Seventh Day Adventist Church does not oppose the vaccine.

323.     Bryan explained that it was her personal religious belief in God's laws and the requirements of the Bible that she should not take the vaccine, regardless of her affiliation with the Seventh Day Adventist Church. She repeated what she said in her opening statement given at the arbitration.

324.     Bryan does not believe any UFT representative ever spoke to DOE on her behalf.

325.     On October 18, 2021, Bryan's assistant principal James Maresca wrote a letter in support regarding her current teaching position as a remote worker in a non-school building.

326.     In that letter, he confirmed that Bryan works remotely with her students from a non-school setting.

327.     He stated further:

> [Ms. Bryan's] instruction is primarily with elementary students with various disabilities, requiring her to instruct these students via Zoom on a daily basis, covering all aspects of the curriculum for each student. In addition, Miss Bryan is required to set up and maintain a Google Classroom for each student as evidence of work completed. As a remote teacher, she does not pose a risk to the health and safety of the children because she does not work from a school building. There is no discernible reason Miss Bryan would need to be vaccinated to perform her duties, as she is in no direct contact with students or staff members.

328.     On October 4, Bryan reached out to Mr. Sill and Mr. Kirwan, explaining that she had not heard from them regarding their promised advocacy on her behalf.

329.     On October 5, 2021, she received an email stating that the arbitrator denied her exemption request and that she is placed on a Leave of Absence without pay. There was no explanation about why she was denied.

330.     Mr. Sill responded to Bryan's October 4 communication in a dismissive email, stating that he was sorry that her appeal did not turn out the way she had hoped but that he could no longer help her, and that her only recourse was the courts or vaccination.

331.     On October 6, 2021, she submitted a new application with documentation explaining that she does not provide in-person instruction within a school building.

332.     On October 7, 2021, she was denied the reasonable accommodation via an email which stated "[r]epeat Application previously reviewed and determined." The email did not address the fact that her original denial was based on incorrect facts.

333.     She is distraught over this situation because it has prevented her from being able to be there for her students. Bryan's religious exemption denial was based on factually incorrect information and an unconstitutional exemption process.

334.     After the DOE admitted and the Second Circuit determined that the Exemption Standards were constitutionally suspect, Bryan was given the opportunity to re-appeal her denial.

335.     On December 2, Bryan submitted additional documentation showing clearly, as her original documentation did, that her position is remote, which is the accommodation the DOE was already providing to people who obtained religious exemptions.

336.     The DOE has not yet decided Bryan's re-appeal, but she risks termination and loss of her health insurance if she is not reinstated.

Wherefore, Plaintiff Amoura Bryan asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard

pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## TWELFTH CLAIM FOR RELIEF

### (Violation of Joan Giammarino's Right of Free Exercise – Against NYC DOE)

337.     Plaintiff Joan Giammarino realleges and incorporates by reference the allegations recited in paragraphs 1 - 336 of this Complaint as if fully set forth herein.

338.     Giammarino has been employed by the NYC DOE since September 2007. She is unvaccinated and she refuses to be vaccinated for religious reasons.   The Vaccine Mandate threatens to deprive her not only of her career but also of economic and retirement benefits that she has accrued during her employment with the Department.

339.     In September when Giammarino originally found out about the DOE's vaccination mandate, she chose not to apply for a religious exemption, because she knew she could not meet the Exemption Standards

340.     Specifically, the Exemption Standards required the submission of a clergy letter.

341.     Giammarino is a practicing Catholic, but she did not think she could find a priest who would support her position, even though it stemmed from her sincerely held religious beliefs.

342.     She was raised with a strong very religious background as a Christian, and her entire family life from childhood was built upon Christian teachings. She attended

Catholic elementary school for eight years, a Catholic high school for four years, and a Catholic University for four years as well.

343.     Giammarino cannot participate in taking the Covid-19 vaccine because the vaccines involve the use of aborted fetuses in either their testing or manufacturing. She is strongly opposed to abortion in any form as a Christian, and could never allow one of these vaccines to be put into her body without feeling like she was committing a sin by accepting the murder of one of God's precious children.

344.     The Ten Commandments are one of the core foundations of Giammarino's personal religious beliefs and therefore dictate how she lives her life as a Christian. Since the Fifth Commandment clearly states, "[t]hou shalt not kill," she believes that she cannot consciously participate in a process that she believes forsakes not only the sanctity of a human life, but also that of a human soul. She also believes that time and distance from an evil that originated long ago does not excuse it or make her free of responsibility for participating in it. Injecting fetal cells into her body therefore violates her religious beliefs.

345.     Giammarino prayed for quite some time about taking the vaccine, as she knew the repercussions to her professional life and her ability to provide for herself would both be negatively impacted, but she knew from meeting God in prayer that it would be against her religious beliefs to take it.

346.     As a result of her sincerely held religious beliefs regarding vaccination, she has not been vaccinated in 20 years.

