```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
MICHAEL KANE, et al.,

                Plaintiffs,

        - against -

BILL DE BLASIO, et al.,                        MEMORANDUM AND ORDER
                                                21 Civ. 7863 (NRB)
                Defendants.                     21 Civ. 8773 (NRB)
---------------------------------------X
MATTHEW KIEL, et al.,

                Plaintiffs,

        - against -

THE CITY OF NEW YORK, et al.,

                Defendants.
---------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Since the novel coronavirus emerged two and a half years ago, over a million people in the United States have died from COVID-19, including over 40,000 residents of New York City (the "City").[1] Due to the rapid spread of COVID-19, City schools were abruptly compelled in the spring of 2020 to operate remotely.[2] In order to combat the further spread of the coronavirus and to allow schools

---

[1]    Covid Data Tracker Weekly Review, Centers for Disease Control (Aug. 19, 2022) https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html; COVID-19: Data, City of New York (Aug. 24, 2022), https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page.

[2]    New York City to Close All School Buildings and Transition to Remote Learning, Office of the Mayor (Mar. 15, 2020), https://www1.nyc.gov/office-of-the-mayor/news/151-20/new-york-city-close-all-school-buildings-transition-remote-learning.

to reopen as safely as possible, in August 2021, following the Food and Drug Administration's ("FDA") full approval of a COVID-19 vaccine, the New York City Commissioner of Health and Mental Hygiene issued an order requiring Department of Education ("DOE") staff, along with other City employees and contractors working in person in school settings, to provide proof of vaccination against COVID-19, which was restated with minor amendments in September 2021 (the "Vaccine Mandate" or "Mandate"). Plaintiffs are 21 teachers, administrators, and other DOE staff who challenge this Mandate on behalf of themselves and a purported class because they believe its requirement that they be vaccinated against COVID-19 violates, inter alia, their religious freedoms guaranteed by the First Amendment.[3] Presently before this Court are defendants' motion to dismiss the complaint for failure to state a claim, ECF No. 111, and plaintiffs' fourth motion for a preliminary injunction, which seeks an injunction "barring enforcement of the Mandate against [p]laintiffs and any other DOE employee who has applied for religious accommodation and offering each reinstatement of pay and benefits pending resolution on the merits," ECF No. 121 at 25.[4]

---

[3]     The above-captioned cases were both originally assigned to Judge Caproni and consolidated by her. After consolidation, plaintiffs filed an amended consolidated complaint, ECF No. 102 ("ACC"), alleging injuries on behalf of themselves and a purported class.
[4]     Plaintiffs in both cases filed motions for a preliminary injunction and a temporary restraining order at the outset of their case. Judge Caproni denied the motions, and the plaintiffs appealed. The Second Circuit considered the appeals together and granted a preliminary injunction, as discussed infra.

The present motions are the first before this Court. After Judge Caproni repeatedly denied plaintiffs' motions for preliminary injunction, plaintiffs filed a motion asking Judge Caproni to recuse herself, arguing that Judge Caproni had held Pfizer stock, which could theoretically be impacted by the outcome of this litigation. While Judge Caproni doubted the resolution of the merits of the case would have any meaningful impact on Pfizer stock, she decided to recuse herself "out of an abundance of caution and to avoid even the possible appearance of any bias or prejudice[.]" ECF No. 175 at 2-3. For the following reasons, this Court joins the long list of other courts who have upheld COVID-19 vaccine mandates,[5] and holds that the defendants' motion

---

After consolidation, the plaintiffs filed an additional motion for a preliminary injunction, which was denied. Thus, this present motion is the fourth motion for a preliminary injunction filed in this case.

[5]    See, e.g., We the Patriots, USA, Inc. v. Hochul, 17 F.4d 266 (2d Cir. 2021) (denying preliminary injunction of vaccine mandate for healthcare workers), op. clarified, 17 F.4d 368 (2d Cir. 2021), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022); Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33 (E.D.N.Y. 2021) (denying preliminary injunction of vaccine requirement for teachers and other DOE employees), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), cert. denied, 142 S. Ct. 1668, 212 L. Ed. 2d 578 (2022); Broecker v. New York Dept. of Educ., No. 21 Civ. 6387 (KAM) (LRM), 2022 WL 426113 (E.D.N.Y. Feb. 11, 2022) (denying preliminary injunction of vaccine mandate for other DOE employees); Marciano v. de Blasio, No. 21 Civ. 10752 (JSR), 2022 WL 678779, (S.D.N.Y. Mar. 8, 2022) (dismissing challenge to vaccine requirement for City employees); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 NY Slip Op 30173[U] (N.Y. Sup. Ct., N.Y. Cnty. Jan. 20, 2022) (denying preliminary injunction of vaccine mandate for other DOE employees); New York City Mun. Lab. Comm. v. City of New York, 73 Misc. 3d 621, 628, 156 N.Y.S.3d 681, 687 (N.Y. Sup. Ct., N.Y. Cnty. 2021) (denying preliminary injunction of vaccine mandate and dismissing case); Ferrelli v. Unified Ct. Sys., No. 22 Civ. 68 (LEK) (CFH), 2022 WL 673863, (N.D.N.Y. Mar. 7, 2022) (denying injunction of vaccine mandate in the New York State Court system); Brock v. City of New York, No. 21 Civ 11094 (AT) (SDA), 2022 WL 479256, at *1 (S.D.N.Y. Jan. 28, 2022) (denying preliminary injunction and temporary restraining order blocking vaccine mandate for City employees); Garland v. New York City Fire Dep't, 574 F. Supp. 3d 120 (E.D.N.Y. 2021) (E.D.N.Y. 2021) (denying preliminary injunction of vaccine mandate for City employees); Andre-

to dismiss is GRANTED and plaintiffs' motion for a preliminary injunction is DENIED.[6]

# I. Background[7]

## A. The Vaccine Mandate and the Arbitration Award

On August 23, 2021, the FDA approved the Pfizer-BioNTech COVID-19 vaccine for individuals 16 years and older.[8]  On August 24, 2021, the Commissioner of the Department of Health and Mental Hygiene (the "Commissioner") promulgated an order (the "Original Vaccination Mandate" or "Original Mandate") requiring all DOE staff, along with all City employees and staff of contractors of the DOE and City who work in person at a DOE school setting or DOE building, to provide proof that they were fully vaccinated or on track to become fully vaccinated by September 27, 2021 or prior to beginning employment.  See ACC ¶ 63; Declaration of Lora Minicucci, ECF No. 113-2 ("Ex B") at 2-3.  The Original Mandate defined "fully

---

Rodney v. Hochul, No. 21 Civ. 1053 (BKS) (CFH), 2022 WL 3027094, (N.D.N.Y. Aug. 1, 2022) (dismissing challenge to vaccine mandate for hospital employees).

[6]    Plaintiffs requested oral argument on the motion to dismiss.  ECF No. 119.  The Court has concluded that oral argument is unnecessary in light of the extensive briefing submitted by the parties, the numerous prior decisions in this case, and because the issues before the Court are purely legal.