347.     Despite learning that the DOE admitted to the Second Circuit Court of Appeals that the process and standards it used to consider religious exemption applications, including the clergy letter requirement, were "constitutionally suspect" and proposed an alternative process with purportedly constitutional standards, the DOE did not make this process available to Giammarino.

348.     In addition to her religious objection to the vaccine, Giammarino's doctor advised her against taking the vaccine due to two autoimmune disorders. However, she chose not to apply for a medical exemption because her personal medical conditions did not match the requirements of the Exemption Standards, so she concluded an application would be futile.

349.     On November 29, 2021, Giammarino sent Michael Mulgrew, UFT president, and Beth Norton, UFT general counsel, an email explaining why she did not apply for a medical exemption.

350.     In that email, she also explained that the DOE conceded that the Exemption Standards were "constitutionally suspect" and that the DOE had proposed an alternative process with purportedly constitutional standards.

351.     Since a great number of UFT members' applications and appeals were also considered under the same admittedly unconstitutional process, Giammarino demanded that the UFT bring a claim directly to Scheinman Arbitration and Mediation Services by November 30, 2021 for expedited resolution, because she did not believe the Arbitration Agreement was created and implemented in good faith.

352.     She never heard back.

353.    On December 6, Giammarino mailed a certified letter to the DOE stating that she originally chose not to apply for a religious exemption because her personal religious beliefs did not match the narrow requirements of the Exemption Standards, so she concluded an application would be futile. She also stated that she was unable to secure a letter from a religious leader as required, as few clergy members would oblige. Since the Second Circuit Court of Appeals declared and the DOE admitted that these standards were "constitutionally suspect," she demanded that she have the option to have her religious exemption application considered under a fair, constitutionally sound process.

354.    She also attached a statement explaining her religious beliefs and requesting a religious exemption.

355.    On the same day, she also sent a certified letter to the DOE requesting a medical exemption.

356.    On December 14, 2021, she received an email from the DOE stating that it received her paper application for a reasonable medical accommodation, that all accommodation requests were transferred to the SOLAS system, that the DOE was administratively closing her request, and that she should apply online via SOLAS.

357.    After the Second Circuit's ruling, the DOE never offered Giammarino the opportunity to apply for a religious exemption, even though it was on notice that she declined to apply originally because of its admittedly unconstitutional requirements.

358.    She also never heard back from the DOE regarding the religious exemption request that she submitted by mail in December.

359.     Giammarino has been placed on unpaid leave and she is at risk of being terminated and losing her health insurance.

Wherefore, Plaintiff Joan Giammarino asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

## THIRTEENTH CLAIM FOR RELIEF

### (Liability Under 42 U.S.C. sec. 1983 against all Defendants)

360.     Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1 - 205 of this Complaint as if fully set forth herein.

361.     Defendants NYC and NYC DOE acted under the color of state law, and at the direction of the individual Defendants, when they imposed the Vaccine Mandate, cooperated in the creation of the Exemption Standards and acceded thereto, enforced and applied the terms of the Vaccine Mandate and the Exemption Standards and denied Plaintiffs' requests for religious exemption and appeals from such denials.

104

362.     The Plaintiffs have been, and are being, deprived by the activities of the Defendants of their right effectively to apply for and receive religious exemptions from the vaccination requirements of the Vaccine Mandate. Their right to religious freedom is being substantially and unfairly burdened.

363.     Defendants' Vaccine Mandate created a system of unconstitutional and unfair exemption application procedures that are designed to deny the religious exemption applications of as many people as possible, including Plaintiffs. Through the creation, application and enforcement of the standards and procedures set forth in the Exemption Standards, Defendants have ensured that the Plaintiffs, and many others, have been denied a fair adjudication and accommodation of their religious freedom rights.

364.     The Plaintiffs did not at any point or in any way effectively consent to the unconstitutional actions of the Defendants, nor have they ever effectively waived their civil right to demand in court that the Defendants respect their First Amendment freedoms.

365.     On information and belief, Defendants Commissioner Chokshi and Chancellor Porter, or subordinates directly subject to their control, formulated the Vaccine Mandate that NYC and the NYC DOE have enforced against the Plaintiffs, and conspired in the establishment of unconstitutional standards for the consideration of Plaintiffs' religious exemption requests.

366.     Plaintiffs have suffered damages, including without limitation lost salaries, lost potential earnings, loss of health insurance coverage, loss of seniority, loss of employment and deprivation of their right to religious freedom.

WHEREFORE, Plaintiffs request judgment declaring that the Vaccine Mandate, as implemented by the Exemption Standards and the Citywide Appeals Panel process, is void and unenforceable as against them and all other persons similarly situated, an award of damages as further described above in an amount to be determined by the Court, or nominal damages, and an award requiring Defendants to pay Plaintiffs' legal fees and expenses in this matter pursuant to 42 U.S.C. sec. 1983.