[7]    The following facts are primarily drawn from the operative complaint, ECF No. 102.  Where noted, certain facts of which the Court takes judicial notice or which are incorporated by reference in the ACC are drawn from exhibits attached to the Declaration of Lora Minicucci, ECF No. 113, and the Declaration of Sujata S. Gibson, ECF No. 122.  For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiffs' favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

[8]    FDA Approves First COVID-19 Vaccine, FDA.gov, (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.  The Court takes judicial notice of the FDA's press release announcing the full approval of the Pfizer-BioNTech vaccine.  See Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016) (finding that Court may properly take judicial notice of publicly available FDA guidance).

vaccinated" to mean "at least two weeks have passed after an individual received a single dose of a one-dose series, or the second dose of a two-dose series, of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization."  Ex. B at 2.

The Original Mandate explained that the U.S. Centers for Disease Control ("CDC") "has recommended that school teachers and staff be 'vaccinated as soon as possible' because vaccination is 'the most critical strategy to help schools safely resume] full operations . . . [and] is the leading public health prevention strategy to end the COVID-19 pandemic;'" Id. at 2 (alterations and quotation marks in original).  It further stated that "a system of vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety," and noted that the DOE "serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated."  Id. The Original Mandate contained no medical or religious exemptions.  Id.

On September 1, 2021, the United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") filed a Declaration of Impasse, and shortly thereafter entered into arbitration with the City and the Board of Education of the City School District for the City of New York

(the "BOE").   ACC ¶¶ 66; 70(a). On September 10, 2021, following arbitration, the City, the BOE, and the UFT reached an agreement (the "UFT Award") that provided for, "as an alternative to any statutory reasonable accommodation process," a procedure and criteria for religious exemptions. Id. ¶¶ 67; 70(a). With respect to religious exemptions, the UFT Award stated that:

> Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an on line source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

Id. ¶ 70(c). Employees who wished to submit applications for this exemption were required to submit their requests via an online system, SOLAS, by September 20, 2021 at 5 p.m. Id. ¶ 70(b). Staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee Relations were to issue decisions in writing by September 23, 2021 and, if the request was denied, set forth a reason for a denial. Id. ¶ 70(d). Thereafter, those employees whose requests were denied had one school day from the issuance of the decision to appeal, with an additional 48 hours after the filing of the appeal to submit any additional documentation. Id.

¶ 70(e).  The UFT Award noted that if the reason for the denial was a lack of documentation, an arbitrator could permit additional time to submit the documentation.  Id.  Appeals were to be conducted by a panel of arbitrators identified by Scheinman Arbitration and Mediation Services.  Id. ¶ 70(f).  The UFT Award provided that if an employee was granted a religious exemption, they were permitted to remain on the payroll, but were "in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect."  Id. ¶ 70(i).

The UFT Award also provided that if an unvaccinated employee chose not to request an exemption or was denied an exemption, the employee could be placed on leave without pay effective September 28, 2021 or upon denial of their appeal, whichever was later, through November 30, 2021.  Id. ¶ 70(k).  The UFT Award also created two options for employees to leave the DOE rather than be vaccinated.  First, during the period of September 28, 2021 through October 29, 2021, any employee who was on leave without pay due to their vaccination status and wished to separate from the DOE was permitted to do so on the understanding that they would be deemed to have resigned involuntarily and would waive the right to challenge their resignation.  Id. ¶ 70(m).  In exchange, they would receive a reimbursement for their unused CAR days,[9] and would be

---

[9]    Plaintiffs do not define the term "CAR days", but it appears to refer to "Cumulative Absence Reserve" days, which are the equivalent of sick days.  See

eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from a different source. Id.

Second, the UFT Award provided that during the period from November 1, 2021 through November 30, 2021, any employee could alternately opt to extend their leave without pay until September 5, 2022, provided they waived the right to challenge their voluntary resignation. Id. ¶ 70(n). Any employee who decided to get vaccinated had the right to return to their same school within two weeks. Id. The UFT Award also stated that, beginning December 1, 2021, the DOE would seek to unilaterally separate employees who had not opted into one of these two options. Id. ¶ 70(o).

On September 15, 2021, an arbitrator announced an arbitral award between the DOE and the Council of Supervisors and Administrators ("CSA"), which mirrored the UFT Award in all relevant respects (the "CSA Award"). Id. ¶ 71. On September 12 and September 15, 2021, the Commissioner issued slightly revised versions of the vaccine mandate. ECF No. 113-3 ("Ex. C" or "Vaccine Mandate") at 2. The September 15, 2021 order is currently in effect. Id. It provides the same justifications as the Original Mandate, id. at 1-2, and required that:

> No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:

Cumulative Absence Reserve (CAR), United Federation of Teachers, https://www.uft.org/your-rights/know-your-rights/cumulative-absence-reserve-car.

    a. DOE staff must provide proof of vaccination to the
       DOE.
    b. City employees who work in-person in a DOE school
       setting, DOE building, or charter school setting must
       provide proof of vaccination to their employer.
    c. Staff of contractors of DOE or the City, as defined
       below, must provide proof of vaccination to their
       employer, or if self-employed, to the DOE.
    d. Staff of any charter school serving students up to
       grade 12, and staff of contractors hired by charter
       schools co-located in a DOE school setting to work in
       person in a DOE school setting or DOE building, must
       provide proof of vaccination to their employer, or if
       self-employed, to the contracting charter school.

Id. at 2.  The order further defined "proof of vaccination" as

proof that an individual:

    a. Has been fully vaccinated;
    b. Has received a single dose vaccine, or the second dose
       of a two-dose vaccine, even if two weeks have not
       passed since they received the dose; or
    c. Has received the first dose of a two-dose vaccine, in
       which case they must additionally provide proof that
       they have received the second dose of that vaccine
       within 45 days after receipt of the first dose.

Id.  It also defined "fully vaccinated" to mean "at least two weeks

have passed after an individual received a single dose of a COVID-

19 vaccine that only requires one dose, or the second dose of a

two-dose series of a COVID-19 vaccine approved or authorized for

use by the Food and Drug Administration or World Health

Organization." Id.