## REQUEST FOR RELIEF

1. Plaintiffs respectfully ask this Court for the following relief:

    1. Certifying the proosed Class pursuant to Rule 23;

    2. On the First Claim for Relief (paragraphs 66 through 94 hereof): Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption Standards are invalid because they violate the Free Exercise Clause of the First Amendment to the United States Constitution, to permanently stay all deadlines set forth in the Exemption Standards and appeal determinations, to issue a permanent injunction against the enforcement of the Vaccine Mandate and the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all

employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

3. On the Second Claim for Relief (paragraphs 95 through 101 hereof): Plaintiffs ask the Court to find that the Vaccine Mandate and the Exemption Standards are invalid because they violate the Establishment Clause of the First Amendment to the United States Constitution, to permanently stay all deadlines set forth in the Exemption Standards and appeal determinations, to issue a permanent injunction against the enforcement of the Vaccine Mandate and the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

4. On the Third Claim for Relief (paragraphs 102 through 106 hereof): Plaintiffs ask

the Court to find that the Vaccine Mandate is invalid because it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to permanently stay all deadlines set forth in the Exemption Standards and appeal determinations, to issue a permanent injunction against the enforcement of the Vaccine Mandate and Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner, to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards to employment with NYC DOE with back pay and restoration of time in service, seniority and tenure rights, to award actual and consequential damages to Plaintiffs, and to award attorney's fees and costs to Plaintiffs.

5. On the Fourth Claim for Relief (paragraphs 107 through 128 hereof): Plaintiff Matthew Keil asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption

Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

6. On the Fifth Claim for Relief (paragraphs 129 through 153 hereof): Plaintiff John De Luca asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring his denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights,Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

7. On the Sixth Claim for Relief (paragraphs 154 through 187 hereof): Plaintiff

Sasha Delgado asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

8. On the Seventh Claim for Relief (paragraphs 188 through 210 hereof): Plaintiff Dennis Strk asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its

review and requiring his denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating him to active employment status, awarding back pay and compensatory damages, restoring his seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

9. On the Eighth Claim for Relief (paragraphs 211 through 240 hereof): Plaintiff Sarah Buzaglo asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

10. On the Ninth Claim for Relief (paragraphs 241 through 266 hereof): Plaintiff Edward (Eli) Weber asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and

deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

11. On the Tenth Claim for Relief (paragraphs 267 through ___ hereof), Plaintiff Carolyn Grimando asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her

to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

12. On the Eleventh Claim for Relief (paragraphs 297 through 336 hereof), Plaintiff Amoura Bryan asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying all deadlines set by the Vaccine Mandate, the Exemption Standards or denial decisions, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to Constitutionally-compliant standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

13. On the Twelfth Claim for Relief (paragraphs 337 through 359 hereof), Plaintiff Joan Giammarino asks this Court to issue a permanent injunction forbidding the Defendants to enforce the Vaccine Mandate and the standards, procedures and deadlines set forth in the Exemption Standards insofar as they forbid the employment by NYC DOE of unvaccinated individuals without exemptions from

the Vaccine Mandate who refuse to comply with such mandate for religious reasons, staying the October 29 and November 30, 2021 deadlines, requiring NYC DOE to submit proposed revised rules for the adjudication of religious exemption requests to the Court for its review and requiring her denied religious exemption request to be reheard pursuant to different standards and procedures, reinstating her to active employment status, awarding back pay and compensatory damages, restoring her seniority, tenure rights, Years in Service and CAR and awarding attorney's fees, costs and expenses to the Plaintiff.

14. On the Thirteenth Claim for Relief (paragraphs 360 through 366 hereof), Plaintiffs request judgment declaring that the Vaccine Mandate, as implemented by the Exemption Standards and the Citywide Appeals Panel process, is void and unenforceable as against them and all other persons similarly situated, an award of damages as further described above in an amount to be determined by the Court, or nominal damages, and an award requiring Defendants to pay Plaintiffs' legal fees and expenses in this matter pursuant to 42 U.S.C. sec. 1983.

15. On all Claims for Relief: awarding relief to the Class equivalent to the relief requested for the individual named Plaintiffs identified herein.

16. Awarding costs of suit; investigation costs; payment of reasonable attorneys' fees; declaratory relief, injunctive relief, and such other and further relief as the Court may deem just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and the Class respectfully demand a trial by jury for all issues so triable in this action.

Dated: New York, New York
December 16, 2021

Respectfully submitted,

NELSON MADDEN BLACK LLP
*Attorneys for Plaintiffs and the Class*

*/s/ Jonathan R. Nelson*

By: Jonathan Robert Nelson (JN8796)

475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4300

## VERIFICATION

Pursuant to 28 U.S.C. Section 1746, I hereby declare that the foregoing statements are true and accurate to the best of my knowledge, except as to those statements that are made on information and belief, and as to such statements, I verily believe them.

_John De Luca_

John De Luca