   **C.  Plaintiffs Refuse to Be Vaccinated and Commence This Suit**

      Plaintiffs are DOE employees who refuse to be vaccinated due

to their religious beliefs.  The majority of plaintiffs in both

cases timely applied for religious exemptions before the September 20, 2021 deadline, pursuant to the process set out in the UFT Award.[10] See, e.g., ACC ¶¶ 226, 263, 292, 314, 362, 382, 408, 452, 553, 582, 613. Their applications were subsequently denied.[11] See, e.g., id. ¶¶ 234, 264, 292, 315, 328, 363, 382, 408, 453, 483, 554, 583, 614. Plaintiffs Kane, Castro, Chu, Clark, Di Capua, Gladding, Nwaifejokwu, Romero, Ruiz-Toro, and Smith (collectively, the "Kane plaintiffs") filed a lawsuit on September 21, 2021 - the day after the deadline for applying for a religious exemption under the UFT Award - seeking a preliminary injunction. ECF No. 1. They subsequently moved for a temporary restraining order on October 4, 2021. ECF No. 12. The Kane plaintiffs' motion for a temporary restraining order was denied on October 5, 2021, ECF No. 33, and their motion for a preliminary injunction was denied on October 12, 2021, ECF No. 60. Plaintiffs Keil, De Luca, Delgado, Strk,

---

[10]    Plaintiffs Grimando, Giammarino, LoParrino, Weber, and Smith did not timely apply for a religious exemption. Plaintiffs Giammarino, LoParrino, and Smith did not do so because they believed they did not meet the criteria under the UFT Award. Id. ¶¶ 422-23, 733, 758. Plaintiff Weber applied for a religious exemption on October 1, 2021 (days after the September 20, 2021 deadline). Id. ¶ 642. His application was nonetheless reviewed and denied, and after his denial, he decided not to appeal. Id. ¶ 652. Plaintiff Grimando initially and repeatedly applied for medical exemptions, and after securing a medical exemption for 45 days, then applied for a religious exemption, although she was "intimidated by the requirements." Id. ¶¶ 660, 663-666. At the time that the ACC was filed, plaintiff Bryan's application was pending before the Citywide panel. Id. ¶¶ 727-28. Based on her declaration filed in support of the motion for a preliminary injunction, ECF No. 123, it appears that her application has been denied. Id. ¶ 13.

[11]    Plaintiff Ruiz-Toro appealed her denial and was subsequently approved for a religious exemption to the Mandate through June 2022. Id. ¶ 488. As a condition of this exemption, Ruiz-Toro is prohibited from entering any school building or classroom. Id. ¶¶ 489-90. She challenges this condition, and maintains a claim that the Mandate violates her constitutional and statutory rights. Id.; see also id. at ¶¶ 920-21.

and Buzaglo (collectively, "the Keil plaintiffs") filed a lawsuit on October 27, 2021. Complaint, Keil et al. v. City of New York, 21 Civ. 8773 (S.D.N.Y. Oct. 27, 2021), ECF No. 10. The Keil plaintiffs' motion for a temporary restraining order and a preliminary injunction were denied on October 28, 2021. Plaintiffs appealed these denials on October 25 and 28, 2021, respectively. ECF No. 67; Notice of Interlocutory Appeal, Keil et al. v. City of New York, 21 Civ. 8773 (S.D.N.Y. Oct. 28, 2021), ECF No. 33.

The Second Circuit considered plaintiffs' appeals in tandem and issued a 48-page opinion addressing the substantive issues in this case. It found that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." Kane v. De Blasio, 19 F.4th 152, 164 (2d Cir. 2021) (hereinafter "Kane"). It also found that the Mandate's exemptions do not treat secular conduct more favorably than comparable religious conduct. Id. at 166. Accordingly, the Second Circuit found that the plaintiffs were not likely to succeed on their argument that the Mandate was facially unconstitutional. Id.

However, in accordance the City's concession that the procedure used in examining the religious exemption requests may have been "constitutionally suspect" as applied to plaintiffs, the Second Circuit made the "exceedingly narrow" determination that the plaintiffs were likely to succeed on their as applied challenges. Id. at 167. Specifically, the Second Circuit found

that plaintiffs provided evidence that the arbitrators had
evaluated their requests in accordance with the UFT Award's
standards for a religious exemption, which stated that "requests
shall be denied where the leader of the religious organization has
spoken publicly in favor of the vaccine, where the documentation
is readily available (e.g., from an online source), or where the
objection is personal, political, or philosophical in nature."
Id. at 168.  Therefore, the Court reasoned that:

> Denying an individual a religious accommodation based on
> someone else's publicly expressed religious views — even
> the leader of her faith —runs afoul of the Supreme
> Court's teaching that "[i]t is not within the judicial
> ken to question the centrality of particular beliefs or
> practices to a faith, or the validity of
> particular litigants' interpretations of those creeds."

Id. (quoting Hernandez v. Commissioner, 490 U.S. 680, 699 (1989)
(emphasis in original)).

 Accordingly, the Second Circuit ordered that plaintiffs'
requests receive fresh consideration "by a central citywide panel,
which will adhere to the standards of, inter alia, Title VII of
the Civil Rights Act of 1964, rather than the challenged criteria
set forth in . . . the arbitration award . . . ."  (hereinafter,
the "Citywide Panel.")  Id. at 162 (internal citations and
quotation marks omitted).  Further, the Circuit also stayed the
deadline for plaintiffs to opt into the extended leave program.
Id.  It further provided that if a plaintiff's request for
religious accommodation is granted by the Citywide Panel, the

plaintiff will receive backpay from the date the plaintiff was placed on leave without pay. Id. The case was subsequently stayed pending the conclusions of the proceedings before the Citywide Panel. ECF No. 80.

### D. The Citywide Panel Reviews Plaintiffs' Claims

Subsequently, each of the named plaintiffs who were then a part of this case had their claims reviewed by the Citywide Panel.[12] Plaintiffs allege that the Citywide Panel "rubber-stamped" the denials, although they acknowledge that plaintiff Castro's request for a religious accommodation was granted by the Citywide Panel and that he was reinstated with backpay. ACC ¶¶ 835, 271. Likewise, plaintiffs concede that in each denial, the Citywide Panel noted that the "it would be an undue hardship" for the DOE to allow unvaccinated teachers to enter school buildings. Id. ¶ 158. Plaintiffs filed a letter informing the Court that the Citywide Panel had concluded its review on December 11, 2021. ECF No. 85.

### E. Subsequent Procedural History

During the pendency of the appeal and the stay, the Kane plaintiffs twice attempted to amend their complaint to add class allegations, ECF No. 74, and requested leave to file a motion for class certification, ECF No. 83. Judge Caproni denied these

---

[12]   Plaintiffs Grimando, Giammarino, LoParrino, Weber, Bryan, and Solon were added to this case in the ACC. ECF No. 102.

requests because the Second Circuit had not yet issued a mandate remanding the case to her and because the Citywide Panel had not yet concluded its decision-making process. ECF No. 80 at 2, 84 at 2. On December 11, 2021, after receiving the outcome of their appeals to the Citywide Panel, plaintiffs filed an additional motion for a preliminary injunction and a motion to certify a class.[13] ECF No. 85. Judge Caproni denied both motions, reasoning that the plaintiffs had not shown irreparable harm, likelihood of success on the merits, or pled class allegations in the operative complaints. ECF No. 90. She further ordered that the Kane and Keil cases be consolidated, as neither party objected to consolidation, and gave the plaintiffs leave to file an amended complaint. Id.

On December 15, 2021, plaintiffs appealed Judge Caproni's denial. ECF No. 91. Subsequently, on December 17, 2021, they again asked Judge Caproni to stay the enforcement of the Vaccine Mandate pending the resolution of their appeal. ECF No. 92. Judge Caproni denied the request. ECF No. 93. Thereafter, plaintiffs sought a stay from the Second Circuit, which stayed the deadline for plaintiffs in this action to opt-in to the extended leave

---

[13]   Plaintiffs initially received notices that they would be placed on leave without pay within three business days if they did not submit proof of vaccination. Keil v. City of New York, No. 21-3043-CV, 2022 WL 619694, at *3 (2d Cir. Mar. 3, 2022). The City thereafter explained that these notices were erroneously sent to plaintiffs, and that plaintiffs had 14 days to opt into the DOE's leave without pay package. Id.

program and ordered that no further steps be taken to terminate the named plaintiffs in this action for noncompliance with the Mandate during the pendency of the appeal. ECF No. 94. Subsequently, the Second Circuit denied plaintiffs' motion for a preliminary injunction, ECF No. 108, and affirmed Judge Caproni's decision in its entirety, ECF No. 116.

Defendants moved to dismiss on February 14, 2022. ECF No. 111. Plaintiffs filed their opposition on March 30, 2022. ECF No. 119 ("Opp."). That motion was fully briefed as of April 22, 2022. See ECF No. 151. During the briefing on the motion to dismiss, on April 12, 2022, plaintiffs moved for a preliminary injunction for the fourth time. ECF No. 121. On April 29, 2022, Judge Caproni informed the parties that she would decide the motion to dismiss and the motion for preliminary injunction in tandem. ECF No. 157. The motion for a preliminary injunction was fully briefed on May 20, 2022. See ECF No. 168.

On June 9, 2022, plaintiffs moved to disqualify Judge Caproni, citing her decisions against them and her ownership of Pfizer stock. ECF No. 171, 172. Although Judge Caproni noted that she doubted there was any actual conflict, as she doubted that the resolution of the merits of the case would have any meaningful impact on Pfizer stock, she decided to recuse herself "out of an abundance of caution and to avoid even the possible appearance of any bias or prejudice." ECF No. 175 at 2-3. The case was

subsequently briefly assigned to Judge Ramos before being assigned
to this Court.  Plaintiffs sought to disqualify this Court on June
14, 2022. ECF No. 179.  This Court made clear that there is no
disqualifying conflict in responses dated June 15, 2022, ECF No.
180, and June 22, 2022, ECF No. 182.

## II.  Legal Standard

### A. Motion to Dismiss

To withstand a Rule 12(b)(6) motion, the non-movant's
pleading "must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  Id.  While the Court accepts
the truth of the allegations as pled, "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice and we are not bound to accept as true
a legal conclusion couched as a factual allegation."  Brown v.
Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (citations and
internal quotation marks omitted).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6),
a district court may consider "the facts alleged in the pleadings,
documents attached as exhibits or incorporated by reference in the

pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## B.    Preliminary Injunction

"When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Kane, 19 F.4th at 163 (citing Agudath Isr. of Am. v. Cuomo, 983 F.3d 620, 631 (2d Cir. 2020).

## III.  Discussion

Plaintiffs bring no fewer than 30 causes of action, under both federal and state law, challenging the Vaccine Mandate. We first consider their federal claims.

## A.  Free Exercise Challenge

Plaintiffs first allege that the Vaccine Mandate violates the Free Exercise clause. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. CONST., amend. I; see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states). "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." Employment Div., Dept. of Human Resources

of Oregon v. Smith, 494 U.S. 872, 877 (1990).  "The Free Exercise
Clause thus protects an individual's private right to religious
belief, as well as 'the performance of (or abstention from)
physical acts that constitute the free exercise of religion.'"
Kane, 19 F.4th at 163-64 (quoting Cent. Rabbinical Cong. of U.S.
& Can. v. N.Y.C. Dep't of Health & Mental Hygiene, 763 F.3d 183,
193 (2d Cir. 2014)).  "In order to prevail on a Free Exercise
Clause claim, a plaintiff generally must establish that 'the object
of [the challenged] law is to infringe upon or restrict practices
because of their religious motivation,' or that its 'purpose . .
. is the suppression of religion or religious conduct.'" Okwedy v.
Molinari, 69 Fed. App'x. 482, 484 (2d Cir. 2003) (alterations in
original) (citing Church of the Lukumi Babalu Aye, Inc. v. City of
Hialeah, 508 U.S. 520, 533 (1993)).

Importantly, the protection of the Free Exercise clause "does
not relieve an individual of the obligation to comply with a valid
and neutral law of general applicability."  Smith, 494 U.S. at
879.  "Where the government seeks to enforce a law that is neutral
and of general applicability . . . it need only demonstrate a
rational basis for its enforcement, even if enforcement of the law
incidentally burdens religious practices."  Fifth Ave.
Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d
Cir. 2002); see Cent. Rabbinical Cong., 763 F.3d at 193 ("[T]he
Free Exercise Clause "does not relieve an individual of the

18

obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).”).  However, laws and government policies that are either non-neutral or not generally applicable are subject to “strict scrutiny,” meaning that they must be “narrowly tailored” to serve a “compelling” state interest.  Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020); see Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1881 (2021) (“A government policy can survive strict scrutiny under only if it advances interests of the highest order and is narrowly tailored to achieve those interests.”) (internal quotation marks and citation omitted).

### 1. The Vaccine Mandate is Facially Neutral and Generally Applicable

The Second Circuit has already found that “[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable.”  Kane, 19 F.4th at 164.  Nevertheless, plaintiffs rehash arguments the Second Circuit has already rejected, and ask us to revisit this conclusion, arguing that the Court should apply strict scrutiny (1) because of a purported animus held by City and State officials and (2) because (contrary to the Second Circuit’s view), it is not generally applicable.[14]  Neither argument is meritorious.

_____

[14]    Although the Second Circuit’s opinions regarding the plaintiffs’ prior motions for preliminary injunctions span 53 pages and deliver carefully

### a.    There Is No Evidence of "Animus"

Ignoring the fact that the pandemic has claimed the lives of more than a million people in the United States, plaintiffs take the bold position that the Mandate has the "express purpose of inflicting special disability against minority religious viewpoints," Opp. at 4, rather than its obvious and explicit goals to, <u>inter alia</u>, "potentially save lives, protect public health, and promote public safety."  Vaccine Mandate at 2.  Plaintiffs argue that this case is analogous to <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520 (1993).  There, the Supreme Court found that a series of laws enacted with the purpose of preventing members of a religion from ritualistically sacrificing animals in accordance with their beliefs violated the Free Exercise clause.  <u>Id</u>. at 524.  The record of animus was clear; for example, the Supreme Court noted that "almost the only conduct subject to [the challenged ordinances] is the religious exercise of Santeria church members.  The texts show that they were drafted in tandem to achieve this result."  <u>Id</u>. at 535.  Here, there is no such record.  Instead, the Mandate lays out its reasoning, noting

considered holdings on substantive issues in this case, including on the issue of whether the Mandate is neutral and generally applicable, plaintiffs assert that we should review their claims <u>de novo</u> both in light of the differing standards for a preliminary injunction and a motion to dismiss and in light of the new facts they allege in their consolidated amended complaint.  <u>See</u> Opp. at 5.  Even assuming <u>arguendo</u> that we should review plaintiffs' claims <u>de novo</u>, we would independently concur with the Second Circuit's reasoning and reach the same conclusion: namely, that plaintiffs' facial challenge to the Mandate fails.

that the CDC has found that "vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated," and is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic." Vaccine Mandate at 1 (alteration in original). This Court, like the other Courts which have considered this Mandate, find that the clear object of the Mandate is to reduce the spread of COVID-19 in New York's schools and permit them to open. See, e.g., Kane, 19 F.4th at 172 (holding "[t]he Vaccine Mandate . . . is designed to further the compelling objective of permitting schools fully to reopen[.]"); Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33, 39 (E.D.N.Y. 2021) ("[E]ven if plaintiffs disagree with it, the [Mandate] at issue represents a rational policy decision surrounding how best to protect children during a global pandemic."), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), cert. denied, 142 S. Ct. 1668 (2022); Broecker v. New York City Dep't of Educ., 573 F. Supp. 3d 878, 891 (E.D.N.Y. 2021) (holding Vaccine Mandate served a "obvious, significant governmental interest in preventing transmission of the COVID-19 virus and protecting students"); New York City Mun. Lab. Comm. v. City of New York, 73 Misc. 3d 621, 628 (N.Y. Sup. Ct., N.Y. Cty.

2021) (noting Mandate represents "the reasoned views and directives of public health officials seeking to best protect the health and welfare of children").

Plaintiffs assert that statements made by City and State officials and the existence of the prior arbitration scheme are evidence of animus. The Second Circuit has already rejected the argument that Mayor De Blasio's and Governor Hochul's statements reflect animus. <u>Kane</u>, 19 F.4th at 165 ("[T]hese statements reflect nothing more than the Mayor's personal belief that religious accommodations will be rare, as well as general support for religious principles that [he] believes guide community members to care for one another by receiving the COVID-19 vaccine.") (internal quotation marks and citation omitted); <u>We The Patriots</u>, 17 F.4th at 283 ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . ."). Similarly, Mayor Adams's statements committing to keeping schools open reflect a policy decision, not animus towards any religious group. Moreover, statements made by DOE officials in applying the overturned UFT Award standards have no

bearing on the current standards, which are applied by a different panel using different criteria.

### b.  The Mandate Is Generally Applicable

Plaintiffs' arguments that the Vaccine Mandate is not generally applicable again rely on arguments that the Second Circuit already rejected.  Plaintiffs ask us to reconsider the Second Circuit's conclusion in light of the number of vaccination mandates the City has imposed and the fact that the Mayor has carved out certain exceptions to the private employer vaccination mandate (a mandate not at issue in this case) through Emergency Executive Order 62 ("EEO 62").  Opp. at 7-8.  The number of vaccination mandates is plainly irrelevant.  At most, the numerous mandates demonstrate the deep concern of the City to stem the coronavirus pandemic.  As to the second point, plaintiffs' counsel seem to have forgotten that, as they conceded at oral argument before the Second Circuit on the initial preliminary injunction motions, "a law can be generally applicable when, as here, it applies to an entire <u>class</u> of people."  <u>Kane</u>, 19 F.4th at 166. The Vaccine Mandate applies to the class of people who work in the New York City public schools.  The fact that it does not apply to professional athletes is of no significance here.  Indeed, if a distinction were even needed, it is obvious that New Yorkers may choose whether to attend a sporting event with unvaccinated athletes and accept whatever risk those athletes pose.  In

contrast, school attendance is not a similar choice, and the risk posed by unvaccinated teachers is obvious.[15]   Further, plaintiffs' argument that these policies demonstrate that strict scrutiny is required here because the polices "single out secular but not religious activities for favored treatment," Opp. at 9, is confusing and false.  Working in a public school is not a religious activity.  See U.S. CONST., amend. I.

Finally, plaintiffs argue that because the DOE provides a process for applying for religious exemptions, strict scrutiny must apply because the Citywide Panel considers each request for a religious exemption individually.  In support of this position, plaintiffs rely on the Supreme Court's holding in Fulton v. City of Philadelphia that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude[.]"  141 S. Ct. 1868 at 1879 (quotation marks, citation, and alterations omitted); Opp. at 8.  This position does not withstand cursory analysis.  In rejecting a similar argument that the Supreme Court's decision in Fulton required strict scrutiny for every religious

---

[15]    The Second Circuit has already rejected plaintiffs' former argument about an exempt group (emergency responders), finding that "[v]iewed through the lens of the City's asserted interest in stemming the spread of COVID-19, these groups are not comparable to the categories of people that the Mandate embraces.  While the exempt groups do not come into prolonged daily contact with large groups of students (most of whom are unvaccinated), the covered groups (for example, teachers) inevitably do."  Kane, 19 F.4th at 166.

exception, a recent decision noted that "such an interpretation would create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny." Ferrelli v. Unified Ct. Sys., No. 22 Civ. 0068 (LEK) (CFH), 2022 WL 673863, at *7 (N.D.N.Y. Mar. 7, 2022). Here, the City's exemptions were provided in accordance with Title VII, which requires employers to offer reasonable religious accommodations in certain circumstances, as the Second Circuit provided in its order requiring the City to establish the Citywide Panel.[16] Kane, 19 F.4th at 175. Indeed, as discussed infra, the record shows that the City only inquired as to whether each plaintiff's belief was sincere, and where it determined it was, then proceeded to determine if a reasonable accommodation could be provided. Further, we remind plaintiffs that the government faces different burdens when it, as here, acts as an employer as opposed to a lawmaker. Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598 (2008) ("We have long held the view that there is a crucial

---

[16]    Plaintiffs also cite to Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n, 571 F. Supp. 3d 571, 613 (N.D. Tex. 2021), which is currently on appeal, for the proposition that "[b]ecause Title VII is not a generally applicable due to the existence of individualized exemptions, the Court finds that strict scrutiny applies." Id.; Opp. at 11. Bear Creek is an outlier case. Title VII, which was passed in 1964, has been routinely analyzed and applied by courts for over half a century. Moreover, the Second Circuit and Supreme Court do not apply strict scrutiny in considering Title VII claims. See e.g., Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986) ("We find no basis in either [Title VII] or its legislative history for requiring an employer to choose any particular reasonable accommodation."); Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002) ("Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends.").

difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage [its] internal operation.") (internal quotation marks and citation omitted).[17]

Similarly, we also reject plaintiffs' argument that because they have articulated a "hybrid rights" claim, strict scrutiny applies. The Second Circuit has repeatedly refused to apply strict scrutiny merely because plaintiffs claim a hybrid rights violation, reasoning that "[t]he allegation that a state action that regulates public conduct infringes more than one of a public employee's constitutional rights does not warrant more heightened scrutiny than each claim would warrant when viewed separately." Knight v. Connecticut Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001); see also Leebaert v. Harrington, 332 F.3d 134, 144 (2d Cir. 2003) ("[A]t least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard to evaluate hybrid claims.") (internal

---

[17]    Plaintiffs claim in a footnote that Engquist is not applicable because the Mandate is a regulatory action, "extending beyond government employees and imposing requirements on patrons and private sector employees."  Opp. at 21 n. 8.  Plaintiffs, however, are employees of the DOE and do not have standing to challenge the aspects of the Vaccine Mandate that apply to contractors or visitors to public schools.

quotation marks and citation omitted).  This precedent binds this Court.

Thus, we find that rational basis review applies.[18]  In this context, plaintiffs claim that the City and DOE have no rational basis for the Mandate because vaccines cannot completely prevent the spread of COVID-19, and because other groups, like performers, are not required to be vaccinated.  This argument is not persuasive.  The DOE clearly explained that "a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety."  Vaccine Mandate at 2.  This is an articulated rational, and indeed, compelling basis.  See Kane, 19 F.4th at 172 ("[t]he Vaccine Mandate . . . is designed to further the compelling objective of permitting schools fully to reopen[.]"); Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . .").[19]

---

[18]    Plaintiffs argue that the court cannot deviate from strict scrutiny simply because the case involves public health.  Opp. at 18-19.  We agree.  But plaintiffs are not correct that strict scrutiny must apply to an immunization mandate.  As the Second Circuit recently stated, "no court appears ever to have held that Jacobson requires that strict scrutiny be applied to immunization mandates.  To be sure, courts have consistently rejected substantive due process challenges to vaccination requirements without applying strict scrutiny."  Goe v. Zucker, No. 21-0537-CV, 2022 WL 3007919, at *8 (2d Cir. July 29, 2022) (citations omitted).
[19]    Plaintiffs object that the vaccines are ineffective and that their "natural immunity" from having contracted the coronavirus would protect them equally as well as receiving a federally approved and tested vaccine.  We consider the facts set forth in the Mandate as an explanation of the decision-making of the City and DOE.  See Goe, 2022 WL 3007919, at *5 ("[T]o the extent that the district court relied on facts from the extrinsic materials that were

Because the City had a rational basis for mandating vaccinations, namely, in order to allow schools to continue in person safely, plaintiffs' Free Exercise Claim fails.

## B. Establishment Clause

Plaintiffs claim that the Vaccine Mandate also violates the Establishment Clause because it creates a denominational preference, in that certain "unorthodox religious denominations" are more burdened than mainstream denominations.[20]  Opp. at 15. This is nothing more than a repackaging of plaintiffs' free exercise claims.  Plaintiffs point to no case law requiring that government action impact all religions equally.  Indeed, the Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate.  On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition."  Smith, 494 U.S. at 878-79.[21]

_____

in dispute, it did not rule on the factual accuracy of those materials; instead, it cited those materials to explain the decision-making of state authorities."). Even if plaintiffs' claims regarding "natural immunity" were true, they would not be significant as many of the plaintiffs do not allege that they have ever contracted the coronavirus or have any "natural immunity."

[20]    Plaintiffs also mischaracterize the statements of City and State officials to claim that "the government openly stated that their purpose was to target certain religious denominations for discriminatory treatment in implementing the Mandate against religious objectors."  Opp. at 15 (emphasis in original). For the reasons stated above, see supra at pp. 20-22, this argument fails.

[21]    Plaintiffs' citations to the amended consolidated complaint for the proposition that the DOE is still applying the standards set forth in the UFT Award are unavailing.  See Opp. at 15 (citing ACC 102 ¶ 808, ¶¶ 134-145). Paragraph 808 states a legal conclusion unrelated to the Establishment Clause claim: "The DOE violates the Free Exercise Clause every time it applies the

Moreover, the Supreme Court's recent decision Kennedy v. Bremerton Sch. Dist. instructs courts "that the Establishment Clause must be interpreted by reference to historical practices and understandings." 142 S. Ct. 2407, 2428 (2022) (internal quotation marks and citation omitted). We note that there is a long history of vaccination requirements in this country and in this Circuit. See, e.g., Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 38 (1905) (upholding smallpox vaccination mandate); see also Prince v. Massachusetts, 321 U.S. 158, 166-67 (1944) ("[A parent] cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease . . . ."); Phillips v. City of New York, 775 F.3d 538, 543 (2d Cir. 2015) (per curiam) (holding that "New York could constitutionally require that all children be vaccinated in

_____

terms of the Exemption Standards to deny an individual request for religious exemption."). "Even under the liberal pleading standard of Federal Rule of Civil Procedure 8, courts need not credit conclusory allegations, or legal conclusions without factual allegations." Glob. View Ltd. Venture Cap. v. Great Cent. Basin Expl., L.L.C., 288 F. Supp. 2d 482, 484 (S.D.N.Y. 2003). Plaintiffs' allegations in paragraphs 134-45 similarly either recite legal conclusions or conclusory allegations (e.g., ¶¶ 140, 144), do not support the proposition plaintiffs cite them for (e.g., ¶ 139), or do not refer to process applied to plaintiffs' requests, but to the process applied to the requests of other individuals (e.g., ¶ 137-38). Plaintiffs lack standing to challenge procedures that do not apply to them. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (holding the "irreducible constitutional minimum of standing" requires that a plaintiff must have suffered an "injury in fact.").

order to attend public school" and that "New York law goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs").

### C. Equal Protection

Similarly, plaintiffs claim that the Vaccine Mandate violates the equal protection clause because the mandate is "facially discriminatory" and impacts unorthodox religious minorities disproportionately. Opp. at 19-21. As we have already stated, the Mandate is facially neutral and generally applicable. Moreover, the fact that certain individuals have religious objections to the Mandate does not, contrary to plaintiffs' opposition brief, provide plaintiffs with a "per se victory", id. at 19-20. "[I]t is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently." Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994). Plaintiffs point to no similarly situated persons who have been treated differently - indeed, they do not point to any DOE employee who has been granted a religious exemption to the Vaccine Mandate and been permitted to work in person. Since there is no claim of differential treatment, plaintiffs' equal protection claim fails.

D. **Due Process**

Plaintiffs also claim that their substantive and procedural due process rights were violated by the Vaccine Mandate.  Both arguments fail.

1. **Substantive Due Process**

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."  Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To analyze a claim under substantive due process, courts perform a two-step analysis.  Hurd v. Fredenburgh, 984 F.3d 1075, 1087-89 (2d Cir. 2021).

"The first step in substantive due process analysis is to identify the constitutional right at stake."  Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995).  Here, plaintiffs cite to the "basic, and sacred, natural right to control one's own body, and care for it as one best sees fit, in accordance with one's creed and religious beliefs, as well as one's best judgment in independent consultation with one's doctor." Opp. at 17.[22]  But "[b]oth [the Second Circuit] and the Supreme Court have consistently recognized that the Constitution embodies no

---

[22]    The Supreme Court's recent decision in Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228 (2022) makes clear that to the extent this right exists, it is not absolute.

fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." We The Patriots USA, 17 F.4th at 293; id. at n. 35 ("This Court cannot find an overriding privacy right when doing so would conflict with Jacobson [which] for over 100 years [] has stood firmly for the proposition that the urgent public health needs of the community can outweigh the rights of an individual to refuse vaccination."). Moreover, the Second Circuit has also held that the "[p]laintiffs are not required [by the Vaccine Mandate] to perform or abstain from any action that violates their religious beliefs." Kane, 19 F.4th at 172; id. at 171 ("The City is not threatening to vaccinate Plaintiffs against their will and despite their religious beliefs[.]"). Indeed, all but one plaintiff remain unvaccinated.[23]

Moreover, plaintiffs have no constitutional right to work in person with children in the New York City public schools. See Maniscalco, 563 F. Supp. 3d at 39 (holding no fundamental constitutional right is infringed by the Vaccine Mandate because, inter alia, "plaintiffs may pursue teaching or paraprofessional jobs at private schools in New York City, public and private schools outside of New York City, daycares or early childhood

---

[23]    Plaintiff Solon appears to have chosen to be vaccinated. See ECF No. 166 ¶ 9.

education centers, tutoring centers, adult or continuing education centers, virtual institutions, or within home settings").

Even if a fundamental right were at issue, plaintiffs' arguments fail at the second step of the analysis. At the second step, plaintiffs "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" such that the Due Process Clause "would not countenance it even were it accompanied by full procedural protection." Hurd, 984 F.3d at 1087 (internal quotation marks and citation omitted). As discussed, supra, there is a long history of mandatory vaccination laws in this country. As the Maniscalco court found, "Requiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of such rights, not having any real relation to the public health crisis. However, mandating a vaccine approved by the FDA does not." Maniscalco, 563 F. Supp. 3d at 39.[24]

---

[24]    Plaintiffs assert that the COVID-19 vaccines available in New York City are "experimental," and that this disputed issue of fact precludes a motion to dismiss. Opp. at 25-27. While at one time, the COVID-19 vaccines were only authorized for emergency use, that is no longer the case, and as explained above, the Vaccine Mandate was only promulgated after the FDA had fully approved a COVID-19 vaccine. The Court takes judicial notice of the fact that both the Pfizer-BioNTech (COMIRNATY) COVID-19 vaccine and the Moderna (Spikevax) COVID-19 vaccine have been fully approved by the FDA for use in people 16 years and older and found by the FDA to meet high standards for safety, effectiveness, and manufacturing quality. See Developing COVID-19 Vaccines, Centers for Disease Control, (July 20, 2022), https://www.cdc.gov/coronavirus/2019-ncov/va ccines/distributing/steps-ensure-safety.html?s_cid=11700:covid%20vaccine%20fd a%20approval:sem.ga:p:RG:GM:gen:PTN:FY22 (stating the "FDA has granted full approval for Pfizer-BioNTech (COMIRNATY) COVID-19 Vaccine for people ages 16 years and older and for Moderna (Spikevax) COVID-19 Vaccine for people ages 18 years and older . . . . These vaccines were found to meet the high standards for safety, effectiveness, and manufacturing quality FDA requires of an approved

Accordingly, plaintiffs have not stated a claim for substantive due process.

### 2. Procedural Due Process

Plaintiffs have also failed to state a claim for violations of procedural due process.  "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest."  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061–62 (2d Cir. 1993).  For the reasons already set out, there is no protected liberty interest.  Further, plaintiffs do not dispute that teachers who do not have a tenure do not have a property interest in their employment.  See Biehner v. City of New York, No. 19 Civ. 9646 (JGK), 2021 WL 878476, at *4 (S.D.N.Y. Mar. 9, 2021).  As such, only plaintiffs Kane, Smith, Keil, Delgado, and Strk even have a property interest at stake.  Am. Compl. ¶¶ 227, 445, 495, 540, 574.

Moreover, the Second Circuit has "held on several occasions that there is no due process violation where, as here, pre-

---

product.").  Further, the Court takes judicial notice of the fact that these vaccines are widely available in New York City.  See COVID-19 Vaccine Locations, Vaccines.gov, https://www.vaccines.gov/results/?zipcode=10007&medicationGuids= 6e9b0945-9b98-4df4-8d10-c42f526eed14,cd62a2bb-1e1e-4252-b441-68cf1fe734e9,784 db609-dc1f-45a5-bad6-8db02e79d44f&medicationKeys=pfizer_comirnaty_covid_19_va ccine,moderna_spikevax_covid_19_vaccine,j%26j_janssen_covid_19_vaccine&appoin tments=true (displaying numerous locations where fully approved vaccines are available)(last visited Aug. 25, 2022).  As such, the Court rejects the plaintiffs' arguments premised on the assertion that the vaccines fully approved by the FDA are not available in New York.  See Opp. at 25-27 (arguing that the Mandate is unconstitutional because the COVID-19 vaccines available in New York are only approved under an Emergency Use Authorization).

deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." See Adams v. Suozzi, 517 F.3d 124, 128 (2d Cir. 2008). "Pre-deprivation processes need not be elaborate, and the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond." Garland v. New York City Fire Dep't, No. 21 Civ. 6586 (KAM) (CLP), 2021 WL 5771687, at *7 (E.D.N.Y. Dec. 6, 2021). Here, that notice and opportunity were plainly given. The amended consolidated complaint describes in detail how plaintiffs received notice of the Citywide Panel and the standards it would apply, that they had an opportunity to submit materials in support of their accommodation requests to the Citywide Panel, and the Citywide Panel issued written explanations for each of the named plaintiffs, clearly spelling out how it reached its conclusions.[25] See, e.g., ACC ¶¶ 235-36, 263-65, 271, 292, 293, 297-98, 314-20, 328, 335, 338, 362, 367-68, 382-83, 408-09, 426-28, 483-88, 498, 500-12, 522-36, 553-69, 582-92, 613-26, 669, 680, 693-95, 726-28, 750, 769-73, 778-79; see also ECF No. 122-2 (setting forth the Citywide Panel's reasoning in reaching its decision regarding each plaintiff). Moreover, plaintiffs have the ability to challenge

---

[25]    This Court, having found that strict scrutiny does not apply in this case, finds plaintiffs' assertion that the Citywide Panel had to provide plaintiffs with a response that could survive strict scrutiny in order to avoid violating plaintiffs' constitutional rights, Opp. at 23-24, without foundation.

any decision terminating their employment through their collective bargaining agreement, or through an Article 78 proceeding.[26] Sindone v. Kelly, 439 F. Supp. 2d 268, 278 (S.D.N.Y. 2006) ("[T]he Second Circuit has gone to considerable lengths to recognize the adequacy of Article 78 procedures as affording adequate safeguards to satisfy federal procedural due process standards.").

### E.  Plaintiffs Have Not Pled As-Applied Claims

Further, the Mandate is not unconstitutional as applied to the plaintiffs.  As a threshold matter, two of plaintiffs (Ruiz-Toro and Castro) have had their requests for religious accommodation granted.[27]  ACC ¶¶ 271, 488.  While these plaintiffs may have preferred a different accommodation, "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.  The employer need not further show that each of the employee's alternative accommodations would result in undue hardship."  Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986); see also We The Patriots USA, 17 F.4th at 292 ("Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated.").

---

[26]    Indeed, plaintiff Giammarino appears to have filed an Article 78 proceeding. See Giammarino v. Board of Education et al., Index No. 160829/2021 (N.Y. Sup. Ct., N.Y. Cty. Jan. 18, 2021).
[27]    Specifically, these plaintiffs were given permission to work remotely, but cannot enter DOE school buildings.  ACC ¶¶ 281, 488-89.

Likewise, plaintiffs Grimando, Giammarino, LoParrino, Weber, and Smith did not avail themselves of the process for seeking a religious exemption set out by the DOE, and so have not stated a due process claim.[28]  "Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections." Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 WL 2748274, at *13 (S.D.N.Y. May 27, 2020), aff'd 832 F. App'x. 766 (2d Cir. 2021); see also Garland, 574 F. Supp. 3d at 130 (finding no due process violation where plaintiffs chose not to participate in the process of requesting vaccination waivers by the deadline).  As such, these plaintiffs have failed to state a claim.[29]

The remainder of the plaintiffs had their claims reviewed by the Citywide Panel.  While plaintiffs have pled that the Citywide Panel just "rubber-stamped" the plaintiffs' previous denials in "bad faith," ACC ¶¶ 140, 835, these assertions are insufficient to state a claim.  Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006) (holding that in opposing a motion to dismiss, "bald assertions and conclusions of law will not suffice").  Moreover, these conclusory allegations are

---

[28]    Specifically, plaintiff Grimando did not submit a timely religious exemption, although she did submit a timely medical exemption.  ACC ¶¶ 668-69. Plaintiffs Giammarino and LoParrino opted not to submit a request for an exemption through the SOLAS portal, as required, but instead sent separate letters to DOE.  Id. ¶¶ 733-34, 769.  Plaintiff Weber chose not to appeal his denial of a religious exemption.  Id. ¶ 652.

[29]    Plaintiff Solon has apparently decided to be vaccinated, and as such, her claims are moot.  See ECF No. 166 ¶ 9.

contradicted by the fact that the Citywide Panel reversed the arbitrators' denial of plaintiff Castro's religious accommodation. ACC ¶¶ 269, 271.

Further, while plaintiffs criticize the process by which the Citywide Panel evaluated their applications as improperly disregarding their religious beliefs, only one of the Citywide Panel's decisions turned on whether the plaintiffs had a sincere religious belief.[30]  In all other circumstances in which it denied a plaintiff's request for a religious accommodation, the Citywide Panel found that the plaintiff's request presented an "undue hardship" because the plaintiff "is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population."[31]  See, e.g., ACC ¶¶ 158, 512 (denying Keil's appeal), 536 (denying De Luca's appeal), 569 (denying Delgado's appeal), 592 (denying Strk's appeal), 626 (denying Buzaglo's appeal), see also ECF No. 122-2 (setting forth Citywide Panel's reasoning regarding each

---

[30]    Plaintiff Clark's appeal was denied because the panel found that her decision to not receive a vaccination was not based on her religious belief, but rather, on non-religious sources.  ECF No. 122-2 at 2.  This is entirely proper - under Title VII, an employer may inquire into whether an employee has "a genuine religious practice that conflicts with a requirement of employment." Bind v. City of New York, No. 08 Civ. 11105 (RJH), 2011 WL 4542897, at *10 (S.D.N.Y. Sept. 30, 2011) (holding "[a]n employer asked to grant a religious accommodation is permitted to examine whether the employee's beliefs regarding the accommodation are sincerely held" and collecting cases).
[31]    Plaintiffs' argument that they can work remotely as they did when the City's schools were remote fails, because the City and DOE have decided to return to in-person learning.

plaintiff's appeal).  These findings satisfied the requirements of Title VII.  Under Title VII "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002).  "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977)).  Plaintiffs' inability to teach their students safely in person presents more than a de minimis cost.

Further, we note that the Second Circuit and other courts in have repeatedly found that vaccination against COVID-19 is a proper condition of employment. See, e.g., We the Patriots, 17 F.4d at 294 (holding vaccination was a condition of employment for healthcare workers); Garland, 574 F. Supp. 3d at 129 (concluding that vaccination was a condition of employment under a Health Commissioner Order applicable to City employees); Broecker v. New York Dept. of Educ., No. 21 Civ. 6387 (KAM) (LRM), 2022 WL 426113, at *8 (E.D.N.Y. Feb. 11, 2022) (holding vaccination was a condition of employment for NYC DOE employees); O'Reilly v. The Bd. of Educ. of the City School Dist. of the City of New York, No. 161040/2021,

2022 WL 180957, at *3 (N.Y. Sup. Ct., N.Y. Cty. Jan. 20, 2022) (same).  Thus, "[t]he termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary. Rather, [p]laintiffs' separation is [be]cause of their failure to avail themselves of existing processes or comply with a lawful job condition."  Broecker, 2022 WL 426113, at *11. As the DOE has provided notice and processes that comport with Constitutional due process before and after termination, see supra pp. 35-36, no additional process is required.  Broecker, 2022 WL 426113, at *11.

**F.    The State Law Claims Are Dismissed for Lack of Supplemental Jurisdiction**

As there are no remaining federal claims, this Court declines to exercise supplemental jurisdiction over the state law claims.[32] Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

---

[32]    While plaintiffs have also pled a claim for a violation of Section 1983, "Section 1983 does not create any independent substantive right, but rather is a vehicle to 'redress . . . the deprivation of [federal] rights established elsewhere.'" Laface v. Eastern Suffolk BOCES, 349 F. Supp. 3d 126, 153 (E.D.N.Y. 2018) (quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)).  As such, this claim is dismissed.

jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). We therefore do not address the arguments regarding state law claims.

**G.  The Preliminary Injunction is Denied**

Plaintiffs have also moved again for a preliminary injunction. "When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Kane, 19 F.4th at 163. As Judge Caproni and the Second Circuit have held, having found no violation of a Constitutional right, "the only alleged harm is economic, and it can be remedied by money damages, were the [p]laintiffs to prevail on the merits of the litigation." Kane v. de Blasio, 575 F. Supp. 3d 435, 441 (S.D.N.Y. 2021), aff'd sub nom. Keil v. City of New York, No. 21-3043-CV, 2022 WL 619694 (2d Cir. Mar. 3, 2022). Moreover, for the foregoing reasons, plaintiffs have not stated a claim and therefore have not demonstrated a likelihood of success on the merits. Finally, plaintiffs have not demonstrated that the public interest weighs in their favor. There is a strong public interest in vaccination to support the City's schools safe reopening and to allow the children who attend daily to learn with

as little risk as possible to them and their families. As such, the preliminary injunction is denied.[33]

## IV. Conclusion

For the foregoing reasons, this Court denies the motion for a preliminary injunction and dismisses plaintiffs' complaint in its entirety with prejudice. The Clerk of Court is respectfully directed to terminate the open motions and close this case.

**SO ORDERED.**

Dated:   New York, New York
         August 26, 2022

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[33] Plaintiffs' request to supplement the preliminary injunction record with the May 24, 2022 deposition transcript of Eric Eichenholtz, ECF No. 167, is denied because the request is procedurally improper and because consideration of the transcript would not alter our decision. First, we note that plaintiffs have already filed the transcript, despite the fact that they are purporting to request leave to do so. This filing violates the Individual Practices of Judge Caproni, who was presiding at the time the transcript was filed, which explicitly state "[t]he Court will not search through the record in support of facts relevant to a party's claim or defense." Individual Practices in Civil Cases of Judge Caproni, 4.H.ii.e. Second, as noted supra at pp. 24-25, we find plaintiffs' argument that the individual consideration that plaintiffs asked for and were granted by the Citywide Panel triggered strict scrutiny under Fulton unpersuasive. But even if we accepted plaintiffs' argument, it would not alter the result, as we would still deny the preliminary injunction because plaintiffs have failed to meet each and every prong of the preliminary injunction analysis.